B 1 (Official Form 1) (1/08)

| United States Bankruptcy Court<br>Central District of California | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**The Olympic on Grand, LLC** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names):<br>**None** | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all):<br>20-3906143 | Last four digits of Soc. Sec. or Indvidual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all): |
| Street Address of Debtor (No. and Street, City, and State):<br>**633 West 5th Street, 28th Floor**<br>**Los Angeles, CA**<br>ZIP CODE 90071 | Street Address of Joint Debtor (No. and Street, City, and State):<br>ZIP CODE |
| County of Residence or of the Principal Place of Business: | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br>ZIP CODE | Mailing Address of Joint Debtor (if different from street address):<br>ZIP CODE |
| Location of Principal Assets of Business Debtor (if different from street address above):<br>ZIP CODE | |

| Type of Debtor<br>(Form of Organization)<br>(Check one box.) | Nature of Business<br>(Check one box.) | Chapter of Bankruptcy Code Under Which<br>the Petition is Filed (Check one box.) |
|---|---|---|
| ☐ Individual (includes Joint Debtors)<br>See Exhibit D on page 2 of this form.<br>☑ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.) | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined in 11 U.S.C. § 101(51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☑ Other<br>Parking Lot & Night Club | ☐ Chapter 7<br>☐ Chapter 9<br>☑ Chapter 11<br>☐ Chapter 12<br>☐ Chapter 13<br>☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding<br>☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding |
| | **Tax-Exempt Entity**<br>(Check box, if applicable.)<br>☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code). | **Nature of Debts**<br>(Check one box.)<br>☐ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or house-hold purpose."    ☑ Debts are primarily business debts. |

| Filing Fee (Check one box.) | Chapter 11 Debtors |
|---|---|
| ☑ Full Filing Fee attached.<br><br>☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br><br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B. | **Check one box:**<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☑ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>**Check if:**<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,190,000.<br>- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -<br>**Check all applicable boxes:**<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |

| Statistical/Administrative Information | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| ☑ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors. | **FILED**<br>JAN 12 2009<br>CLERK, U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY: _____ Deputy Clerk |

Estimated Number of Creditors

| ☐ | ☐ | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | Over 100,000 |

Estimated Assets

| ☐ | ☐ | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

Estimated Liabilities

| ☐ | ☐ | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 | $1,000,001 to $10 | $10,000,001 to $50 | $50,000,001 to $100 | $100,000,001 to $500 | $500,000,001 to $1 billion | More than $1 billion |

B 1 (Official Form 1) (1/08)                                                                                                                         Page 2

| Voluntary Petition *(This page must be completed and filed in every case.)* | Name of Debtor(s): **The Olympic on Grand, LLc** |
|---|---|

| All Prior Bankruptcy Cases Filed Within Last 8 Years (If more than two, attach additional sheet.) | | |
|---|---|---|
| Location Where Filed: **Central District of California** | Case Number: **2:08-bk-31345-ER** | Date Filed: **12/9/08** |
| Location Where Filed: | Case Number: | Date Filed: |

| Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor (If more than one, attach additional sheet.) | | |
|---|---|---|
| Name of Debtor: | Case Number: | Date Filed: |
| District: **Central District of California** | Relationship: | Judge: |

| **Exhibit A** | **Exhibit B** |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.) | (To be completed if debtor is an individual whose debts are primarily consumer debts.) I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b). |
| ☐    Exhibit A is attached and made a part of this petition. | X _____ Signature of Attorney for Debtor(s)        (Date) |

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐    Yes, and Exhibit C is attached and made a part of this petition.

☑    No.

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☐    Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☐    Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**
(Check any applicable box.)

☑    Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐    There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐    Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes.)

☐    Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐    Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐    Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐    Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

| B 1 (Official Form) 1 (1/08) | Page 3 |
|---|---|

| **Voluntary Petition** *(This page must be completed and filed in every case.)* | Name of Debtor(s): **The Olympic on Grand, LLc** |
|---|---|

**Signatures**

| **Signature(s) of Debtor(s) (Individual/Joint)** | **Signature of a Foreign Representative** |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct. [If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7. [If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b). I request relief in accordance with the chapter of title 11, United States Code, specified in this petition. | I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition. (Check only **one** box.) ☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached. ☐ Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached. |
| X _____ Signature of Debtor X _____ Signature of Joint Debtor _____ Telephone Number (if not represented by attorney) _____ Date | X _____ (Signature of Foreign Representative) _____ (Printed Name of Foreign Representative) _____ Date |

| **Signature of Attorney\*** | **Signature of Non-Attorney Bankruptcy Petition Preparer** |
|---|---|
| X _____ Signature of Attorney for Debtor(s) **Marc Weitz, Esq.** Printed Name of Attorney for Debtor(s) **Law Offices of Marc Weitz** Firm Name **633 West 5th Street** Address **Ste 2800** **Los Angeles, CA 90071** **(213) 223-2350** Telephone Number Date 1/12/09 \*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect. | I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached. _____ Printed Name and title, if any, of Bankruptcy Petition Preparer _____ Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.) _____ Address X _____ _____ Date |

| **Signature of Debtor (Corporation/Partnership)** | |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor. The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition. X _____ Signature of Authorized Individual **Richardson Robertson III** Printed Name of Authorized Individual **Manager, The Olympic on Grand, LLC** Title of Authorized Individual **JAN 12, 2009** Date | Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above. Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual. If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person. *A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.* |

## Corporate Ownership Statement

## Owners of The Olympic on Grand, LLC

| Corporation | Percent Ownership |
|---|---|
| Jerry Brown<br>Tiki Investments, LLC<br>11835 West Olympic Blvd., Suite 1100<br>Los Angeles, CA. 90064 | 2.5% |
| Dien McCall<br>D-Gem, Inc.<br>1235 West Collins Avenue<br>Orange, CA. 92687 | 5% |
| Renaissance on Grand, LLC<br>633 W. 5th Street, 28th Floor<br>Los Angeles, CA. 90071 | 57.5% |

# STATEMENT OF RELATED CASES
## INFORMATION REQUIRED BY LOCAL BANKRUPTCY RULE 1015-2
## UNITED STATES BANKRUPTCY COURT, CENTRAL DISTRICT OF CALIFORNIA

1.  A petition under the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 has previously been filed by or against the debtor, his/her spouse, an affiliate of the debtor, any copartnership or joint venture of which debtor is or formerly was a general or limited partner, or member, or any corporation of which the debtor is a director, officer, or person in control, as follows: (Set forth the complete number and title of each such of prior proceeding, date filed, nature thereof, the Bankruptcy Judge and court to whom assigned, whether still pending and, if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A that was filed with any such prior proceeding(s).)

2.  (If petitioner is a partnership or joint venture) A petition under the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 has previously been filed by or against the debtor or an affiliate of the debtor, or a general partner in the debtor, a relative of the general partner, general partner of, or person in control of the debtor, partnership in which the debtor is a general partner, general partner of the debtor, or person in control of the debtor as follows: (Set forth the complete number and title of each such prior proceeding, date filed, nature of the proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending and, if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A that was filed with any such prior proceeding(s).)

3.  (If petitioner is a corporation) A petition under the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 has previously been filed by or against the debtor, or any of its affiliates or subsidiaries, a director of the debtor, an officer of the debtor, a person in control of the debtor, a partnership in which the debtor is general partner, a general partner of the debtor, a relative of the general partner, director, officer, or person in control of the debtor, or any persons, firms or corporations owning 20% or more of its voting stock as follows: (Set forth the complete number and title of each such prior proceeding, date filed, nature of proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending, and if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A that was filed with any such prior proceeding(s).)

    2:08-bk-31345-ER, Filed 12/9/08, Chapter 11, Judge Ernest Robles,

    Central District Court of California, case dismissed.

4.  (If petitioner is an individual) A petition under the Bankruptcy Reform Act of 1978, including amendments thereof, has been filed by or against the debtor within the last 180 days: (Set forth the complete number and title of each such prior proceeding, date filed, nature of proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending, and if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A that was filed with any such prior proceeding(s).)

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed at ___L. O S A N G E L E S___, California.

The Olympic on Grand, LLC
_____
Debtor

Dated ___J A N 12, 2009___

_____
Joint Debtor

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Revised May 2004

F 1015-2.1

B 201 - Notice of Available Chapters (Rev. 12/08)                              USBC, Central District of California

Name: __Marc Weitz_____

Address: __633 West 5th Street, Ste 2800_____

__Los Angeles, CA 90071_____

Telephone: __(213) 223-2350____ Fax: __(213)784-5407____

☐ Attorney for Debtor
☐ Debtor in Pro Per

| UNITED STATES BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA | |
|---|---|
| List all names including trade names, used by Debtor(s) within last 8 years:<br><br>The Olympic on Grand, LLC | Case No.: |
| | **NOTICE OF AVAILABLE CHAPTERS**<br><br>(Notice to Individual Consumer Debtor Under § 342(b) of the Bankruptcy Code) |

In accordance with § 342(b) of the Bankruptcy Code, this notice to individuals with primarily consumer debts: (1) Describes briefly the services available from credit counseling services; (2) Describes briefly the purposes, benefits and costs of the four types of bankruptcy proceedings you may commence; and (3) Informs you about bankruptcy crimes and notifies you that the Attorney General may examine all information you supply in connection with a bankruptcy case.

You are cautioned that bankruptcy law is complicated and not easily described. Thus, you may wish to seek the advice of an attorney to learn of your rights and responsibilities should you decide to file a petition. Court employees cannot give you legal advice.

Notices from the bankruptcy court are sent to the mailing address you list on your bankruptcy petition. In order to ensure that you receive information about events concerning your case, Bankruptcy Rule 4002 requires that you notify the court of any changes in your address. If you are filing a **joint case** (a single bankruptcy case for two individuals married to each other), and each spouse lists the same mailing address on the bankruptcy petition, you and your spouse will generally receive a single copy of each notice mailed from the bankruptcy court in a jointly-addressed envelope, unless you file a statement with the court requesting that each spouse receive a separate copy of all notices.

1.    **Services Available from Credit Counseling Agencies**

      **With limited exceptions, § 109(h) of the Bankruptcy Code requires that all individual debtors who file for bankruptcy relief on or after October 17, 2005, receive a briefing that outlines the available opportunities for credit counseling and provides assistance in performing a budget analysis.** The briefing must be given within 180 days **before** the bankruptcy filing. The briefing may be provided individually or in a group (including briefings conducted by telephone or on the Internet) and must be provided by a nonprofit budget and credit counseling agency approved by the United States trustee or bankruptcy administrator. The clerk of the bankruptcy court has a list that you may consult of the approved budget and credit counseling agencies. Each debtor in a joint case must complete the briefing.

      **In addition, after filing a bankruptcy case, an individual debtor generally must complete a financial management instructional course before he or she can receive a discharge.** The clerk also has a list of approved financial management instructional courses. Each debtor in a joint case must complete the course.

**2.    The Four Chapters of the Bankruptcy Code Available to Individual Consumer Debtors**

**Chapter 7:   Liquidation ($245 filing fee, $39 administrative fee, $15 trustee surcharge: Total fee $299)**

1.   Chapter 7 is designed for debtors in financial difficulty who do not have the ability to pay their existing debts. Debtors whose debts are primarily consumer debts are subject to a "means test" designed to determine whether the case should be permitted to proceed under chapter 7. If your income is greater than the median income for your state of residence and family size, in some cases, creditors have the right to file a motion requesting that the court dismiss your case under § 707(b) of the Code. It is up to the court to decide whether the case should be dismissed.
2.   Under chapter 7, you may claim certain of your property as exempt under governing law. A trustee may have the right to take possession of and sell the remaining property that is not exempt and use the sale proceeds to pay your creditors.
3    The purpose of filing a chapter 7 case is to obtain a discharge of your existing debts. If, however, you are found to have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your discharge and, if it does, the purpose for which you filed the bankruptcy petition will be defeated.
4.   Even if you receive a general discharge, some particular debts are not discharged under the law. Therefore, you may still be responsible for most taxes and student loans; debts incurred to pay nondischargeable taxes; domestic support and property settlement obligations; most fines, penalties, forfeitures, and criminal restitution obligations; certain debts which are not properly listed in your bankruptcy papers; and debts for death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs. Also, if a creditor can prove that a debt arose from fraud, breach of fiduciary duty, or theft, or from a willful and malicious injury, the bankruptcy court may determine that the debt is not discharged.

**Chapter 13:   Repayment of All or Part of the Debts of an Individual with Regular Income ($235 filing fee, $39 administrative fee: Total fee $274)**

1.   Chapter 13 is designed for individuals with regular income who would like to pay all or part of their debts in installments over a period of time. You are only eligible for chapter 13 if your debts do not exceed certain dollar amounts set forth in the Bankruptcy Code.
2.   Under chapter 13, you must file with the court a plan to repay your creditors all or part of the money that you owe them, using your future earnings. The period allowed by the court to repay your debts may be three years or five years, depending upon your income and other factors. The court must approve your plan before it can take effect.
3.   After completing the payments under your plan, your debts are generally discharged except for domestic support obligations; most student loans; certain taxes; most criminal fines and restitution obligations; certain debts which are not properly listed in your bankruptcy papers; certain debts for acts that caused death or personal injury; and certain long term secured obligations.

**Chapter 11:   Reorganization ($1000 filing fee, $39 administrative fee: Total fee $1039)**

Chapter 11 is designed for the reorganization of a business but is also available to consumer debtors. Its provisions are quite complicated, and any decision by an individual to file a chapter 11 petition should be reviewed with an attorney.

**Chapter 12:   Family Farmer or Fisherman ($200 filing fee, $39 administrative fee: Total fee $239)**

Chapter 12 is designed to permit family farmers and fishermen to repay their debts over a period of time from future earnings and is similar to chapter 13. The eligibility requirements are restrictive, limiting its use to those whose income arises primarily from a family-owned farm or commercial fishing operation.

**3.    Bankruptcy Crimes and Availability of Bankruptcy Papers to Law Enforcement Officials**

A person who knowingly and fraudulently conceals assets or makes a false oath or statement under penalty of perjury, either orally or in writing, in connection with a bankruptcy case is subject to a fine, imprisonment, or both. All information supplied by a debtor in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the United States Trustee, the Office of the United States Attorney, and other components and employees of the Department of Justice.

**WARNING:** Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information regarding your creditors, assets, liabilities, income, expenses and general financial condition. Your bankruptcy case may be dismissed if this information is not filed with the court within the time deadlines set by the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the court.

B 201 - Notice of Available Chapters (Rev. 12/08)

## Certificate of [Non-Attorney] Bankruptcy Petition Preparer

I, the [non-attorney] bankruptcy petition preparer signing the debtor's petition, hereby certify that I delivered to the debtor this notice required by § 342(b) of the Bankruptcy Code.

_____
Printed name and title, if any, of Bankruptcy Petition Preparer

Social Security number (If the bankruptcy petition
Address: preparer is not an individual, state the
Social Security number of the officer, principal,
responsible person, or partner of the bankruptcy
petition preparer.)  (Required by 11 U.S.C. § 110.)

_____

X_____
Signature of Bankruptcy Petition Preparer or officer,
principal, responsible person, or partner whose Social
Security number is provided above.

**Certificate of the Debtor**

I (We), the debtor(s), affirm that I (we) have received and read this notice.

Richardson Robertson III, Manager

The Olympic on Grand, LLC
_____
Printed Name(s) of Debtor(s)

_____  JAN 12, 2009
Signature of Debtor            Date

Case No. (if known) _____

X_____
Signature of Joint Debtor (if any)    Date

B 1A (Official Form 1, Exhibit A) (9/97)

*[If debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11 of the Bankruptcy Code, this Exhibit "A" shall be completed and attached to the petition.]*

# UNITED STATES BANKRUPTCY COURT

Central District of California

| | | |
|---|---|---|
| In re    The Olympic on Grand, LLC                    , | ) | Case No. _____ |
| Debtor | ) | |
| | ) | |
| | ) | Chapter 11 |

## EXHIBIT "A" TO VOLUNTARY PETITION

1. If any of the debtor's securities are registered under Section 12 of the Securities Exchange Act of 1934, the SEC file number is _____ .

2. The following financial data is the latest available information and refers to the debtor's condition on _____ .

a. Total assets                                                  $ _____

b. Total debts (including debts listed in 2.c., below)          $ _____

c. Debt securities held by more than 500 holders:                               Approximate number of holders:

secured ☐    unsecured ☐    subordinated ☐    $ _____    _____
secured ☐    unsecured ☐    subordinated ☐    $ _____    _____
secured ☐    unsecured ☐    subordinated ☐    $ _____    _____
secured ☐    unsecured ☐    subordinated ☐    $ _____    _____
secured ☐    unsecured ☐    subordinated ☐    $ _____    _____

d. Number of shares of preferred stock              _____    _____
e. Number of shares common stock                    _____    _____

   Comments, if any:

3. Brief description of debtor's business:

4. List the names of any person who directly or indirectly owns, controls, or holds, with power to vote, 5% or more of the voting securities of debtor:

**Corporate Resolution Authorizing Filing of Petition Required for Chapter 11**

On  1/12/09  Richardson Robertson III, sole manager of the Olympic on Grand, LLC
approved the filing of Chapter 11 bankruptcy by the Olympic on Grand, LLC

Richardson  Robertson III, Manager the Olympic on Grand, LLC

Date:  JAN i 2, 2009

B4 (Official Form 4) (12/07)

# United States Bankruptcy Court
## Central District Of California

In re The Olympic On Grand LLC,
        Debtor

Case No. _____

Chapter 11 _____

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [*or* chapter 9] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| (1) Name of Creditor and complete mailing address, including zip code | (2) Name, telephone number and complete mailing address, including zip code, of employee, agent or department of creditor familiar with claim who may be contacted | (3) Nature of claim (trade debt, bank loan, government contract, etc.) | (4) Indicate if claim is contingent, unliquidated, disputed or subject to setoff | (5) Amount of claim [if secured also state value of security] |
|---|---|---|---|---|
| The Estate of Joseph Cosina One World Trade 27th Fl Long Beach, CA 90831 | The Estate of Joseph Cosina (562) 983-2500 One World Trade 27th Fl Long Beach, CA 90831 Jeffrey S Behar | Law Suit | Disputed | 2,000,000.00 |
| Est of Brandon Clark Maure Fioro, Esq. 1901 W Pacific Ave, Ste 260 West Covina, CA 91790 | Est of Brandon Clark (626) 856-5856 Maure Fioro, Esq. 1901 W Pacific Ave, Ste 260 West Covina, CA 91790 | Law Suit | Disputed | 2,000,000.00 |
| Nathan Hochman 9150 Wilshire Blvd, Ste 300 Beverly Hills, CA 90212 | Nathan Hochman (310) 281-3290 9150 Wilshire Blvd, Ste 300 Beverly Hills, CA 90212 | Loan Guarantee | Contingent | 1,100,000.00 |
| Gary Warfel 23286 Bluebird Drive Calabasas, CA 91302 | Gary Warfel (310) 867-4299 23286 Bluebird Drive Calabasas, CA 91302 | Loan Guarantee | Contingent | 1,100,000.00 |
| Top Shelf - Lewis Brisbois 221 N Figueroa St, Ste 1200 Los Angeles, CA 90021 | Top Shelf - Lewis Brisbois (213) 250-1800 221 N Figueroa St, Ste 1200 Los Angeles, CA 90021 | Law Suit | Disputed | 500,000.00 |
| 1024 Grand, LLC 633 West 5th Street, 28th Fl Los Angeles, CA 90071 | 1024 Grand, LLC (213) 236-3200 633 West 5th Street, 28th Fl Los Angeles, CA 90071 | Law Suit | Disputed | 400,000.00 |
| Arup N. America, Ltd. 555 W. 5th St., #3100 Los Angeles, CA. 90013 | Arup N. America, Ltd. (310) 578-4182 555 W. 5th St., #3100 Los Angeles, CA. 90013 | Trade Debt | Contingent | 321,911.25 |

1

| | | | | |
|---|---|---|---|---|
| Philip Sample - Grubb & Ellis<br>445 S Figueroa St Ste 3300<br>Los Angeles, CA 90071 | Philip Sample - Grubb & Ellis<br>(213) 596-2220<br>445 S Figueroa St Ste 3300<br>Los Angeles, CA 90071 | Trade Debt | Contingent | 300,000.00 |
| Bruce & Susan Norton<br>681 Manresa Lane<br>Los Altos, CA 94022 | Bruce & Susan Norton<br>(858) 229-8094<br>681 Manresa Lane<br>Los Altos, CA 94022 | Investment | Contingent | 300,000.00 |
| LockeMedia-Lawrence Segal<br>9595 Wilshire Blvd, Ste 201<br>Beverly Hills, CA 90212 | LockeMedia-Lawrence Segal<br>(310) 550-4840<br>9595 Wilshire Blvd, Ste 201<br>Beverly Hills, CA 90212 | Law Suit | Disputed | 200,000.00 |
| Allstate Parking<br>13338 Hawthorne Blvd.<br>Hawthorne, CA 90250 | Allstate Parking<br>13338 Hawthorne Blvd.<br>Hawthorne, CA 90250 | Law Suit | Disputed | 175,000.00 |
| Unified Parking Services<br>99 S Chester<br>Pasadena, CA 91106 | Unified Parking Services<br>(800) 727-5148<br>99 S Chester<br>Pasadena, CA 91106 | Law Suit | Disputed | 165,000.00 |
| CPP Inc<br>1415 Blue Spruce Dr. Ste 3<br>Fort Collins, CO 80524 | CPP Inc<br>(970) 221-3371<br>1415 Blue Spruce Dr. Ste 3<br>Fort Collins, CO 80524 | Trade Debt | Contingent | 113,586.59 |
| Johnston Realty Funding<br>26635 W Agoura Rd #105<br>Calabassas, CA 91302 | Johnston Realty Funding<br>Stephen Morse<br>(818)880-0500 x235<br>26635 W Agoura Rd #105<br>Calabassas, CA 91302 | Trade Debt | Contingent | 64,000.00 |
| Van Beveren &Butelo Inc<br>706 W. Broadway Ste 201<br>Glendale,CA 91204 | Van Beveren &Butelo Inc<br>(818) 543-4560<br>706 W. Broadway Ste 201<br>Glendale, CA 91204 | Trade Debt | Contingent | 53,008.70 |
| Citadel<br>425 E. Colorado Blvd.#560<br>Glendale, CA. 91205 | Citadel<br>(818) 246-2707<br>425 E. Colorado Blvd.#560<br>Glendale, CA. 91205 | Trade Debt | Contingent | 49,677.72 |
| Fehr & Peers Kaku Assoc<br>100 Pringle Ave Ste 600<br>Walnut Creek, CA 94596 | Fehr & Peers Kaku Assoc<br>(925) 930-7100<br>100 Pringle Ave Ste 600<br>Walnut Creek, CA 94596 | Trade Debt | Contingent | 46,672.50 |
| Envicom Corporation<br>28328 Agoura Road<br>Agoura Hills, CA 91301 | Envicom Corporation<br>(818) 879-4700<br>28328 Agoura Road<br>Agoura Hills, CA 91301 | Trade Debt | Contingent | 42,922.76 |
| Wolf, Rifkin, Shapiro<br>11400 W Olympic Blvd 9thFL<br>Los Angeles, CA 90046 | Wolf, Rifkin, Shapiro<br>(310) 478-4100<br>11400 W Olympic Blvd 9thFL<br>Los Angeles, CA 90046 | Trade Debt | Contingent | 42,038.51 |
| The Rose Group<br>15260 Ventura Blvd Ste 2100<br>Sheman Oaks, CA 91403 | The Rose Group<br>(310) 280-3710<br>15260 Ventura Blvd Ste 2100<br>Sheman Oaks. CA 91403 | Trade Debt | Contingent | 35,899.56 |

2

Date: JAN 12. 2009

The Olympic on Grand, LLC
Debtor

## DECLARATION UNDER PENALTY OF PERJURY
## ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, Richardson Robertson III, the Manager of The Olympic On Grand LLC named as the debtor in this case declare under penalty of perjury that I have read the foregoing list of creditors holding 20 largest unsecured claims and that it is true and correct to the best of my information and belief.

Date: JAN 12, 2009

Signature

3

| Party Name, Address and Telephone Number *(CA State Bar No. If Applicable)* | FOR COURT USE ONLY |
|---|---|
| The Olympic on Grand, LLC<br>633 West 5th Street<br>Suite 2800<br>Los Angeles, CA 90071<br>(213) 236-3220 | |
| **UNITED STATES BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA** | |

| In re: The Olympic On Grand, LLC | CHAPTER 11 |
|---|---|
| | CASE NUMBER |
| Debtor. | (No Hearing Required) |

## VENUE DISCLOSURE FORM
## FOR CORPORATIONS FILING CHAPTER 11
### *(Required by General Order 97-02)*

*\*Attach additional sheets as necessary and indicate so in each section\**

1.  Specify the address of the principal office of the Debtor currently on file with the California Secretary of State (*from Form S0100, S0200, or S0300*):
    633 West 5th Street
    56th Fl
    Los Angeles, CA 90071

2.  Specify the address of the principal office of the Debtor listed on the Debtor's most recent federal tax return:
    633 West 5th Street
    56th Fl
    Los Angeles, CA 90071

3.  Disclose the current business address(es) for all corporate officers:
    633 West 5th Street
    28th Floor
    Los Angeles, CA 90071

4.  Disclose the current business address(es) where the Debtor's books and records are located:
    633 West 5th Street
    28th Floor
    Los Angeles, CA 90071

Venue Disclosure Form for Corporations Filing Chapter 11 - *Page 2*

**VEN-C**

In re _____    CHAPTER 11

Debtor.    CASE NUMBER

5.  List the address(es) where the majority of the Debtor's assets are located based on a book value determination as set forth on the Debtor's most recent balance sheet:

1024 Grand Ave
Los Angeles, CA 90015

6.  Disclose any different address(es) to those listed above within six months prior to the filing of this petition and state the reasons for the change in address(es):

None

7.  State the name and address of the officer signing this Statement and the relationship of such person to the Debtor *(specify)*:

Richardson Robertson III, 633 West 5th Street, 28th Floor, Los Angeles, CA 90071. Mr. Robertson III is the sole director and holds all offices in the Titan Organization, Inc.. The Titan Organization, Inc. is the manag Renaissance on Grand, LLC and Renaissance on Grand, LLC is the manager of the Olympic on Grand, LLC.

8.  Total number of attached pages of supporting documentation: ____91____

9.  I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed on the 12 day of JANUARY , 20 09 , at Los Angeles , California.

Richardson Robertson III
*Type Name of Officer*

Managing Member
*Position or Title of Officer*

X _____
*Signature of Declarant*

**VEN-C**

*Rev. 12/99* This form is required pursuant to General Order 97-02. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# The Titan Organization, Inc.

## Meeting Minutes

November 17, 2008

### Call to order

Richardson Robertson III, Acting Chairperson, called to order a special meeting of The Titan Organization, Inc. at 11:00 am, November 17, 2008 in Los Angeles, California.

## I. Roll call

Richardson Robertson III conducted a roll call. The following persons were present or on the telephone: Richardson Robertson III, Nathan Hochman.

## II. New Business

1. Mr. Hochman requested a recess until 3:00pm PST. The meeting will be reconvened at that time.

2. The meeting was reconvened at 3:05pm PST. Richardson Robertson III, Shareholder is appointed as the Acting Chairperson of this meeting. Mr. Hochman, who is also a Shareholder, is also present via the telephone. A Quorum is present.

3. Richardson Robertson III's right to call this meeting. This meeting has been called based on the following;

    A. The Participation Agreement signed by Nathan Hochman granting Beaux Arts, LLC (100% owned by Richardson Robertson III) 88% of the shares owned by Nathan Hochman upon conversion by Beaux Arts, LLC. This exercising of conversion rights and the equitable transfer of the Shares occurred on October 29, 2008, based on the Participation Agreement dated January 2, 2007, Sections, 1. a., b., c., and d.  Article II, Section 12 of the Bylaws of The Titan Organization. This special notice was re-noticed for a date at least 10 days from November 6, 2008.

3. Notice of Meeting. Per the Bylaws of the Titan Organization a special meeting may be called by owners of at least 10% of the outstanding stock. (See attached Special meeting Notice. (Section 3 of the Bylaws). Notice of the special meeting was sent via email and received by all shareholders on November 6, 2008. Proper notice was given at least 10 days in advance of this meeting.

1

4. It is moved and approved (after discussion) by the Acting Chairman and the Majority Shareholder, Richardson Robertson III, that Gary Warfel is immediately removed and terminated as President, Secretary, Chief Financial Officer, Treasurer and Director of the Titan Organization, Inc. and it is moved and approved by the Acting Chairman and the Majority Shareholder, Richardson Robertson III, that Richardson Robertson III is hereby appointed as the Sole Director, President, Secretary, Chief Financial Officer and Treasurer of The Titan Organization, Inc.

## III.  Adjournment

**Richardson Robertson III** adjourned the meeting at 3:40 pm PST.

Minutes submitted by: _____

# THE TITAN ORGANIZATION, INC.

(a California Corporation)

## NOTICE OF SPECIAL MEETING OF STOCKHOLDERS

### To be Held on November 17, 2008

NOTICE IS HEREBY GIVEN that a special meeting of the stockholders of  The Titan Organization, Inc., a California corporation (the "Company") will be held at the Company's offices at 633 W. 5th St. 28th Floor at, Los Angeles, California 90071 on Monday 17 November 2008, at 11:00 a.m. local time for the purpose of reconfirming the actions at the Special Meeting held November 3, 2008, and in addition, reconfirming and once again acting upon the following;

The removal of Gary Warfel as President, Secretary, Chief Financial Officer, Treasurer and Director of the Titan Organization, Inc. In addition, the appointment of Richardson Robertson III as the; Sole Director, President, Secretary, Chief Financial Officer and Treasurer of the Titan Organization, Inc.

**BY NOTICE OF THIS MEETING, NO ACTION SHALL BE TAKEN BY THE TITAN ORGANIZATION, INC. OR ITS DIRECTORS, OFFICERS, OR SHAREHOLDERS THAT TRANSFERS ALL OR SUBSTANTIALLY ALL OF THE ASSETS OF THE TITAN ORGANIZATION, INC. OR ITS WHOLLY OWNED COMPANY, RENNAISANCE ON GRAND, LLC   PRIOR TO THIS SPECIAL MEETING , PURSUANT TO THE CALIFORNIA CORPORATIONS CODE.**

**All stockholders are cordially invited to attend the meeting in person. If you intend on attending the meeting in person, please email me so your name may be placed with the building's security. You may also attend the meeting by Telephone by calling 213-236-3220.**

By order of the Shareholder:

Richardson Robertson III, President
Beaux Arts, LLC

6th November 2008

*Principal Office:*
633 W. 5th St. 28th Floor
Los Angeles, CA
213-236-3220

**AMENDED AND RESTATED**
**OPERATING AGREEMENT**
**OF**
**RENAISSANCE ON GRAND, LLC**

This Amended and Restated Operating Agreement ("**Agreement**") of Renaissance on Grand, LLC, a California limited liability company (the "**Company**"), is made and entered into as of the Effective Date by and between Rodmark, Inc., a California corporation ("**Rodmark**"), as the Manager, and the Persons signing this Agreement as Members and/or executing and delivering to the Manager a signature page to this Agreement, acknowledging such Person's acceptance of and consent to be bound by the terms and provisions of this Agreement, with respect to the following facts:

## RECITALS

A.      The Company was formed on or about November 16, 2005, by the filing of a Certificate of Limited Liability Company with the California Secretary of State as Rodmark, LLC.

B.      On May 19, 2006, the Manager filed a Certificate of Amendment with the California Secretary of State changing the name of the company to Titan on Grand, LLC and on May 31, 2006, the Manager again filed a Certificate of Amendment with the California Secretary of State changing the name of the company to Renaissance on Grand, LLC.

C.      The Company is the Managing Member of The Olympic on Grand, LLC.  Certain Members of the Company have agreed to withdrawal as Members of the Company in exchange for a Class C membership interest in The Olympic on Grand, LLC, all upon the terms and conditions as more fully set forth herein.

D.      The current Members and the Manager of this Company desire to (i) amend, restate and supersede the original Operating Agreement of the Company, (ii) restructure the interests of the Members as set forth herein, and (iii) adopt this Agreement as the Operating Agreement of the Company to govern the relationship between the Company, the Manager, the Members, and any future members of the Company.

NOW, THEREFORE, in consideration of foregoing recitals, and the mutual promises, covenants and agreements contained herein, the Members and the Manager do hereby promise, covenant and agree as follows:

## ARTICLE I
## DEFINITIONS

1.1      **Recitals; Glossary of Terms**

1

The foregoing recitals are hereby incorporated by reference and made a part of this Agreement. Certain terms and words used in this Agreement shall have the meanings set forth in the Glossary of Terms attached to this Agreement as Exhibit "1" and made a part hereof.

## ARTICLE II
## ORGANIZATION

### 2.1    Agreement

The Members hereby join together to adopt this Agreement as the operating agreement of the Company pursuant to the provisions of the Act, and they now enter into this Agreement to establish the rights, duties and obligations of the Members and the Manager.

### 2.2    Company Name

The name of the Company shall be Renaissance on Grand, LLC. The Manager may change the name of the Company with the consent of the Members.

### 2.3    Place of Business

The mailing and business office address of the Company shall be 633 West 5th Street, 56th Floor, Los Angeles, CA 90071. The Manager in his sole discretion may change the Company's address from time to time.

### 2.4    Term

The term of the Company shall commence on the date of this Agreement and shall continue thereafter until December 31, 2055, unless sooner terminated pursuant to this Agreement.

### 2.5    Required or Permitted Filings

The Certificate of Formation of the Company was filed with the California Secretary of State on November 16, 2005. Promptly following the execution of this Agreement by the Members, the Manager shall cause to be prepared and filed such documents that may be required or permitted for the Company to be formed and conduct business consistent with the purposes of this Agreement. The name and address of the initial agent for service of process of the Company shall be designated and may be changed from time to time by the Manager in its sole discretion.

### 2.6    Purposes

The principal purposes of the Company are:

(a)    To act as the Managing Member of The Olympic on Grand, LLC, which shall construct and develop the Property;

2

(b)    To hold the membership interests in The Olympic on Grand, LLC for investment and long term appreciation; and

(e)    To engage in any lawful act or activity related to the foregoing purposes that are permitted under the laws of the State of California.

## ARTICLE III
## MEMBERSHIP

### 3.1    Manager

The Manager of the Company is Rodmark, Inc. The initial address of the Manager shall be 633 West 5th Street, 56th Floor, Los Angeles, CA 90071. The Manager shall inform the Company of any change of the Manager's address.

### 3.2    Members

The name, address, Capital Contribution, class of Membership Interest and Member Percentage of each of the Members is set forth on Exhibit "2" attached to this Agreement, as amended from time to time.

### 3.3    Admission of Additional Members

Except as set forth in this Agreement, Additional Members may be admitted to the Company only with the written consent of the Manager and a Required Majority of the Members.

### 3.4    Member Classes

The Company shall have the right to issue two classes of membership interests: Class A Member Interests and Class B Member Interests. Class A Members shall be entitled to participate in the aggregate Profits and Losses of the Company, including the Class B Profits and Losses, and to vote on all matters on which a Member is entitled to vote. Class B Members shall be entitled to participate only in the Class B Profits and Losses of the Company. The Class B Member Interests shall be automatically redeemed by the Company upon final allocation and distribution to the Class B Members of the aggregate Class B Profits and Losses. The Class B Members shall have no right to participate in any Profits or Losses from any source other than the Class B Profits and Losses. The Class B Members shall have no voting rights under this Agreement.

### 3.5    Withdrawal of Certain Members

As of the Effective Date, (i) those Members listed on Exhibit "3" attached to this Agreement shall be deemed to have withdrawn as Members of the Company (the "Withdrawing Members") and shall have no further right, title or interest in or to the Company, or any interest thereof, and (ii) the Company shall return to each of the Withdrawing Members the full amount of their respective Capital Contribution as set forth on Exhibit "3".

3

## ARTICLE IV
## CAPITAL CONTRIBUTIONS

4.1     **Contribution to Initial Capital by Members**

The Members, in the aggregate, shall contribute an amount equal to one hundred percent (100%) of the Initial Capital to the Company.  The aggregate Capital Contribution and the Member Percentage of each Member is set forth beside such Member's name on Exhibit "2" attached to this Agreement.

4.2     **Additional Capital**

If and at such time or times as a Required Majority of the Members determine that the reasonable needs of the Company's business require that Additional Capital be contributed to the Company, the Members may elect to provide such Additional Capital or admit an additional class of Members to the Company for the purposes of raising such Additional Capital.  At such time or times as the Members determine that the reasonable needs of the Company business require Additional Capital, the Manager shall give written notice to each of the Members of their required Additional Capital Contribution (the "**Call Notice**"), setting forth the amount of the Additional Capital, the date that the Additional Capital must be contributed ("**Delinquent Date**"), which shall be at least thirty (30) days after the date the Call Notice is given, and each Member's share of Additional Capital, determined pro rata in accordance with Member Percentages.  The Members shall contribute their share of Additional Capital no later than the Delinquent Date stated in the Call Notice.  If all of the Members do not contribute or intend to contribute their share of Additional Capital, the Manager may, in its sole discretion, take one or more of the following actions on behalf of the Company:  (i) issue a new Call Notice in accordance with the terms of this Paragraph 4.2; (ii) arrange for a loan of the balance of the required Additional Capital to the Company at an interest rate not to exceed the maximum amount permitted by law (including a loan from the Manager or a Member or one of their Affiliates); (iii) admit other Persons (which may include Affiliates of the Manager or the Members) as Additional Members in exchange for cash Capital Contributions equal to all or any part of the required Additional Capital not so contributed by the Members on such terms and conditions acceptable to a Required Majority of the Members; and/or (iv) pursue any other remedy available to the Company under applicable laws. In the event any Member makes a contribution to Additional Capital ("Contributing Member") under this Paragraph 4.2 as a result of any other Member failing to make his contribution to Additional Capital, such Contributing Member shall receive a proportionate increase in his Member Percentage which shall have the effect of reducing the defaulting Member's Member Percentage and future share of Profits, Losses and Cash Flow on a pro rata basis.  In the event the Additional Members receive a Member Percentage pursuant to subparagraph (iii) above, the admission of such Additional Members shall have the effect of reducing the existing Members' Member Percentages and future share of Profits, Losses and Cash Flow on a pro rata basis.

4

### 4.3    Limitation on Other Additional Contributions by Members

Except as set forth in Paragraph 4.2, above, no Member shall be required or permitted to make Capital Contributions to the Company beyond those required or permitted in this Article without the vote or written consent of a Required Majority of the Members.

### 4.4    Limited Liability

The debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company. No Member or Manager of the Company shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member or acting as a Manager of the Company.

### 4.5    Withdrawal of Capital

No Member shall have the right to withdraw or receive a return of any Capital Contributions and no Capital Contribution may be returned in the form of property other than cash, except as otherwise specifically provided in this Agreement.

### 4.6    Interest on Capital

No Member shall be entitled to receive any interest on its Capital Contributions or on any positive Capital Account balance, except as otherwise provided in this Agreement.

## ARTICLE V
## DISTRIBUTIONS AND ALLOCATIONS

### 5.1    Distribution of Cash.

(a)    Cash Flow from Class B Revenues, if any, shall be distributed to the Members pro rata in accordance with their Member Percentages.

(b)    Cash Flow from sources other than Class B Revenues, if any, shall be distributed to the Class A Members pro rata in accordance with their Class A Member Percentages.

### 5.2    Allocation of Losses.    Except as otherwise provided in Paragraphs 5.5 and 5.6, Losses shall be allocated among the Members as follows:

(a)    Class B Losses for any taxable year shall be allocated to the Members, pro-rata, in accordance with their Member Percentages.

(b)    Losses from sources other than Class B Losses shall be allocated among the Class A Partners pro rata in accordance with their Class A Member Percentages.

5

5.3    **Allocation of Profits.** Except as otherwise provided in Paragraphs 5.5 and 5.6, Profits for any taxable year shall be allocated to the Members as follows:

(a)    Class B Profits for any taxable year shall be allocated to the Members, pro-rata, in accordance with their Member Percentages.

(b)    Profits from sources other than Class B Profits shall be allocated among the Class A Partners pro rata in accordance with their Class A Member Percentages.

5.4    **Intent of Allocations**

It is the intent of the Company that this Agreement comply with the safe harbor test set forth in Treasury Regulations Section 1.704-1(b)(2)(ii)(D), including the Qualified Income Offset and Minimum Gain Chargeback, which are incorporated herein by this reference. If, for whatever reason, the Company is advised by the Company's counsel or accountants that the allocation provisions of this Agreement are unlikely to be respected for federal income tax purposes, the Manager is granted the authority to amend the allocation provisions of this Agreement, to the minimum extent deemed necessary by the Company's counsel or accountants, to effect the plan of allocations and distributions provided in this Agreement. The Manager shall have the discretion to adopt and revise rules, conventions and procedures as he believes appropriate with respect to the admission of Members to reflect Members' interests in the Company at the close of the year.

5.5    **Allocation of Nonrecourse Deductions; Minimum Gain Chargeback**

(a)    Nonrecourse Deductions for any taxable year of the Company shall be allocated in the same manner as Losses are allocated under Paragraph 5.2.

(b)    To the extent of the Nonrecourse Deductions allocated for any taxable year of the Company pursuant to Paragraph 5.5(a), any Partner Nonrecourse Deductions for any fiscal year or other period shall be specially allocated to the Member who bears the economic risk of loss with respect to the Partner Nonrecourse Liability to which such Partner Nonrecourse Deductions are attributable in accordance with Treasury Regulations Section 1.704-2(i)(1).

(c)    Notwithstanding any other provisions of this Article V, if there is a net decrease in Company Minimum Gain (as defined in the Treasury Regulations) during any Company fiscal year, each Member shall be specially allocated items of Company income and gain for such year (and, if necessary, subsequent years) in an amount equal to the greater of (i) the portion of such Member's share of the net decrease in Minimum Gain, determined in accordance with Treasury Regulations Section 1.704-2, that is allocable to the disposition of Company property subject to Nonrecourse Liabilities, or (ii) if such Member would otherwise have a deficit in his Capital Account at the end of such year that exceeds his share of Minimum Gain, an amount sufficient to eliminate such excess deficit. Allocations pursuant to the previous sentence shall be made in proportion to the respective amounts required to be allocated to each respective Member pursuant thereto. The items to be so allocated shall be determined in accordance with Treasury Regulations Section 1.704-2. This Paragraph 5.5(c) is intended to comply with the minimum gain

6

chargeback requirement in Treasury Regulations Section 1.704-2 and shall be interpreted consistently therewith. To the extent permitted by Treasury Regulations Section 1.704-2 and for the purposes of this Paragraph 5.5(c) only, each Member's Capital Account Deficit shall be determined prior to any other allocations pursuant to this Paragraph 5.5 with respect to such fiscal year and without regard to any net decrease in Minimum Gain during such fiscal year.

(d)    Notwithstanding any other provision of this Article V except Paragraph 5.5(c), if there is a net decrease in Partner Minimum Gain attributable to a Partner Nonrecourse Liability during any Company fiscal year, each Member who has a share of the Partner Minimum Gain attributable to such Partner Nonrecourse Liability, determined in accordance with Treasury Regulations Section 1.704-2(i)(5), shall be specially allocated items of Company income and gain for such year (and, if necessary, subsequent years) in an amount equal to the greater of (i) the portion of such Member's share of the net decrease in Partner Minimum Gain attributable to such Partner Nonrecourse Liability, determined in accordance with Treasury Regulations Section 1.704-2(i)(4), that is allocable to the disposition of Company property subject to such Partner Nonrecourse Liability, or (ii) if such Member would otherwise have a Capital Account Deficit at the end of such year that exceeds his share of Minimum Gain, an amount sufficient to eliminate such excess Capital Account Deficit. Allocations pursuant to the previous sentence shall be made in proportion to the respective amounts required to be allocated to each Member pursuant thereto. The items to be so allocated shall be determined in accordance with Treasury Regulations Sections 1.704-2(i)(4) and 1.704-2(j)(2). This Paragraph 5.5(d) is intended to comply with the minimum gain chargeback requirement in Treasury Regulations Sections 1.704-2(i)(4) and 1.704-2(j)(2) and shall be interpreted consistently therewith. Solely for purposes of this Paragraph 5.5(d), each Member's Adjusted Capital Account Deficit shall be determined prior to any other allocations pursuant to this Article V with respect to such fiscal year, other than allocations pursuant to Paragraph 5.5(c).

5.6    **Qualified Income Offset**

(a)    In the event any Member unexpectedly receives any adjustments, allocations, or distributions described in Treasury Regulations Sections 1.704-1(b)(2)(ii)(d)(4), (5), or (6), items of Company income and gain shall be specially allocated to such Member in an amount and manner sufficient to eliminate, to the extent required by the Treasury Regulations, the Capital Account Deficit of such Member as quickly as possible, provided that an allocation pursuant to this Paragraph 5.6(a) shall be made if and only to the extent that such Member would have a Capital Account Deficit after all other allocations provided for in this Article V have been tentatively made as if this Paragraph 5.6(a) were not in this Agreement.

(b)    In the event any Member has a deficit Capital Account at the end of any Company fiscal year that is in excess of the sum of (i) the amount such Member is obligated to restore, and (ii) the amount such Member is deemed to be obligated to restore pursuant to the penultimate sentences of Treasury Regulations Sections 1.704-2(g)(1) and 1.704-2(i)(5), such Member shall be specially allocated items of Company income and gain in the amount of such excess as quickly as possible provided that an allocation pursuant to this Paragraph 5.6(b) shall be made if and only to the extent that such Member would

7

have a deficit Capital Account in excess of such sum after all other allocations provided for in this Article V have been tentatively made as if Paragraph 5.6(a) and this Paragraph 5.6(b) were not in this Agreement.

### 5.7    Tax Allocations

(a)    All items of income, gain, loss and deduction for federal and state income tax purposes shall be allocated in accordance with the corresponding "book" items in accordance with the principles of IRC Section 704(c) and Treasury Regulations Section 1.704-1(b)(4). If the Manager determines that it is necessary or appropriate to modify the manner in which such items are allocated under this Paragraph 5.7(a) in order to comply with the principles reflected in IRC Section 704(c) or Treasury Regulations Section 1.704-1(b)(4), the Manager may make such modifications.

(b)    Depreciation, amortization or other method of cost recovery for federal income tax purposes with respect to an item of Company property shall be determined using the Adjusted Tax Basis of such property, rather than its Book Value.

### 5.8    Allocations to Newly Admitted Members and Between Transferors and Transferees of Interests in the Company

On the transfer of an interest in or the admission of an Additional Member to the Company, Profits and Losses shall be allocated and distributed according to the following provisions:

(a)    Effective Date of Admission of Additional Member or Transferee. Any person who is admitted as a Member on or before the 15th day of a calendar month shall be recognized as the owner and holder of the interest so acquired as of the first day of such calendar month. Any person who is admitted as a Member on or after the 16th day of a calendar month shall be recognized as the owner and holder of the acquired interest in the Company as of the first day of the next calendar month. The Company shall recognize the transferee of an interest in the Company as the owner and holder of the transferred interest no later than the end of the calendar month during which the Company is given written notice of the transfer. Such written notice shall not be effective and no allocations or distributions shall be made by the Company in reliance thereon unless the notice states the date the interest in the Company was transferred and such other information as the Manager may reasonably request. In the absence of such notice and information, neither the Company nor the Manager shall incur any liability for making allocations or distributions in accordance with this Article V.

(b)    Allocation of Profits and Losses and Distributions of Cash. Profits or Losses for each taxable year allocable to any interest in the Company which has been transferred during such year shall be allocated between the transferor and transferee based on the number of months each was recognized as the owner and holder of the transferred Member Interest under Paragraph 5.8(a). Distributions of cash for any period allocable to any interest in the Company which has been transferred during the period shall be distributed to the transferor and the transferee based on the number of months during the period that each was recognized as the holder of the transferred Member Interest under Paragraph 5.8(a), without regard to the results of Company operations during such period.

8

(c)    <u>Allocations When Member's Interest Changes</u>. Subject to the foregoing provisions of this Paragraph 5.8, allocations of Profits or Losses under this Article V shall be made utilizing (i) the varying interest rules of IRC Section 706, using any convention permitted by law and selected by the Manager and (ii) such daily, monthly or other period determinations permitted under IRC Section 706 and the Treasury Regulations promulgated thereunder selected by the Manager.

5.9    **Section 754 Adjustment**

To the extent an adjustment to the Adjusted Tax Basis of any Company asset pursuant to IRC Section 734(b) or IRC Section 743(b) is required, pursuant to Treasury Regulations Section 1.704-1(b)(2)(iv)(m), to be taken into account in determining Capital Accounts, the amount of such adjustment to the Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis) and such gain or loss shall be specially allocated to the Members in a manner consistent with the manner in which their Capital Accounts are required to be adjusted pursuant to Treasury Regulations Section 1.704-1(b)(2)(iv)(m).

5.10    **Curative Allocations**

(a)    The "**Regulatory Allocations**" consist of the Basic Regulatory Allocations, as defined in Paragraph 5.10(b), the Nonrecourse Regulatory Allocations, as defined in Paragraph 5.10(c), and the Partner Nonrecourse Regulatory Allocations, as defined in Paragraph 5.10(d).

(b)    The "**Basic Regulatory Allocations**" consist of allocations pursuant to Paragraphs 5.6(a), 5.6(b) and 5.9. Notwithstanding any other provisions of this Agreement, other than the Regulatory Allocations, the Basic Regulatory Allocations shall be taken into account in allocating items of income, gain, loss and deduction among the Members so that, to the extent possible, the net amount of such allocations of other items and the Basic Regulatory Allocations to each Member shall be equal to the net amount that would have been allocated to each such Member if the Basic Regulatory Allocations had not occurred. For purposes of applying the foregoing sentence, allocations pursuant to this Paragraph 5.10(b) shall only be made with respect to allocations pursuant to Paragraph 5.9 to the extent the Manager reasonably determines that such allocations will otherwise be inconsistent with the economic agreement among the parties to this Agreement.

(c)    The "**Nonrecourse Regulatory Allocations**" consist of all allocations pursuant to Paragraphs 5.5(a) and 5.5(c). Notwithstanding any other provision of this Agreement, other than the Regulatory Allocations, the Nonrecourse Regulatory Allocations shall be taken into account in allocating items of income, gain, loss, and deduction among the Members so that, to the extent possible, the net amount of such allocations of other items and the Nonrecourse Regulatory Allocations to each Member shall be equal to the net amount that would have been allocated to each such Member if the Nonrecourse Regulatory Allocations had not occurred. For purposes of applying the foregoing sentence (i) no allocations pursuant to this Paragraph 5.10(c) shall be made prior to the Company fiscal year during which there is a net decrease in Partner Minimum Gain, and then only to the extent necessary to avoid any potential economic distortions caused by such net decrease in Partner Minimum Gain, and (ii) allocations pursuant to this Paragraph 5.10(c) shall be deferred with respect to allocations pursuant to Paragraph 5.5(a) to the

9

extent the Manager reasonably determines that such allocations are likely to be offset by subsequent allocations pursuant to Paragraph 5.5(c).

(d)  The "**Partner Nonrecourse Regulatory Allocations**" consist of all allocations pursuant to Paragraphs 5.5(b) and 5.5(d). Notwithstanding any other provision of this Agreement, other than the Regulatory Allocations, the Partner Nonrecourse Regulatory Allocations shall be taken into account in allocating items of income, gain, loss and deduction among the Members so that, to the extent possible, the net amount of such allocations of other items and the Partner Nonrecourse Regulatory Allocations to each Member shall be equal to the net amount that would have been allocated to each such Member if the Partner Nonrecourse Regulatory Allocations had not occurred.  For purposes of applying the foregoing sentence (i) no allocations pursuant to this Paragraph 5.10(d) shall be made with respect to allocations pursuant to Paragraph 5.5(b) relating to a particular Partner Nonrecourse Debt prior to the Company fiscal year during which there is a net decrease in Partner Minimum Gain attributable to such Partner Nonrecourse Debt, and then only to the extent necessary to avoid any potential economic distortions caused by such net decrease in Partner Minimum Gain, and (ii) allocations pursuant to Paragraph 5.10(d) shall be deferred with respect to allocations pursuant to Paragraph 5.5(b) relating to a particular Partner Nonrecourse Debt to the extent the Manager reasonably determines that such allocations are likely to be offset by subsequent allocations pursuant to Paragraph 5.5(d).

(e)  The Manager shall have reasonable discretion, with respect to each Company fiscal year, to (i) apply the provisions of Paragraphs 5.10(b), 5.10(c) and 5.10(d) in whatever order is likely to minimize the economic distortions that might otherwise result from the Regulatory Allocations, and (ii) divide all allocations pursuant to Paragraphs 5.10 (b), 5.10(c) and 5.10(d) among the Members in a manner that is likely to minimize such economic distortions.

5.11  **Agreement to Control Distributions**

Notwithstanding any adjustment of the allocation of Profits or Losses, or other items for income tax purposes provided in this Agreement by any judicial body or governmental agency, the provisions of this Agreement shall control for all purposes of determining a Member's entitlement to distributions of Cash Flow.

5.12  **Method of Accounting**

Profits and Losses, shall be computed by use of the cash or accrual method of accounting, as determined by the Manager and the accountant for the Company, in accordance with sound tax accounting principles consistently applied, adjusted to the extent necessary to conform with the applicable provisions of this Article V and Article VI.

5.13  **Tax Distributions**

To the extent practicable, the Manager shall cause the Company to distribute sufficient Cash Flow to the Members to cover any tax liabilities of the Members, providing that Cash Flow is adequate for these purposes.

10

## ARTICLE VI
## MAINTENANCE OF CAPITAL ACCOUNTS

6.1    **Capital Accounts**

(a)    <u>Capital Accounts</u>.  Throughout the term of this Agreement, the Company shall establish and maintain a Capital Account for each Member, which shall reflect items of Company property recorded on the books of the Company at Book Value and thereafter adjusted to reflect allocations of income, gain, loss, deduction and credits with respect to such item of property and any other adjustments necessary to properly reflect Capital Accounts in a manner consistent with the rules and principles of this Article VI and sound tax accounting principles, consistent with the Company's method of accounting.

(b)    <u>Adjustments by Manager</u>.  The Manager and the accountants retained by the Manager shall maintain the Capital Accounts of the Members in compliance with the provisions of Treasury Regulations Section 1.704-1(b), which provisions are incorporated herein by this reference. In the event the that Manager determines that it is prudent to modify the manner in which the Capital Accounts are adjusted and/or maintained in order to comply with the requirements of Treasury Regulations Section 1.704-1(b), the Manager may make such modification, provided that it is not likely to have a material effect on the amounts distributable to any Member under Article XIII on dissolution of the Company.

(c)    <u>Transfer of Member Interests</u>.  In the event of a transfer of an interest in the Company in compliance with the terms of this Agreement, the Capital Account of the transferor attributable to the transferred Member Interest shall carry over and become the Capital Account of the transferee Member and shall continue to be subject to all of the provisions of this Article VI concerning adjustments to Capital Accounts.

(d)    <u>Adjustments Where Guidance is Lacking</u>.  If the provisions of this Article VI or Treasury Regulations Section 1.704-1(b) fail to provide guidance on how the Capital Accounts of the Members should be maintained to reflect particular adjustments to Company capital on the books of the Company, such capital adjustments shall be made in a manner that:

(i)    maintains equality between the aggregate governing Capital Accounts of the Members and the amount of Company capital reflected on the Company's balance sheet;

(ii)    is consistent with the underlying economic arrangements of the Members; and

(iii)    is based, wherever practicable, on federal income tax accounting principles.

6.2    **Basic Rules for Capital Account Entries**

(a)    The "**Capital Account**" of a Member means the capital account of that Member determined strictly in accordance with the rules set forth in Treasury Regulations Section 1.704-1(b)(2)(iv).

(b)    Subject to Paragraph 6.2(a), a Member's Capital Account **shall be increased by:**

(i)    the amount of money contributed by the Member to the capital of the Company;

(ii)    the fair market value of property contributed by the Member to the capital of the Company (net of liabilities secured by the contributed property that the Company is considered to assume or take subject to under IRC Section 752); and

(iii)    the net amount of income allocated to the Member; and **shall be decreased by:**

(iv)    the amount of money distributed to the Member by the Company;

(v)    the fair market value of property distributed to the Member by the Company (net of liabilities secured by such distributed property that the Member is considered to assume or take subject to under IRC Section 752);

(vi)    the Member's share of the Company's IRC Section 705 Expenditures, including losses which are nondeductible under IRC Sections 267(a)(1) or 707(b);

(vii)    the Member's share of amounts paid or incurred by the Company to organize the Company, except to the extent properly amortizable for federal income tax purposes; and

(viii)    the net amount of loss allocated to the Member.

(c)    For purposes of this Article VI, "income" refers to all items of income (including gain from the sale of Company property and income exempt from tax) as properly determined for Book Purposes, and "loss" refers to all items of loss (including loss from the sale of Company property), as properly determined for Book Purposes. Book Income and Book Loss shall be determined based on the Book Value of the Company's assets in accordance with the principles of Treasury Regulations Section 1.704-1(b)(2)(iv). Otherwise, income and loss shall be determined strictly in accordance with federal income tax principles (including rules governing depreciation and amortization), utilizing the Book Value of Company assets.

## ARTICLE VII
## ADMINISTRATIVE AND ACCOUNTING MATTERS

**7.1    Books and Records**

The Manager shall keep the following Company documents at the principal office of the Company:

(a)    A current list of the full name and last known address of each Member, together with the Capital Contribution and Member Percentage of each Member.

12

(b)    An executed original of this Agreement and all amendments to this Agreement.

(c)    Copies of the Company's Certificate of Formation and all amendments thereto and an executed original of any power of attorney pursuant to which such any of such documents have been executed.

(d)    Copies of the federal, state and local income tax or information returns and reports of the Company, if any, for the six (6) most recent taxable years.

(e)    Financial statements of the Company for the six (6) most recent fiscal years.

(f)    The books and records of the Company for at least the current and past six (6) fiscal years.

### 7.2    Delivery to Members and Inspection

(a)    Each Member has the right, on reasonable request and reasonable advance notice to the Manager, to inspect, during normal business hours, any of the Company records required to be maintained under Paragraph 7.1.

(b)    Within ninety (90) days after the end of each taxable year of the Company, the Manager shall provide each Member with a copy of the Member's Schedule K-1 filed by the Company with the IRS and any state taxing authorities, and any other information necessary for the Member to complete its federal and state income tax or information returns.

### 7.3    Tax and Fiscal Year

The Company's tax and fiscal year shall be the calendar year.

### 7.4    Election to be taxed as Partnership; Tax Matters Member

The Company shall elect to be taxed as a partnership for Federal and State income Tax purposes. The Manager shall designate the Tax Matters Partner for purposes of IRC Section 6231(a)(7).

## ARTICLE VIII
## MANAGEMENT AND RELATED MATTERS

### 8.1    Control by Manager

Subject to the consent, voting and other approval rights expressly granted to the Class A Members under this Agreement and the Act, the Manager shall have sole and exclusive control over the day-to-day business and affairs of the Company and shall have all of the rights and powers which may be possessed by a manager under the Act.

13

## 8.2    Specific Authority, Powers and Duties

(a) The Manager shall have the specific rights, powers and duties required for or appropriate to management of the Company's day-to-day business operations, however the Manager may only do the following with the consent or approval of a Required Majority of the Members:

(i)    Sell, exchange, mortgage, pledge, convey or otherwise dispose of assets of the Company;

(ii)    Execute any loan documents, notes, mortgages, financing statements and/or any other financing or security documents requested of the Company; or

(iii)    Borrow money on behalf of the Company and encumber the Company assets or place title in the name of a nominee for the purposes of obtaining financing for the Company;

(b)    The Manager may take the following actions without the prior consent of the Members:

(i)    Manage and operate the Company's assets.

(ii)    Employ from time to time, at the expense of the Company, insurance brokers, consultants, accountants and attorneys, including Members and their Affiliates, subject to the limitations of Paragraphs 8.5 and 8.10.

(iii)    Pay, at the expense of the Company, all organization expenses incurred in the creation of the Company and all expenses incurred in the operation of the Company, including the payment or reimbursement of costs incurred by the Manager and his Affiliates on behalf of the Company.

(iv)    Make any and all elections for federal, state or local tax purposes, including, without limitation, elections to (i) adjust the basis of Company property under IRC Sections 734(b) and 743(b), if the Manager decides, in his sole discretion, to file such an election; (ii) extend the statute of limitations for assessment of tax deficiencies against Members with respect to adjustments to the Company's federal, state or local tax returns; or (iii) represent and bind the Company and the Members before taxing authorities and courts of competent jurisdiction in tax matters affecting the Company and the Members, in their capacities as such, including the execution of any agreement affecting such matters.

(v)    Certify to third parties (i) copies of this Agreement and any amendments thereto; (ii) the existence or nonexistence of any fact or facts which constitute a condition precedent to acts by the Manager or which are in any manner germane to the business or affairs of the Company, including, without limitation, those pertaining to votes or consents of the Members; (iii) the identity of any Member; (iv) the persons who are authorized to execute and deliver any instrument or document on behalf of the Company; or (v) any act or failure to act by the Company or any other matter whatsoever involving the Company or any Member. Third parties are intended

14

and expected to rely on such certificates and the Company and the Members shall be conclusively bound thereby as between such third parties and the Company and/or the Members.

(vi)     Invest any reserves or other funds belonging to the Company in interest bearing accounts, or loan such funds on a short term basis to Affiliates of the Company or the Manager, at terms acceptable to the Manager in his reasonable discretion.

(vii)     Receive a notice of default or any other notices required or permitted to be given by any or creditor of the Company, on behalf of the Company, without requiring any such financial institution or creditor to give notice to any Member.

(viii)     Act as the Company's authorized representative in all dealings with creditors, tenants, customers, and others with whom the Company conducts business.

(ix)     Assume the overall duties and exercise any power or authority conferred on the Manager under the provisions of this Agreement or the Act.

(x)     Exercise any and all other rights directly or indirectly related to the purpose of the Company and the rights, powers and duties set forth above.

### 8.3     Officers

The Manager may from time to time appoint officers of the Company and delegate to such officers such authority and duties as the Manager may deem advisable.  The Manager may assign titles (including, without limitation, Chairman, President, Vice President, Chief Executive Officer, Chief Financial Officer, Chief Technology Officer and Director) to any such officer. Any individual may hold any number of offices. The officers shall serve at the pleasure of the Manager, and any officer may be removed by the Manager or a Required Majority of the Members at any time, subject to all rights, if any, of an officer under any contract of employment with the Company. The officers shall exercise such powers and perform such duties as specified in this Agreement or as determined from time to time by the Manager.

### 8.4     Fiduciary Obligations

The Manager shall be under a fiduciary duty to conduct the affairs of the Company in the best interests of the Company and the other Members. The Manager shall have a fiduciary responsibility for the safekeeping and use of all Company funds and assets, whether or not in its possession or control or under its management, for the exclusive benefit of the Company.

### 8.5     Limitation on Authority

Except as otherwise provided in this Agreement, neither the Manager nor any Member shall have any authority to do any act prohibited by law or any authority to permit the Company to be charged with any overhead or salaries of the Manager or any of his Affiliates, except as directly related to the operations of the Company or as otherwise permitted under this Agreement.

15

8.6    **Authority of Members to Appoint Attorneys-in-Fact**

Each Member shall have the power and authority to constitute and appoint any other natural person, including another Member in his individual, non-member capacity, as the attorney-in-fact of the appointing Member under a written revocable power of attorney to execute (and, where required or appropriate, acknowledge), in the name, place and stead of the appointing Member, such documents and instruments for and on behalf of the Company as the appointing Member is required or permitted to execute (or execute and acknowledge) under this Agreement, applicable law or any contract, agreement or other commitment of the Company. Such documents and instruments shall include, but shall not be limited to, contracts, conveyances, mortgages, trust deeds, notes, leases and amendments to this Agreement.

8.7    **Business or Investment Opportunities**

Any Member, and any shareholder, officer, director, employee, Affiliate or other person holding a legal or beneficial interest in any entity which is a Member, may engage in or possess an interest in other business ventures of every nature and description, independently or with others, whether such ventures are competitive with the Company or otherwise, including (without limitation) the acquisition, ownership, financing, leasing, operation, management, syndication, brokerage, sale, construction and development of real property that may be located in the market area or vicinity of any real property of the Company. Neither the Company nor the Members shall have any right by virtue of this Agreement in or to such independent ventures or to the income or profits derived therefrom. Subject to the Manager's overriding fiduciary obligation to the Company, no Member or any Affiliate is obligated to present to the Company any particular investment opportunity which comes to its attention, even if such opportunity is of the character which might be suitable for investment by the Company. Nothing in this Paragraph 8.7 shall be deemed to diminish the overriding fiduciary obligations of the Members to the Company or act a waiver of any right or remedy the Company or the other Members may have in the event of a breach by a Member of such obligation.

8.8    **Devotion of Time**

None of the Members shall be obligated to devote full time to the business and affairs of the Company. The Members are involved in other businesses and occupations and other companies. The Manager shall devote such reasonable amounts of time as it determines, in its sole discretion, is necessary to manage the Company's business and affairs and perform the duties of the Manager under this Agreement.

8.9    **Reimbursements to the Manager and Members**

The Manager and the Members shall be reimbursed by the Company for their out-of-pocket expenses incurred in connection with organizing the Company, preparing this Agreement, acquiring (either directly or through one or more Affiliates) the Property, operating Company assets, and administering the Company.

8.10    **Manager Fees**

16

The Manager shall not be paid any fees for Management services to the Company. Company, but shall be entitled to reimbursement for its out-of-pocket expenses pursuant to Paragraph 8.9 and Predevelopment Costs pursuant to Paragraph 8.14.

### 8.11    Bank Accounts

All funds of the Company shall be deposited in accounts in the name of the Company in such banks or savings and loan associations as may be selected by the Manager from time to time.

### 8.12    Cooperation by Members

The Members shall cooperate with the Senior Lenders in connection with the Senior Financing, including providing financial statements and other financial and Patriot Act related information; provided, however, that in no event shall any Member be requested or required to incur any type of recourse liability in connection with the Senior Financing.

### 8.13    Limitations on Liability of Manager; Indemnification

(a)    Anything in this Agreement to the contrary notwithstanding, the Manager shall not be liable to the Members for the return of their Capital Contributions, nor shall the Manager be required to pay to the Company or any Member any capital deficits of any Member. The sole source of the return of such Capital Contributions to the Members shall be the assets of the Company. The Manager shall not have any liability, responsibility or accountability in damages or otherwise to any other Member or the Company for losses, damages, penalties, actions, suits, proceedings, judgments, costs, expenses, or disbursements of any kind or nature whatsoever, ("**Damages**") arising out of any action or inaction on the part of the Company or the Manager other than the Damages resulting from the Manager's own fraud, gross negligence, criminal act or breach of fiduciary duty to the Company or any Member.

(b)    The Company, or its receiver or trustee, agrees to indemnify, pay, defend, protect, and hold harmless the Manager and the Members and their respective employees, agents, affiliates, shareholders, directors, officers, representatives, and attorneys (on demand of and to the reasonable satisfaction of the person indemnified) from and against any and all liabilities, obligations, losses, damages, penalties, actions, suits, proceedings, judgments, costs, expenses, and disbursements of any kind or nature whatsoever, including, without limitation, all costs and expenses of investigation, defense, appeal and settlement ("Indemnity Damages") of any and all suits, actions or proceedings instituted against the Company, the Manager or the Members which may be incurred by or asserted against the Managing Member or the Company in any way relating to or arising out of, or alleged to relate to or arise out of, any action or inaction on the part of the Company or the Managing Member other than the portion of the Indemnity Damages resulting from the indemnified person's own fraud, gross negligence, criminal act or breach of fiduciary duty to the Company or any Member. The obligations under this subparagraph (b) shall be satisfied only out of Company assets, and the Members shall not have any personal liability on account thereof. The obligations under this Paragraph 8.12(b) shall be satisfied only out of Company assets, and the Members shall not have any personal liability on account thereof.

17

8.14    **Transactions with Members and Affiliates.**

The Manager may enter into agreements with its own Affiliates, the Members or Affiliates of the Members to provide services to the Company provided that charges for such services shall be commercially reasonable. Additionally, it is anticipated that certain Members and/or their Affiliates shall receive various fees, including development fees, in connection with the development of the Property, which fees shall be approved by the Senior Lenders providing the Senior Financing (the **"Development Fees"**). Until such time as the Senior Financing is in place and the Development Fees are actually received, the Manager is authorized to approve the payment of salaries and trustee fees to certain Members and/or their Affiliates and the payment of general project and overhead costs (the **"Predevelopment Costs"**). The amount of the Predevelopment Costs and the recipients thereof, shall be determined in the sole discretion of the Manger, provided, however, that in no event shall the total amount of Predevelopment Costs exceed $1,000,000.

## ARTICLE IX
## VOTING AND OTHER RIGHTS OF MEMBERS

9.1    **Matters Requiring Consent of a Required Majority of the Members**

Subject to such additional or other requirements as may be contained in this Agreement and the provisions of the Act, the following actions may be taken only with the affirmative vote or written consent of a Required Majority of the Members:

(a)    The sale or other disposition of the assets of the Company.

(b)    A change in the nature of the Company's business.

(c)    The election of a successor Manager pursuant to Article XI. (Provided however, that the vote of any member who is an Affiliate of a Manager shall be disregarded in calculating the vote for these purposes.

(d)    The admission of an Additional Member, except as provided in Paragraph 4.2.

(e)    The purchase of assets other than in the ordinary course of the business of the Company.

(f)    The transfer or encumbrance of a Member's Member Interest in the Company.

9.2    **Limitations on Rights and Powers of Members**

(a)    No Member shall have the right or power to:

(i)    withdraw or reduce Capital Contributions, except as the result of the dissolution of the Company or as otherwise provided by law or this Agreement;

18

  (ii)  bring an action for partition against the Company;

  (iii)  cause the termination and dissolution of the Company, except as set forth in this Agreement; or

  (iv)  demand or receive property other than cash in return for Capital Contributions.

  (b)  No Member shall have priority over any other Member either as to the return of capital, profits or distributions, except to the extent provided or permitted under Articles V or XIII. Other than on dissolution of the Company, as provided by this Agreement, there has been no time agreed on when the Capital Contributions of any Member will be returned.

### 9.3  Limited Power of Members

  The Members shall have no power to participate in the management of the Company except as expressly authorized by this Agreement or the Act. No Member acting solely in the capacity of a Member is an agent of the Company, nor does any Member, unless expressly and duly authorized in writing to do so by the Manager, have any power or authority to act on behalf of the Company in any way, to pledge the Company's credit, to execute any instrument on the Company's behalf or to render the Company liable for any purpose.

**ARTICLE X**
**TRANSFERS OF MEMBER INTERESTS**

### 10.1  In General

  (a)  No Member shall transfer or encumber its interest in the Company or any part thereof without the prior written consent of the Manager and a Required Majority of the Members. Absent such consent, a transferee of an interest in the Company shall be entitled to receive only the share of profits or other compensation by way of income and the return of Capital Contributions to which the transferor Member would have been entitled. Any act in contravention of any provisions of this Article X shall be null and void as against the Company and the other Members.

  (b)  The Members acknowledge that a constructive termination of the Company could have adverse income tax consequences to one or more of the Members and may result in costs and expenses to the Company and the Members which would not otherwise be paid or incurred. Accordingly:

  (i)  Each Member shall give written notice to the Manager of any proposed voluntary sale or exchange of all or part of an interest in the Company. Such notice shall describe the interest proposed to be sold or exchanged and the scheduled closing date of the proposed transaction. Such written notice shall contain a specific request that the Manager advise the notifying Member whether or not the transfer will cause a constructive termination of the Company.

19

(ii) Each Member hereby agrees not to transfer such portion of his interest in profits and capital that would cause a constructive termination of the Company under IRC Section 708.

(iii) The transferor Member whose transfer of an interest in the Company causes a deemed termination of the Company pursuant to IRC Section 708 shall pay the cost of any appraisal obtained by the Manager in connection with the revaluation of Company property.

(iv) Notwithstanding the foregoing, the Manager may, in his sole discretion, prohibit the transfer of an interest in the Company to avoid a constructive termination of the Company under IRC Section 708.

(c) The interests in the Company represented by this Agreement have not been registered with the Securities and Exchange Commission under the Securities Act of 1933, as amended from time to time, or qualified under the securities laws of any state. Member Interests may not be offered for sale, sold, delivered after sale, transferred, pledged or hypothecated to any Person unless subsequently registered and qualified or in the opinion of counsel satisfactory to the Manager an exemption from such registration or qualification is available and the proposed purchaser of a Member Interest satisfies the investment suitability standards applicable to the Company.

(d) Each Member agrees that a legend condition may be placed on any certificate or other document evidencing ownership of an interest in the Company, which legend shall be in a form approved by counsel selected by the Manager.

(e) The Manager may, in his sole discretion, prohibit the transfer or assignment of a Member Interest to avoid the risk of having the Company being treated as a corporation for tax purposes.

(f) The Manager may, in his sole discretion, prohibit the transfer or assignment of a Member Interest to a foreign person.

(g) If a sale, assignment or transfer of an interest in the Company complies with the provisions of this Article X, but the transferee is not admitted as a Member pursuant to this Article X, such transferee shall be entitled to receive distributions and allocations with respect to the transferred Member Interest as provided in this Agreement, but shall have no right to any information or accounting of the affairs of the Company, nor be entitled to inspect the books and records of the Company, nor be entitled to any of the rights of a Member of the Company under this Agreement or the Act.

10.2    **Exempt Transfers**

Subject to the restrictions provided in Paragraph 10.1, Members may make the following transfers of their interests in the Company without complying with the other provisions of this Article X. The transferee shall be substituted as a Member only on compliance with Paragraph 10.4 to the extent of the transferred Member Interest.

(a) A gratuitous transfer to a trust, provided the transferor Member and its Immediate Family own more than fifty percent (50%) of the beneficial interests of any such trust. A Member's

20

"**Immediate Family**" shall include only his spouse, lineal ancestors and lineal descendants. Any subsequent sale, assignment, transfer, pledge or other encumbrance ("**Disposition**") of the beneficial interests in any such trust, which by itself or which, when added to prior Dispositions of such beneficial interests made after the transfer of the interest in the Company to the trust, equals or exceed more than fifty percent (50%) of the total beneficial interest in the trust, shall be deemed to be a transfer of the Company interest owned by the trust for all purposes of this Article X.

(b)    A gratuitous transfer into joint tenancy ownership between the transferor and members of its Immediate Family.

(c)    A transfer to a corporation in which the transferor Member and its Immediate Family own more than fifty percent (50%) of the stock entitled to vote. Any subsequent change in the ownership of voting stock of any such corporation (whether by way of a Disposition thereof or issuance of additional stock) that reduces the percentage of voting stock owned by the transferor Member and his Immediate Family to fifty percent (50%) or less shall be deemed to be a transfer of the interest in the Company owned by such corporation for all purposes of this Article X.

(d)    A transfer to a partnership or limited liability company in which the transferor Member and its Immediate Family own more than fifty percent (50%) of the total interests in profits or capital. Any subsequent change in the ownership of interests in profits or capital (whether by way of a Disposition thereof or issuance of partnership or membership interests) that reduces the percentage of profits and capital owned by the transferor Member and his Immediate Family to fifty percent (50%) or less shall be deemed to be a transfer of the interest in the Company owned by such partnership or limited liability company for all purposes of this Article X.

10.3    **Right of First Refusal**

(a)    If a Member (the "**Selling Member**") desires to sell or exchange all or part of its Member Interest in the Company (the "**Offered Interest**"), the Selling Member shall give written notice to the Company and each of the other Members (the "**Notice of Sale**"). The Notice of Sale shall set forth the proposed purchaser's name and the price and terms on which the Offered Interest is proposed to be sold or exchanged. If the Offered Interest is to be exchanged, in whole or in part, for property other than cash or the purchaser's note or other deferred payment obligation, the Selling Member shall place a dollar value on that property supported by an appraisal of the property acceptable to the Manager. For fourteen (14) days after the Notice of Sale is given, the Company shall have the option to purchase all or part of the Offered Interest at the same price, prorated if the Company elects to purchase only part, and on the same terms stated in the Notice of Sale (the "price" and the "terms"). The Company shall exercise its option only with the written consent of a Required Majority of the Members (not including the Selling Member) by way of written notice to the Selling Member within the fourteen (14) day period.

(b)    If the Company elects not to purchase all of the Offered Interest, the other Members shall then have the option to purchase the Offered Interest, or the portion the Company elected not to purchase, at the same price, prorated if the Company elected to purchase part, and on the same terms. The other Members shall have twenty-eight (28) days following the giving of the Notice of Sale to

21

exercise such option. Each Member shall have an option to purchase a percentage of the Offered Interest, or the portion thereof not elected to be purchased by the Company, determined pro rata in accordance with such Member's Member Percentage.

(c)     Notwithstanding the provisions of Paragraphs 10.3(a) and 10.3(b), the exercise of the options by the Company and/or the other Members shall be effective only if the Company and/or the other Members elect to purchase all of the Offered Interest pursuant to Paragraphs 10.3(a) and 10.3(b).

(d)     If the Company and/or the other Members fail to elect to purchase all of the Offered Interest pursuant to Paragraphs 10.3(a) and 10.3(b), the Selling Member may, within the twenty-eight (28) day period immediately following the expiration of the twenty-eight (28) day period provided for in Paragraph 10.3(b), sell or exchange the Offered Interest at a price not less than and on terms no less favorable than the price and terms stated in the Notice of Sale. Such sale or exchange shall be subject to all of the other provisions of this Article X and Article XII, but only to the extent they are applicable thereto. If the Selling Member fails to consummate the sale or exchange of the Offered Interest within such twenty-eight (28) day period, any subsequent sale or exchange shall once again be subject to all of the provisions of this Paragraph 10.3.

10.4    **Substitution of Transferee Member**

The transferee of an interest in the Company otherwise transferred in compliance with this Article X shall be admitted as a Member on satisfaction of the following additional conditions:

(a)     Filing with the Company a duly executed and acknowledged written instrument of transfer in a form approved by the Manager, specifying the Member Interest being transferred and setting forth the intention of the transferor Member that the transferee be admitted as a Member.

(b)     Execution and acknowledgment by the transferor Member and the transferee of any other instruments required by the Manager, including the acceptance of and adoption by the transferee of this Agreement.

(c)     Payment of a transfer fee to the Company sufficient to cover the Company's reasonable expenses in connection with the transfer.

10.5    **Certain Transfers to be Reported to IRS**

(a)     IRC Section 6050K requires the Company to make a return to the IRS with respect to transfers of interests in partnerships that own appreciated inventory or unrealized receivables, as defined in IRC Section 751. For those purposes, recapture of depreciation potential is treated as an unrealized receivable. In order to enable the Company to comply with the requirements of IRC Section 6050K and any Treasury Regulations promulgated thereunder, each transferor and each transferee of an interest in the Company shall provide the Manager with such data and information as may be required in order for the Company to fully comply with those requirements, which data and information shall be provided no later than twenty (20) days prior to the date the Company is otherwise required to file the

22

return with the IRS with respect to the transfer, but in no event later than thirty (30) days after the date the transfer occurs.

        (b)    If the Company files a return with the IRS with respect to a transfer pursuant to IRC Section 6050K, the Company shall provide the transferor with a copy of the return on or before January 31 of the year following the year for which the return referred to in this Paragraph 10.5 is filed.

## ARTICLE XI
## RESIGNATION, DEATH, INSOLVENCY, INCAPACITY, OR REMOVAL OF MANAGER

### 11.1   **Manager**

        The Manager of this Company shall have the duties, responsibilities and obligations of the Manager as set forth in this Agreement and the Act. If for any reason the Manager is unable or unwilling to serve as the Manager, the successor Manager shall be appointed by a vote of the Required Majority of the Members. If a Required Majority of the Members fails to appoint a successor Manager, the Company shall be managed by the Members with votes based on Member Percentages until such time as a successor Manager is elected pursuant to the foregoing provisions. The name of the Manager shall be given to the Company and the Members by written notice in accordance with this Agreement.

### 11.2   **Definitions**

        (a)    <u>Insolvency of Manager</u>. A Manager shall be deemed insolvent if (i) the Manager makes an assignment for the benefit of his creditors, (ii) a charging order is issued against the Manager's Member Interest in the Company or such Member Interest is levied on or seized pursuant to process of law (*e.g.*, levy or seizure by the IRS) without the removal or discharge of such order, levy or seizure within ninety (90) days thereafter, (iii) a petition is filed by or against the Manager under federal bankruptcy law or other insolvency statute and such petition is not removed or discharged within ninety (90) days after such filing, or (iv) a trustee, receiver or liquidator of all or any substantial part of the Manager's properties is appointed without the Manager's consent or acquiescence and such appointment is not vacated or stayed within ninety (90) days thereafter or the appointment is not vacated within sixty (60) days after the expiration of any such stay.

        (b)    <u>Incapacity of Manager</u>. A Manager who is a natural person shall be deemed incapacitated if the Manager is judicially declared incompetent or insane or has a legal guardian or conservator appointed.

        (c)    <u>Dissolution of Entity Manager</u>. A corporate or other entity Manager shall be deemed to have dissolved if it is dissolved under any state or federal law permitting the dissolution of an entity or if an entity Manager is merged into another entity and the entity Manager is not the surviving entity resulting from such merger.

### 11.3    Termination of Manager

If a Manager ceases to be a Manager of the Company by reason of his insolvency, incapacity (if a natural person), dissolution (if a corporate or other entity), death (if a natural person) or resignation, then the business of the Company shall be continued by a successor Manager appointed pursuant to Paragraph 11.1. Any Manager that ceases to be a Manager of the Company shall not thereby cause a dissolution of the Company, and the business of the Company shall be continued by the Members and successor Manager pursuant to this Agreement. Any Manager that ceases to be a Manager of the Company shall not affect the Manager's rights as a Member and shall not constitute a withdrawal as a Member.

### 11.4    Removal of Manager

A Manager shall be removed only upon a determination by the vote or written consent of all Members that the Manager is guilty of fraud, gross negligence or willful misconduct in the carrying out of his duties as Manager (collectively "**Cause**"). For these purposes, the vote of any member who is an Affiliate of the manager shall be disregarded. If the Manager desires to dispute such determination, he may do so under the arbitration provisions contained in this Agreement. In such event, the Manager shall remain the Manager until a final determination is made by the arbitrator that the Manager has committed one or more of the acts constituting Cause.

### ARTICLE XII
### DEATH, WITHDRAWAL, INSOLVENCY, INCAPACITY,
### DISSOLUTION OR REMOVAL OF A MEMBER

### 12.1    Definitions

(a)    <u>Insolvency of a Member</u>. A Member shall be deemed insolvent if (i) the Member makes an assignment for the benefit of its creditors, (ii) a charging order is issued against the Member's interest in the Company or such Company interest is levied on or seized pursuant to process of law (*e.g.*, levy or seizure by the IRS) without the removal or discharge of such order, levy or seizure within ninety (90) days thereafter, (iii) a petition is filed by or against the Member under federal bankruptcy law or other insolvency statute and such petition is not removed or discharged within ninety (90) days after such filing, or (iv) a trustee, receiver or liquidator of all or any substantial part of the Member's properties is appointed without the Member's consent or acquiescence and such appointment is not vacated or stayed within ninety (90) days thereafter or the appointment is not vacated within sixty (60) days after the expiration of any such stay.

(b)    <u>Incapacity of a Member</u>. A Member who is a natural person shall be deemed incapacitated if the Member is judicially declared incompetent or insane or has a legal guardian or conservator appointed.

(c)    <u>Dissolution of Entity Member</u>. A corporate or other entity Member shall be deemed to have dissolved if it is dissolved under any state or federal law permitting the dissolution of an

24

entity or if an entity Member is merged into another entity and the entity Member is not the surviving entity resulting from such merger.

### 12.2  Termination of Members

If a Member ceases to be a Member of the Company by reason of its insolvency, incapacity (if a natural person), dissolution (if a corporate or other entity), or death (if a natural person), then such events shall not cause a dissolution of the Company, and the business of the Company shall be continued by the remaining Members.

### 12.3  Withdrawal of Members

A Member shall not voluntarily retire or withdraw from the Company, except in connection with a sale, assignment or transfer of its entire interest in the Company permitted under Article X, and then only if a transferee is admitted in its place pursuant to Article X.

## ARTICLE XIII
## DISSOLUTION

### 13.1  Events Causing Dissolution

The Company shall be dissolved and its affairs shall be wound up on the first to occur of any of the following events ("Events of Dissolution"):

(a)  Expiration of the term of the Company.

(b)  The unanimous written consent of the Members.

### 13.2  Winding Up and Liquidation of Company

On the occurrence of an Event of Dissolution, (a) the Manager, if he has not wrongfully dissolved the Company, or (b) the Members, if the Manager has wrongfully dissolved the Company, shall liquidate the Company assets as promptly as is consistent with obtaining the fair value thereof and, to the extent they are sufficient, apply and distribute the proceeds of the liquidation in the following order:

(a)  First, to the payment or satisfaction of all indebtedness secured by Company assets and all other Company debts, including but not limited to loans from Members and expenses of liquidation.

(b)  Second, to deposit a reasonable reserve for the payment of contingent liabilities and expenses of the Company in a trust account. After the passage of a reasonable period of time and the payment of any contingencies arising in that period, the balance remaining in the trust account shall be distributed to the Members in accordance with the ensuing provisions of this Paragraph 13.2.

25

(c)     Third, after allocation of profits and Losses arising from the liquidation of Company assets, the remaining liquidation proceeds shall be distributed to the Members in the same manner as Cash Available for Distribution is distributed under Paragraph 5.1.

### 13.3    Company Assets Sole Source of Return of Capital

Each Member shall look solely to the assets of the Company for all distributions with respect to its interest in the Company and shall have no recourse therefor, on dissolution or otherwise, against any other Member.

### 13.4    Deficit Capital Account Balance

If, following the dissolution and liquidation of the Company, a Member has a negative balance in its Capital Account, that Member shall not be obligated to contribute all or any part of the negative balance to the capital of the Company.

### 13.5    Requirement of Liquidation According to Capital Account Balances

Following the dissolution of the Company, liquidating distributions shall be made to those Members who have a positive balance in their Capital Accounts in accordance with their positive capital account balances pursuant to Treasury Regulations Section 1.704-1(b)(2)(ii)(b)(2). All such liquidating distributions shall be made by the close of the taxable year in which the liquidation occurs or, within ninety (90) days following the date of such liquidation, whichever is later. Liquidating distributions may be made to a trust established for the benefit of the Members for the purposes of liquidating Company assets, collecting amounts owed to the Company and paying any contingent or unforeseen liabilities or obligations of the Company or the Members in connection with the Company. The assets of any such trust shall be distributed to the Members at such time or times as the Manager may select in the same proportions as the amount distributed to such trust by the Company would otherwise have been distributed to the Members pursuant to this Agreement.

### ARTICLE XIV
### AMENDMENTS TO THIS AGREEMENT

### 14.1    Amendments Not Requiring Consent of Other Members

(a)     This Agreement may be amended by the Manager from time to time, without the consent of the Members, for the following purposes:

(i)     to add to the representations, duties or obligations of the Manager or surrender any right or power granted to the Manager under this Agreement for the benefit of the other Members;

(ii)    to cure any ambiguity, correct or supplement any provision of this Agreement which may be inconsistent with any other provision of this Agreement or make any other

26

provisions with respect to matters or questions arising under this Agreement which will not be inconsistent with the provisions of this Agreement;

(iii)    with respect to the Company's tax status as a partnership and not as an association taxable as a corporation for federal income tax purposes, to ensure the continuation of partnership tax status, provided, however, that, in the opinion of counsel to the Company, such amendment does not materially and adversely affect the rights or interests of any of the other Members;

(iv)    to modify the provisions of this Agreement to conform to the requirements of the IRC or any Treasury Regulations, or any corresponding provision of any successor law, provided, however, that no such amendment shall be adopted pursuant to this Paragraph 14.1(a)(iv) unless the adoption thereof (A) is for the benefit of or not materially adverse to the interests of the Members, (B) is not inconsistent with the purposes of the Company stated in Paragraph 2.6, (C) does not have a material adverse effect on the distributions or allocations of Cash Available for Distribution, Profits or Losses , and (D) does not adversely affect the status of the Company as a partnership for federal income tax purposes;

(v)    to effect changes of a ministerial nature which do not materially and adversely affect the rights of the Members;

(vi)    for any purpose required by a lender to obtain financing for the Property, provided, however, any such amendment is not materially inconsistent with the purposes of the Company set forth in Paragraph 2.6; and

(vii)    for any purpose directly or indirectly related to carrying out the purposes of the Company set forth in Paragraph 2.6 as long as such amendment does not materially and adversely affect the rights of the Members.

(b)    The foregoing provisions shall not limit or restrict amendments to this Agreement under Paragraphs 14.2 or 14.3.

14.2    **Amendments to Admit Additional or Substituted Members**

If this Agreement is amended to reflect the admission of an Additional Member, such amendment shall be signed by the Manager and by such Additional Member. If this Agreement is amended to reflect the substitution of a Member pursuant to this Agreement, the amendment to this Agreement shall be signed by the Manager, by the person or entity to be substituted, and by the transferor Member.

14.3    **Amendments Requiring Consent of Other Members**

(a)    With the exceptions of amendments permitted under Paragraphs 14.1 and 14.2, any amendment to this Agreement must be approved by the written consent of all Members.

(b)    Any amendment required to be approved as provided in Paragraph 14.3(a) may be proposed by any Member. Following such proposal, the Manager shall submit to the other Members a verbatim statement of any proposed amendment and an assessment as to the effect of such amendment on

27

the liability of the Members for the debts of the Company. The Manager shall include in any such submission the Manager's recommendations as to the proposed amendment.

### 14.4    Covenant to Sign Amendments

Each Member agrees to promptly execute, acknowledge and deliver to the Company such documents and instruments as may be necessary to effectuate any amendments to this Agreement authorized pursuant to this Article XIV. Notwithstanding the foregoing, the Manager shall be entitled to execute an amendment to this Agreement on behalf of the Members for the purposes permitted in Paragraphs 14.1 or 14.2.

### 14.5    Filing of Amendment

In making any amendments to this Agreement, there shall be prepared and filed for recordation by the Manager such documents and certificates as shall be required to be prepared and filed under the laws of any applicable jurisdiction.

### 14.6    Master Copy of Agreement

The Manager shall maintain a master copy of this Agreement at the Company's principal place of business, which master copy (the "Master Copy") shall reflect all deletions, additions and other changes to the text of this Agreement to the same extent as though they were part of a single unchanged Agreement. The Master Copy shall show the revision date and the effective date of each amendment. At any time and from time to time, the Manager may submit a Master Copy to all of the Members in conjunction with any proposed amendment to this Agreement. The Manager shall have the power and authority to issue certified copies of the then current Master Copy to third parties. As between third parties dealing with the Company, on the one hand, and the Company and/or the Members, on the other, the Company and the Members shall be bound by the certified copy of the Master Copy so issued by the Manager.

**ARTICLE XV**
**GENERAL PROVISIONS**

### 15.1    Special Power of Attorney

By signing this Agreement, each Member hereby grants to the Manager a special power of attorney with full power of substitution, irrevocably making, constituting and appointing the Manager as the attorney-in-fact of the Member, with power and authority to act in its name and on its behalf to execute, acknowledge and swear to in the execution, acknowledgement and filing of documents, which shall include, without limitation, the following:

(a)    This Agreement and any amendment to this Agreement which, under the laws of any applicable jurisdiction, are required to be filed or which the Manager elects to file in accordance with this Agreement;

28

(b)    Any other instrument or document required to be filed by the Company under the laws of any state or by any governmental agency, or which the Manager elects to file;

(c)    Any instrument or document that may be required to effect the continuation of the Company, the admission of an Additional Member or substituted Member, or the dissolution and winding up of the Company, provided that any consent of the Members required under this Agreement is first obtained and the continuation, admission or dissolution and winding up are otherwise in accordance with the terms of this Agreement;

(d)    Any amendment to this Agreement requested or permitted under Paragraphs 14.1 or 14.2; or

(e)    Any Master Copy maintained by the Manager pursuant to Paragraph 14.6.

This power of attorney: (i) is a special power of attorney coupled with an interest, (ii) is irrevocable, (iii) shall survive the death or incapacity of the granting Member and (iv) is limited to the matters set forth in this Paragraph 15.1. If a Member transfers its entire interest in the Company and the transferee is entitled to be substituted in the transferor's place, the power of attorney of granted by the transferor Member shall survive delivery of the transfer of the Member Interest for the sole purpose of enabling a Member to execute, acknowledge and/or file any instrument necessary to effect such substitution.

15.2    **Notices**

All notices and other writings required or permitted under the provisions of this Agreement ("**Notices**") shall be given in writing and shall be deemed given and served when served personally on a Member or seventy-two (72) hours after the deposit of the same with the United States Postal Service, sent certified or registered mail, with first-class postage prepaid thereon and, if intended for the Company, addressed to the Company at its principal place of business, or, if intended for a Member, to the Member at its address set forth each name on the signature page hereof, or to such other place as the Member may from time to time specify by way of written notice given to the Manager. Notwithstanding the foregoing, the actual receipt of any Notice shall satisfy the notice requirement hereunder.

15.3    **Arbitration**

In the event of any claim or dispute between or among the Company, the Manager, and any one or more of the Members or between or among any one or more of the Members arising out of or in any way related to this Agreement (or the breach, termination, or enforceability thereof), such claim or dispute shall, except as otherwise provided in this Paragraph 15.3, be exclusively and finally settled and determined by arbitration at Los Angeles County, California, in accordance with the rules of the American Arbitration Association (with no right to a court or jury trial). Judgment upon the written award rendered by the arbitrator (which includes the arbitrator's essential findings and conclusions) may be confirmed and rendered in any court of competent jurisdiction. The arbitrator shall have the power to order and settle an accounting of the Company. Judgment on the arbitration award may be entered in any court of competent jurisdiction. The provisions of Section 1283.05 of the California Code of Civil Procedure, which pertains to depositions

and discovery in arbitration proceedings, is incorporated herein by this reference. The parties to any arbitration may recover any costs or attorneys' fees that would be recoverable if the claims in question had been adjudicated in a court of law. In any event, no claim shall be arbitrated that otherwise would be barred by the statute of limitations in a judicial proceeding. The arbitrator will not have the authority to hear or decide any matter that was not processed in accordance with this Agreement. Notwithstanding the foregoing provisions of this Paragraph 15.3, the parties also agree that a restraining order, injunction, writ of possession, attachment or other equitable relief may be applied for from a court of competent jurisdiction by any party pending the resolution of the dispute. The arbitration shall then proceed in regard to all other issues and matters. Any such equitable proceedings shall be without prejudice to any party's rights under this Agreement to obtain relief in arbitration with respect to such matters.

### 15.4    Waiver of Right to Partition and Dissolution

The Members agree that irreparable damage will be done to the goodwill and reputation of the Company if any Member should bring an action in court to dissolve the Company. Care has been taken in this Agreement to provide what the parties believe is a fair and just payment in liquidation of the interest of the Members. Accordingly, each Member hereby waives and renounces its rights (a) to cause the Company or any of its assets to be liquidated; (b) to cause the appointment of a receiver for all or any portion of the assets of the Company; (c) to compel any sale of all or any portion of the assets of the Company pursuant to any applicable law; or (d) to file a complaint or to institute any proceeding at law or in equity to cause the termination, dissolution or liquidation of the Company. The waivers set forth in this Paragraph 15.4 are a material part of the consideration for the Members entering into this Agreement. Each of the Members has been induced to enter into this Agreement in reliance upon such waivers, and without such waivers no Member would have entered into this Agreement. The Members acknowledge that they have no interest in any specific assets of the Company and the Member Interests are solely personal property.

### 15.5    Attorneys' Fees

Should it become necessary for any party to this Agreement, or someone acting on their behalf, to incur costs and expenses to retain the services of an attorney to enforce this Agreement, or any portion thereof, the prevailing party in any litigation or arbitration shall be entitled to recover from the other(s) reasonable costs and attorneys' fees thereby expended.

### 15.6    Number, Gender and Tense

As used in this Agreement, the singular and plural numbers, the masculine, feminine and neuter genders and the past, present and future tenses shall each be deemed to include the others, wherever the context so indicates.

### 15.7    Governing Law

This Agreement and the rights, duties and obligations of the Members shall be governed by and construed and enforced according to the laws of the State of Delaware. The venue for the resolution of

30

any dispute shall be in the Superior Court of California for the County of Los Angeles or the United States District Court for the Central District of California, if that court has jurisdiction, subject to the requirement for arbitration in Los Angeles County as set forth in Paragraph 15.3.

15.8    **Final and Entire Agreement; Integration**

This Agreement is the final, entire and exclusive agreement between the parties and supersedes all prior and contemporaneous agreements, understandings, commitments, discussions, summaries, brochures, marketing information, projections, correspondence and other information, whether oral or written. No representation, promise, inducement or statement of intention has been made by any of the parties not embodied in this Agreement and no party shall be bound by or liable for any alleged representation, promise, inducement or statements of intention not set forth or referred to in this Agreement. Except as set forth in Article XIV or Section 15.1, no amendments or modifications to this Agreement may be made without a writing signed by the party to be bound.

15.9    **Unenforceability**

If any clause, provision or term of this Agreement shall be determined to be invalid or unenforceable, the remaining clauses, provisions and terms shall remain in full force and effect.

15.10   **Advice of Counsel**

**Each Member acknowledges that it has been advised to seek its own independent legal counsel with respect to this Agreement and the transactions contemplated hereby, including, but not limited to, the income tax consequences associated with obtaining a Member Interest in the Company. Each Member represents and warrants that it has sought the advice of independent counsel of its own choosing or has knowingly and voluntarily declined the opportunity to obtain such counsel.**

15.11   **Disclosures**

**The Member Interests have not been approved or disapproved by the Securities and Exchange Commission nor has the Securities and Exchange Commission passed upon the accuracy or adequacy of the Company or this Agreement. Any representation to the contrary is a criminal offense. Prospective Members are not to construe any prior or subsequent communications from the Manager or any of its agents or affiliates as investment, legal or tax advice. Each prospective member should consult its own counsel, accountant and other professional advisors as to legal, tax and other related matters concerning the Company. The Member Interests have not been registered under the Securities Act of 1933, as amended (the "Securities Act"), or under California or other state securities laws by reason, among other things, of specific exemptions under the provisions of the Securities Act relating to transactions not involving any public offering or solicitation. Specifically, in the event the Member Interests are deemed to constitute securities, the Company and the Manager are relying on Section 4(2) of the Securities Act and Regulation D promulgated thereunder, Section 25102(f) of the California**

31

Corporations Code, and similar provisions of other states' securities laws, relating to transactions not involving a public offering or solicitation. There is no public or other market for the Member Interests, nor will any such market develop. No implication or representation is made or intended by this Paragraph 15.11 whether the Member Interests are "securities" as that term is defined under federal and state securities laws.

15.12  **Counterpart Copies**

This Agreement may be signed in one or more counterparts and the signed counterparts, taken together, shall constitute an original of this Agreement for all purposes. For the purpose of assembling a fully executed copy of this Agreement, the Manager may detach all of the signature pages from each counterpart and attach the same to a counterpart copy of this Agreement, which assembled counterpart shall then constitute the original of this Agreement.

15.13  **Binding on Successors**

This Agreement shall be binding on and, subject to the restrictions on transfer of interests in the Company set forth herein, shall inure to the benefit of the heirs, devisees, legatees, personal representatives, successors and assigns of the respective parties hereto.

15.14  **Construction**

Each party to this Agreement has carefully reviewed this Agreement, is familiar with the terms and conditions herein. This Agreement is the product of negotiation among the parties hereto and is not to be interpreted or construed against any party hereto.

15.15  **Waiver**

The failure of any party to insist on strict compliance with any of the terms, covenants, or conditions of this Agreement by any other party shall not be deemed a waiver of that term, covenant, or condition, nor shall any waiver or relinquishment of any right or power at any time be deemed a waiver or relinquishment of that right or power for any other times.

IN WITNESS WHEREOF, this Operating Agreement of Renaissance on Grand, LLC is being executed as of the date set forth in the introduction to this Agreement.

**Manager:**

Rodmark, Inc.

By: _____
      Nathan Hochman, Secretary

32

*[SIGNATURES CONTINUE ON THE FOLLOWING PAGE]*

**Members**:

THE TITAN ORGANIZATION, INC.

By: _(signature)_

    Gary Warfel, President

                               Address:
                               633 West 5th Street, 56th Floor
                               Los Angeles, CA 90071
                               Facsimile:  (213) 236-3201

                               And also to:

                               Jerry A. Brown, Jr., Esq.
                               Fainsbert Mase & Snyder, LLP
                               11835 W. Olympic Ave., Suite 1100
                               Los Angeles, CA 90064
                               Facsimile:  (310) 473-8702

Capital Diligence Group, Inc.

By: _(signature)_

    Gary Warfel, President

                               Address:
                               633 West 5th Street, 56th Floor
                               Los Angeles, CA 90071
                               Facsimile:  (213) 236-3201

### *[SIGNATURES CONTINUE ON THE FOLLOWING PAGE]*

**Withdrawing Members:**

Wolterman Family Limited Partnership

By: _____

    Rod Wolterman, General Partner

James Grace Revocable Trust, effective November 1, 2005

By: _____

    Nathan Hochman, Trustee

Portfolio, LLC

By: _____

    Richardson Robertson, Manager

D-Gem, Inc.

By: _____

    Dien McCall, President

Tiki Investments, LLC

By: _____

    Jerry A. Brown, Jr., Manager

35

**Withdrawing Members:**

Wolterman Family Limited Partnership

By: _____

     Rod Wolterman, General Partner

James Grace Revocable Trust, effective November 1, 2005

By: _____

     Nathan Hochman, Trustee

Beaux Arts
Portfolio, LLC

By: _____

     Richardson Robertson, Manager

D-Gem, Inc.

By: _____

     Dien McCall, President

Tiki Investments, LLC

By: _____

     Jerry A. Brown, Jr., Manager

35

**Withdrawing Members:**

Wolterman Family Limited Partnership

By: _____

    Rod Wolterman, General Partner

James Grace Revocable Trust, effective November 1, 2005

By: _____

    Nathan Hochman, Trustee

Beaux Arts
Portfolio, LLC

By: _____

    Richardson Robertson, Manager

D-Gem, Inc.

By: _____

    Dien McCall, President

Tiki Investments, LLC

By: _____

    Jerry A. Brown, Jr., Manager

35

**Withdrawing Members:**

Wolterman Family Limited Partnership

By: _____

    Rod Wolterman, General Partner

James Grace Revocable Trust, effective November 1, 2005

By: _____

    Nathan Hochman, Trustee

Beaux Arts
Portfolio, LLC

By: _____

    Richardson Robertson, Manager

D-Gem, Inc.

By: _____

    Dien McCall, President

Tiki Investments, LLC

By: _____

    Jerry A. Brown, Jr., Manager

35