**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**



**CENTRAL DISTRICT OF CALIFORNIA**

**APPROVED FORM FOR PRODUCING A**

**THIRD AMENDED CHAPTER 11 DISCLOSURE STATEMENT**

# Table of Contents

I.    INTRODUCTION ...................................................................................................... 5
    A.    Purpose of This Document ....................................................................................... 5
    B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing ............. 6
        1.    Time and Place of the Confirmation Hearing .................................................. 6
        2.    Deadline For Voting For or Against the Plan .................................................. 7
        3.    Deadline For Objecting to the Confirmation of the Plan ................................ 7
        4.    Identity of Person to Contact for More Information ........................................ 7
    C.    Disclaimer ................................................................................................................ 7
II.    BACKGROUND ....................................................................................................... 7
    A.    Description and History of the Debtor's Business ................................................... 7
    B.    Principals/Affiliates of Debtor's Business ............................................................... 8
    C.    Management of the Debtor Before and After the Bankruptcy .................................. 9
    D.    Events Leading to Chapter 11 Filing ....................................................................... 9
    E.    Significant Events During the Bankruptcy ............................................................. 10
        1.    Bankruptcy Proceedings ................................................................................ 10
        2.    Other Legal Proceedings ............................................................................... 11
        3.    Actual and Projected Recovery of Preferential or Fraudulent Transfers ...... 12
        4.    Procedures Implemented to Resolve Financial Problems .............................. 12
        5.    Current and Historical Financial Conditions. ................................................ 12
III.    SUMMARY OF THE PLAN OF REORGANIZATION ........................................ 12
    A.    What Creditors and Interest Holders Will Receive Under The Proposed Plan ..... 12
    B.    Unclassified Claims ............................................................................................... 13
        1.    Administrative Expenses ............................................................................... 13
        2.    Priority Tax Claims ....................................................................................... 14
    C.    Classified Claims and Interests. ............................................................................ 15
        1.    Classes of Secured Claims ............................................................................ 15
        2.    Classes of Priority Unsecured Claims ........................................................... 18
        3.    Class of General Unsecured Claims .............................................................. 19
        4.    Class(es) of Interest Holders ......................................................................... 19
    D.    Means of Effectuating the Plan ............................................................................. 20
        1.    Funding for the Plan ...................................................................................... 20
        2.    Post-confirmation Management ..................................................................... 22
        3.    Disbursing Agent ........................................................................................... 22
    E.    Risk Factors ........................................................................................................... 22
    F.    Other Provisions of the Plan .................................................................................. 23
        1.    Executory Contracts and Unexpired Leases .................................................. 23
        a.    Assumptions .................................................................................................. 23
        b.    Rejections ...................................................................................................... 24
        2.    Changes in Rates Subject to Regulatory Commission Approval ................... 24
        3.    Retention of Jurisdiction ................................................................................ 24
    G.    Tax Consequences of Plan ..................................................................................... 24
IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES ............................... 25
    A.    Who May Vote or Object ....................................................................................... 26
        1.    Who May Object to Confirmation of the Plan ............................................... 26
        2.    Who May Vote to Accept/Reject the Plan ..................................................... 26
        a.    What Is an Allowed Claim/Interest ............................................................... 26
        b.    What Is an Impaired Claim/Interest .............................................................. 26
        3.    Who is Not Entitled to Vote ........................................................................... 27
        4.    Who Can Vote in More Than One Class ........................................................ 27
        5.    Votes Necessary to Confirm the Plan ............................................................ 28
        6.    Votes Necessary for a Class to Accept the Plan ............................................ 28
        7.    Treatment of Nonaccepting Classes .............................................................. 28
        8.    Request for Confirmation Despite Nonacceptance by Impaired Class(es) .... 28
    B.    Liquidation Analysis .............................................................................................. 29

V.    EFFECT OF CONFIRMATION OF PLAN....................................................................... 33
    A.    Discharge................................................................................................................... 33
    B.    Revesting of Property in the Debtor ...................................................................... 33
    C.    Modification of Plan................................................................................................ 34
    D.    Post-Confirmation Status Report........................................................................... 34
    E.    Quarterly Fees .......................................................................................................... 34
    F.    Post-Confirmation Conversion/Dismissal ........................................................... 34
    G.    Final Decree .............................................................................................................. 35
    VI.    SUPPORTING DECLARATIONS & EXHIBITS ........................................................... 36

1  Marc Weitz (SBN 242830)
   633 West 5th Street
2  Suite 2800
   Los Angeles, CA 90071
3  (213) 223-2350
   Fx: (213) 784-5407
4  marcweitz@weitzlegal.com
   Attorney for The Olympic on Grand, LLC
5

6

7  **UNITED STATES BANKRUPTCY COURT**

8  **CENTRAL DISTRICT OF CALIFORNIA**

9  **LOS ANGELES DIVISION**

10

11 | In re: | CASE NO. 2:09-bk-10549 |
12 | | Assigned to the Honorable Ernest M. Robles |
   | THE OLYMPIC ON GRAND, LLC | |
13 | Debtor. | Chapter 11 |
14 | | |
15 | | **THIRD AMENDED DISCLOSURE STATEMENT DESCRIBING ORIGINAL CHAPTER 11 PLAN** |
16 | | |
17 | | **Disclosure Statement Hearing** |
18 | | Date:    October 20, 2009 |
   | | Time:    10 a.m. |
19 | | Ctrm:    1568 |
20 | | 255 East Temple Street |
   | | Los Angeles, CA 90012 |
21 | | **Plan Confirmation Hearing** |
22 | | |
   | | Date:    TBD |
23 | | Time:    TBD |
   | | Ctrm:    1568 |
24 | | 255 East Temple Street |
25 | | Los Angeles, CA 90012 |

26

27

28

F-3017-1

## I.    INTRODUCTION

The Olympic on Grand, LLC is the Debtor in a Chapter 11 bankruptcy case. On  January 12, 2009,   The Olympic on Grand, LLC commenced a bankruptcy case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code ("Code"), 11 U.S.C. § 101 et seq., Chapter 11 allows the Debtor, and under some circumstances, creditors and others parties in interest, to propose a plan of reorganization ("Plan").  The Plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. The Olympic on Grand, LLC is the party proposing the Plan sent to you in the same envelope as this document.  THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.

This is a reorganizing plan.  In other words, the Proponent seeks to accomplish payments under the Plan by generating income through rental income from (1) the operation of a parking lot on the property and use of the nightclub on the property until (2) financing is obtained to complete  the  Olympic  and  Grand  project  as  a  5-star  Hotel  and  Mixed-use  property.    The Effective Date of the proposed Plan is December 1, 2009.

A.  Purpose of This Document

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT**:

     (1)    WHO CAN VOTE OR OBJECT,

     (2)    WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD  RECEIVE IN LIQUIDATION,

F-3017-1

(3)    THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,

(4)    WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN,

(5)    WHAT IS THE EFFECT OF CONFIRMATION, AND

(6)    WHETHER THIS PLAN IS FEASIBLE.

This Disclosure Statement cannot tell you everything about your rights.    You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement.    If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern. The Code requires a Disclosure Statement to contain "adequate information" concerning the Plan.  The Bankruptcy Court ("Court") has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan. Any party can now solicit votes for or against the Plan.

B.  Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

1.  Time and Place of the Confirmation Hearing

The hearing in which the Court will determine whether or not to confirm the Plan has yet to be scheduled.

---

**THIRD AMENDED CHAPTER 11 DISCLOSURE STATEMENT**

6

F-3017-1

2.   Deadline For Voting For or Against the Plan

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to Marc Weitz (Attorney for Debtor), 633 West 5th Street, Ste 2800, Los Angeles, CA 90071. Your ballot must be received by TBD or it will not be counted.

3.   Deadline For Objecting to the Confirmation of the Plan

Objections to the confirmation of the Plan must be filed with the Court and served upon Marc Weitz (Attorney or Debtor), 633 West 5th Street, Ste 2800, Los Angeles, CA 90071 by TBD.

4.   Identity of Person to Contact for More Information

Regarding the Plan any interested party desiring further information about the Plan should contact Marc Weitz (Attorney for Debtor), 633 West 5th Street, Ste 2800, Los Angeles, CA 90071.

C.   Disclaimer

The financial data relied upon in formulating the Plan is based on financial projections.  The information contained in this Disclosure Statement is provided by The Olympic on Grand, LLC. The Plan Proponent represents that everything stated in the Disclosure Statement is true to the Proponent's best knowledge.  The Court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

II.    **BACKGROUND**

A.   Description and History of the Debtor's Business

The Debtor is an LLC.

F-3017-1

The Debtor is in the business of developing the property located at Olympic and Grand in downtown Los Angeles, CA into a 5-star Hotel and Mixed Use Retail Property.

The property is located at 1020-1024 S. Grand Avenue, within the Downtown area of the incorporated City of Los Angeles, in the central portion of Los Angeles County.   The   subject property currently consists of an asphalt-paved, pay parking lot, and a 28,171 square foot. two-story dance hall. The parking lot is situated on the southeast corner of Olympic Boulevard and Grand Avenue. The dance hall improvements are situated on an Interior parcel along Grand Avenue, at the southeastern corner of the subject property. The subject site consists of seven separate parcels totaling 58,051 square feet, or 1.333 acres.

The Debtor has been in this business since October 2006.

For more details see attached Exhibit J – Project Details

B.  Principals/Affiliates of Debtor's Business

Richardson Robertson III – Managing Member

| Name | Nature of Ownership | % Stockownership |
|---|---|---|
| 2006 James Myron Trust | Class B | 20% |
| Dien McCall | Class C | 5% |
| Wolterman Family Limited Partnership | Class C | 15% |
| Renaissance on Grand, LLC | Class A | 57.50% |

**THIRD AMENDED CHAPTER 11 DISCLOSURE STATEMENT**

8

F-3017-1

| | | |
|---|---|---|
| Jerry Brown | Class C | 2.50% |

C.  Management of the Debtor Before and After the Bankruptcy

Richardson Robertson III

D.  Events Leading to Chapter 11 Filing

Here is a brief summary of the circumstances that led to the filing of this Chapter 11 case:

The petition for reorganization was sought for several reasons. The loan with Vineyard Bank was not extended, as anticipated, per the loan agreement with Vineyard Bank to the end of May 2009. Vineyard demanded that the loan to be paid off even though the interest remained current. Management has been diligently working on the financing of the project to be developed on the property. Vineyard Bank filed a notice of default and then a notice of sale. In order to protect the many creditors in the project we felt that we must file a reorganization petition. This bankruptcy protects all the investors rather than only Vineyard Bank being paid and would allow the Debtor time to secure the financing and payoff all the creditors.

Further, prior to the bankruptcy, a Receiver was appointed in July 2008 by the state court due to mismanagement by the previous manager of the Olympic on Grand, LLC, Gary Warfel.

In December, the Olympic on Grand, LLC filed a pro-se petition. This was immediately objected to by the U.S. Trustee's office due to a pro-se petition being improper for a corporation. As a result, the Olympic on Grand, LLC stipulated to dismiss the first bankruptcy in order to file a proper petition. The first bankruptcy was dismissed in January and a proper petition was filed on January 12, 2009, beginning this bankruptcy.

F-3017-1

E.  Significant Events During the Bankruptcy

1.  Bankruptcy Proceedings

The following is a chronological list of significant events which have occurred during this case:

- On January 22, 2009 Vineyard Bank, N.A. filed a motion seeking relief from stay and relief from turnover of the property by the Receiver. On February 10, 2009, a hearing was held on these two motions. The relief from turnover was granted and the relief from stay hearing was continued to March 23, 2009. Judge Robles, the judge on this case, ordered that a plan be filed by March 16, 2009 or the relief from stay would be granted and the case dismissed order turned over to a trustee.

- March 9, 2009, debtor filed a motion for a continuance of the deadline to file a plan in order to allow time to seek investors, the motion was denied.

- On March 10, 2009 debtor filed a motion for use of cash collateral for a trip to Saudi Arabia to meet with potential investors on shortened time. The motion for shortened time was denied.

- The Debtor filed its plan and Disclosure Statement on March 16, 2009 and a hearing for approval of the Disclosure Statement was held on April 22, 2009. The court did not approve the disclosure statement for lack of information and allowed the Debtor until May 29, 2009 to file an amended Disclosure Statement with an approval hearing to be held on June 23, 2009.

- Vineyard filed a motion to have bankruptcy declared a Single Asset Real Estate case that was granted on April 8, 2009.

- Debtor moved to use cash collateral on 3/26/09 and was denied on April 22, 2009.

- Myron trust moved to terminate the period of exclusivity, which was granted on 4/8/09.

- The Adversarial Case (case no. 09-ap-01047) was closed by mutual stipulation of Debtor & Defendant on April 22, 2009.

F-3017-1

- The Debtor filed its Amended Disclosure Statement on May 29, 2009 and a hearing for approval of the Disclosure Statement was held on June 23, 2009. The court did not approve the disclosure statement for lack of information and allowed the Debtor until August 10, 2009 to file an this Second Amended Disclosure Statement with an approval hearing held on August 20, 2009.
- On July 31, 2009, Creditor Myron Trust filed their own plan and disclosure statement. A hearing on this plan is scheduled for October 21, 2009 at 10am.
- On August 20, 2009, the judge denied approval of the Second Amended Disclosure Statement and allowed until September 21, 2009 to file a Third Amended Disclosure Statement with a hearing scheduled for October 20, 2009.

The Court has approved the employment of the following professionals: Marc Weitz, Bankruptcy Attorney for Debtor, approved March 4, 2009.

2.   Other Legal Proceedings

In addition to the proceedings discussed above, the Debtor is currently involved in the following nonbankruptcy legal proceedings:

| Caption of Suit | Case Number | Nature of Proceeding | Court | Status | Outcome if lost |
|---|---|---|---|---|---|
| Vineyard Bank vs. The Olympic on Grand, LLC | BC393730 | Judicial Foreclosure | Superior Court of California (Central District) | Turned over to receiver | Property is sold |
| Locke Media vs. The Olympic on Grand, LLC | BC379617 | Breach of Contract | Superior Court of California (Central District) | Case Pending | Potential liability |
| Arup North America Limited vs. The Olympic on Grand, LLC | BC401795 | Breach of Contract | Superior Court of California (Central District) | Case Pending | Potential Liability |
| The Estate of Omar Cosina vs. The Olympic on Grand, LLC | BC385368 | Wrongful Death | Superior Court of California (Central District) | Case Pending | Insured |

**THIRD AMENDED CHAPTER 11 DISCLOSURE STATEMENT**

F-3017-1

| Brandon Clark vs. The Olympic on Grand, LLC | BC401885 | Wrongful Death | Superior Court of California (Central District) | Case Pending | Insured |
|---|---|---|---|---|---|

3.  Actual and Projected Recovery of Preferential or Fraudulent Transfers

Nothing is estimated to be realized from the recovery of fraudulent and preferential transfers. The following is a summary of the fraudulent conveyance and preference actions filed or to be filed in this case:   N/A

4.  Procedures Implemented to Resolve Financial Problems

To attempt to fix the problems that led to the bankruptcy filing, Debtor has implemented the following procedures:

- Obtaining investors for the ultimate development of the project which will pay back all creditors in full
- Management found a more profitable parking company to rent the property
- Sought tenants to rent the night club venue.

5.  Current and Historical Financial Conditions.

The identity and fair market value of the estate's assets are listed in Exhibit A.  See also the Debtor's financial history set forth in Exhibit B.

## III.   SUMMARY OF THE PLAN OF REORGANIZATION

A.  What Creditors and Interest Holders Will Receive Under The Proposed Plan

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority. The Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan provides the treatment each class will receive.

F-3017-1

B.  Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has not placed the following claims in a class.

1.  Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code section 507(a)(1).  The Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists all of the Debtor's § 507(a)(1) administrative claims and their treatment under the Plan (see Exhibit F for detailed information about each administrative expense claim):

| Name | Amount Owed | Treatment |
|---|---|---|
| Marc Weitz (Attorney for Debtor) | $50,000 (est) | Paid in full on Effective Date |
| Property Taxes | $47,000 (est) | Paid in full on Effective Date |
| Robb Evans & Associates (Receiver) | $20,000 (est) | Paid in full on Effective Date |
| Clerk's Office Fees | $250 | Paid in full on Effective Date |
| Office of the U.S. Trustee | $650 | Paid in full on Effective Date |
| TOTAL | $117,900 (est) | |

Court Approval of Fees Required:

The Court must rule on all fees listed in this chart before the fees will be owed. For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and

F-3017-1

serve a properly noticed fee application and the Court must rule on the application.  Only the amount of fees allowed by the Court will be owed and required to be paid under this Plan.

As indicated above, the Debtor will need to pay $117,900 worth of administrative claims on the Effective Date of the Plan unless the claimant has agreed to be paid later or the Court has not yet ruled on the claim.  As indicated elsewhere in this Disclosure Statement, Debtor will have $241,000 amount of cash on hand on the Effective Date of the Plan.  The source of this cash will be rent from the parking lot operations.

2.  Priority Tax Claims

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8)40.  The Code requires that each holder of such a 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding six years from the date of the assessment of such tax.

The following chart lists all of the Debtor's Section 507(a)(8)41 priority tax claims and their treatment under the Plan:

| Description | Amount Owed | Treatment[16] |
|---|---|---|
| Franchise Tax Board State Tax 5/15/09 | 5,408.25 | • $179.11 / month beginning in year 4 <br> • 3% interest PIKs until year 4 <br> • Paid in full by year 6 <br> • Paid in upon receipt of financing for project |
| IRS Federal Tax 12/31/07 | 29,495.00 | • $976.84 / month beginning in year 4 <br> • 3% interest PIKs until year 4 <br> • Paid in full by year 6 <br> • Paid in upon receipt of financing for project |
| LA County Tax Collector Property Tax 11/11/08 | 568,354.96 | • $18,823.16 / month beginning in year 4 <br> • 3% interest PIKs until year 4 <br> • Paid in full by year 6 <br> • Paid in upon receipt of financing for project |

**THIRD AMENDED CHAPTER 11 DISCLOSURE STATEMENT**
14

F-3017-1

| | | |
|---|---|---|
| City of LA Office of Finance City Business Tax | 2,333.84 | • $77.29 / month beginning in year 4<br>• 3% interest PIKs until year 4<br>• Paid in full by year 6<br>• Paid in upon receipt of financing for project |
| EDD 12/31/07 | 1,010.13 | • $33.45 / month beginning in year 4<br>• 3% interest PIKs until year 4<br>• Paid in full by year 6<br>• Paid in upon receipt of financing for project |
| State Board of Equalization 5/17/08 | 4,307.11 | • $142.65 / month beginning in year 4<br>• 3% interest PIKs until year 4<br>• Paid in full by year 6<br>• Paid in upon receipt of financing for project |

C.    Classified Claims and Interests

1.    Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate. The following chart lists all classes containing Debtor's secured pre-petition claims and their treatment under this Plan:

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | Secured claim of:<br>Vineyard Bank, N.A.<br>☐ Collateral description = Property at Olympic and Grand<br>☐ Collateral value = $9,000,000<br>☐ Priority of security int. = 1st<br>☐ Principal owed = $18,000,000<br>☐ Pre-pet. arrearage | N | (1) Y<br>(2) N | • $14,000,000 PV<br>• $58,333.33 monthly payment for 10 years<br>• Then $92,393.75 monthly payment for 20 years<br>• 5% interest<br>• Retains lien on property at Olympic and Grand.<br>• Paid in full upon receipt of financing for project |

F-3017-1

| | | | | |
|---|---|---|---|---|
| | amount = $18,000,000 ☐ Total claim amount = $18,000,000 | | | |
| 2 | Secured claim of: Loma Vista Financial ☐ Collateral description = Property at Olympic and Grand ☐ Collateral value = $9,000,000 ☐ Priority of security int. = 2nd ☐ Principal owed = $3,000,000 ☐ Pre-pet. arrearage amount = $3,000,000 ☐ Total claim amount = $3,000,000 | N | (1) Y (2) N | • 0 • Paid in full upon receipt of financing for project |
| 3 | Secured claim of: James Myron Trust – 4/21/01 ☐ Collateral description = Property at Olympic and Grand ☐ Collateral value = $9,000,000 ☐ Priority of security int. = 3rd ☐ Principal owed = 17,500,000 ☐ Pre-pet. arrearage amount = 17,500,000 ☐ Total claim amount = 17,500,000 | Y | (1) Y (2) N | • 0 • Paid in full upon receipt of financing for project |
| | Secured claim of: | Y | (1) Y | • 0 |

**THIRD AMENDED CHAPTER 11 DISCLOSURE STATEMENT**

16

F-3017-1

| | | | | |
|---|---|---|---|---|
| 4 | James Myron Trust – 4/21/01<br><br>☐ Collateral description = Property at Olympic and Grand<br><br>☐ Collateral value = $9,000,000<br><br>☐ Priority of security int. = Partial Assignment of Loma Vista's Note<br><br>☐ Principal owed = 1,500,000<br><br>☐ Pre-pet. arrearage amount = 1,500,000<br><br>☐ Total claim amount = 1,500,000 | | (2) N | • Paid in full upon receipt of financing for project |
| 4 | Secured claim of:<br><br>Richardson Robertson & Associates, Inc.<br><br>☐ Collateral description = Property at Olympic and Grand<br><br>☐ Collateral value = $9,000,000<br><br>☐ Priority of security int. = Partial Assignment of Loma Vista's Note<br><br>☐ Principal owed = 655,000<br><br>☐ Pre-pet. arrearage amount = 655,000<br><br>☐ Total claim amount = 655,000 | N | (1) Y<br>(2) N | • 0<br>• Paid in full upon receipt of financing for project |
| | Secured claim of:<br><br>SCS Equities<br><br>☐ Collateral description = Property at Olympic and Grand<br><br>☐ Collateral value = | N | (1) Y<br>(2) N | • 0<br>• Paid in full upon receipt of financing for project |

4

F-3017-1

| | | | | |
|---|---|---|---|---|
| 4 | $9,000,000<br><br>☐ Priority of security int. = Partial Assignment of Loma Vista's Note<br><br>☐ Principal owed = 45,000<br><br>☐ Pre-pet. arrearage amount =<br>45,000<br><br>☐ Total claim amount =<br>45,000 | | | 4 |
| 4 | Secured claim of:<br>CK Investments<br>☐ Collateral description = Property at Olympic and Grand<br>☐ Collateral value = $9,000,000<br>☐ Priority of security int. = Partial Assignment of Loma Vista's Note<br>☐ Principal owed = 500,000<br>☐ Pre-pet. arrearage amount =<br>500,000<br><br>☐ Total claim amount =<br>500,000 | N | (1) Y<br>(2) N | • 0<br>• Paid in full upon receipt of financing for project<br><br><br><br><br><br>4 |

2.   Classes of Priority Unsecured Claims

Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders

F-3017-1

may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

The following chart lists all classes containing Debtor's 507(a)(3), (a)(4), (a)(5), (a)(6), and (a)(7) priority unsecured claims and their treatment under this Plan (see Exhibit G for more detailed information about each priority unsecured claim)

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| | Priority unsecured claim pursuant to<br>☐ Total amt of claims =0 | N | n/a |

### 3.  Class of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a).  The following chart identifies this Plan's treatment of the class containing all of Debtor's general unsecured claims (see Exhibit H for detailed information about each general unsecured claim):

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 5 | General unsecured claims<br><br>Total amt of claims = $14,973,829.36 | (1) Y<br>(2) N | • 0<br>• Paid in upon receipt of financing for project |

### 4.  Class(es) of Interest Holders

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor.  If the Debtor is a corporation, entities holding preferred or common stock in the Debtor are interest holders.  If the Debtor is a partnership, the interest holders include both general and limited partners.  If the Debtor is an individual, the Debtor is the interest holder.

The following chart identifies the Plan's treatment of the class of interest holders (see Exhibit I for more detailed information about each interest holder):

**THIRD AMENDED CHAPTER 11 DISCLOSURE STATEMENT**
19

F-3017-1

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|-----------|
| 6 | Interest holders | **(1)** Y <br> **(2)** N | • 0 <br> • Paid in upon receipt of financing for project |

D. Means of Effectuating the Plan

1. Funding for the Plan

The Plan will be funded by the following:  The plan will be by (1) rent from operation of the parking lot and rental of the nightclub, (2) further investment to develop the project into its full use as a 5-star hotel and mixed-use property.

(1) Funding for the short term plan is by Central Parking who has agreed to operate the parking lot and rent out the existing building. They anticipate revenue of at least 65,000.00 per month, which is twice the current amount of $25,000 per month. They also anticipate renting the building to TV and Film production companies who also will rent the parking lot for production facilities. The activities of "LA Live" and the Nokia Theatre in addition to overflow Staples Center parking partly accounts for the projected added revenue. Revenue will be generated by expanding the parking by creating additional parking spaces in area that formally served as a patio for the previous nightclub. This will add 16 additional parking stalls for everyday use and provide additional revenue. Additional revenue can also be generated easily made by allowing advertisements to be placed for a fee on the side of the existing building. Both of these plans could not happen with the previous lessee in possession and the Receiver not allowing us access to the facility or the overall operation of the parking lot and building. Also as part of the plan, the

F-3017-1

parking lot will be operated as a business. Currently the parking lot is leased to an outside operator for 25,000.00 per month, the new parking company's revenue is projected to be double that. After paying rent he makes the profit. The building would only need trash removed to allow it to be leased to third parties for events. Our estimate is about $10,000.00 for clean-up. Central parking has agreed to move the fence to accommodate the additional stalls and clean the parking lot at their expense. See the exhibit to the Declaration of Jason Johnston for a projection of parking lot revenue.

Currently, the property is in the control of the Receiver and the new parking plan has not been implemented. The Debtor is currently working with the Receiver to switch to the more profitable Central Parking.

(2) Funding for development of the main project would come from Al-Thinayyan Holding Group (http://althinayyangroup.com/).

Al-Thinayyan began in the early 60's, the company began as a small typical inland freight transportation firm owned and managed by the group's current president.

During the giant development programs undertaken by the government of the Kingdom of Saudi Arabia in the mid 70's, the company showed an enormous growth and participated in the diverse development plans of the Kingdom.

With total commitment to quality and reliability in all its products and services, the group is currently operating in diverse activities such as healthy water bottling and distribution, metal works, plastic compounding, chemicals factory, agriculture and livestock, construction, real estate development and marketing, crusher plants supplying base, coarse sub base and rock fill materials, sports wear and fitness and health club equipment.

F-3017-1

The Group, presently, has extensive international agent offices in the USA, Europe & Far East facilitating its international business contacts and executing its trading transactions with countries around the globe.

A letter of intent is expected in the next few months. The process takes approximately 9 months to complete and has been ongoing for 4 months now. Richardson Robertson III was flown to Saudi Arabia in March at Al Thayyan's expense to present the project. Discussions for funding are on-track and continue currently.

In the case, the Al Thayyan does not invest in the property, then The Olympic on Grand, LLC will continue to seek other investors while part 1 of this plan is being executed. The time to find other financing depends on the market. Due to the current economic situation it is hard to predict. Plan 1 is sustainable until the market turns around.

2.    Post-confirmation Management

Richardson Robertson III

3.    Disbursing Agent

The Olympic on Grand, LLC shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan.  The Disbursing Agent shall serve without bond and shall receive no payment for distribution services rendered and expenses incurred pursuant to the Plan.

E.  Risk Factors

The proposed Plan has the following risks:

1.    The Olympic on Grand, LLC will be unable to find financing to ultimately develop the project into a 5-star Hotel and Mixed-use property.

F-3017-1

2.  Parking operations revenue and leasing of the night club revenue will be insufficient to make the monthly payments under the plan.

3.  Legal liabilities from pending suits will cause the Olympic on Grand, LLC to miss payments.

4.  That funding from the Saudi Group of Al-Thanayyan will not come through.

F.  Other Provisions of the Plan

The plan is to pay off Vineyard Bank, N.A. at the property's worth of $14 million over a 30-year period with the revenue from the parking lot and renting the night club on the property; while the Olympic on Grand, LLC continues to seek funding to develop the project fully. When such financing is found all creditors and investors will be paid in full per the original agreements.

1.  Executory Contracts and Unexpired Leases

a.  Assumptions

The following are the unexpired leases and executor contracts to be assumed as obligations of the reorganized Debtor under this Plan (see Exhibit C for more detailed information on unexpired leases to be assumed and Exhibit D for more detailed information on executory contracts to be assumed):   N/A

On the Effective Date, each of the unexpired leases and executory contracts listed above shall be assumed as obligations of the reorganized Debtor.  The Order of the Court confirming the Plan shall constitute an Order approving the assumption of each lease and contract listed above.  If you are a party to a lease or contract to be assumed and you object to the assumption of your lease or contract, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan. See Section {I.B.3.} of this document for the specific date.

---

F-3017-1

    b.  Rejections

On the Effective Date, the following executory contracts and unexpired leases will be rejected: Unified Parking Services, Inc.

The order confirming the Plan shall constitute an Order approving the rejection of the lease or contract. If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan. See Section {I.B.3.} of this document for the specific date.

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT IS APRIL 27, 2009.

Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

2.  Changes in Rates Subject to Regulatory Commission Approval

This Debtor is not subject to governmental regulatory commission approval of its rates.

3.  Retention of Jurisdiction.

The Court will retain jurisdiction to the extent provided by law.

G.  Tax Consequences of Plan

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues this Plan may present to the Debtor. The Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

F-3017-1

The following are the tax consequences which the Plan will have on the Debtor's tax liability:

- In Plan 1: The Debtor will pay income taxes on revenue received from parking revenue and the night club minus operational expenses. And may have cancellation of debt taxes for the amount of debts that will be reduced

- In Plan 2: The Debtor will pay income taxes on revenue from the final project minus operations expenses.

## IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.    The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. The proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan.  Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible.  These requirements are not the only requirements for confirmation.

F-3017-1

A.  Who May Vote or Object

1.  Who May Object to Confirmation of the Plan

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

2.  Who May Vote to Accept/Reject the Plan

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

a.  What Is an Allowed Claim/Interest

As noted above, a creditor or interest holder must first have an allowed claim or interest to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim.  When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS APRIL 27, 2009. A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed.  A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest. Consult Exhibits F through L to see how the Proponent has characterized your claim or interest.

b.  What Is an Impaired Claim/Interest

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is impaired under the Plan. A class is impaired if the Plan alters the legal, equitable, or

F-3017-1

contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

In this case, the Proponent believes that all classes are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Proponent believes that no classes are unimpaired and that holders of claims in each of these classes therefore do not have the right to vote to accept or reject the Plan. Parties who dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponent has incorrectly characterized the class.

### 3.    Who is Not Entitled to Vote

The following four types of claims are not entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(8)76; and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan.  EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 4.    Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

F-3017-1

5.   Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in Section {IV.A.8.}.

6.   Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the Plan.  A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to accept the Plan.

7.   Treatment of Nonaccepting Classes

As noted above, even if all impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code.  The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown."  The Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

8.   Request for Confirmation Despite Nonacceptance by Impaired Class(es)

The party proposing this Plan does not ask the Court to confirm this Plan by cramdown on impaired classes n/a if any of these classes do not vote to accept the Plan.

Please note that the proposed Plan treatment described by this Disclosure Statement cannot be crammed down on the following classes :   n/a. AS A RESULT, IF ANY OF THESE

F-3017-1

CLASSES DOES NOT VOTE TO ACCEPT THE PLAN, THE PLAN WILL NOT BE CONFIRMED.

B.  Liquidation Analysis

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis.  Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien.   Administrative claims are paid next.   Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation. The Plan Proponent maintains that this requirement is met here for the following reasons: In a chapter 7, the forced sale of the property in the estate would yield only $9 million versus $14 million in this reorganization plan and more if development financing is found. Therefore the creditors receive more than under a chapter 7 liquidation.

Below is a demonstration, in balance sheet format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or interest holder would receive under a Chapter 7 liquidation.  (See Exhibit E for a detailed explanation of how the following assets are valued. This information is provided by the Olympic on Grand, LLC.)

F-3017-1

| ASSETS VALUE AT LIQUIDATION VALUES: | |
|---|---|
| CURRENT ASSETS: | |
| a.    Cash on hand | $193,856.52 |
| b.    Accounts receivable | 0 |
| c.    Inventories | 0 |
| TOTAL CURRENT ASSETS | $193,856.52 |
| FIXED ASSETS | |
| a.    Office furniture & equipment | $10,000 |
| b.    Machinery & equipment | 0 |
| c.    Automobiles | 0 |
| d.    Building & Land | $9,000,000 |
| TOTAL FIXED ASSETS | $9,010,000 |
| OTHER ASSETS | 0 |
| a.    Customer list | 0 |
| b.    Other intangibles | 0 |
| TOTAL OTHER ASSETS | 0 |
| TOTAL ASSETS AT LIQUIDATION VALUE | $9,203,856.52 |
| Less: Secured creditor's recovery[1] | ($9,203,856.52) |
| Less: Chapter 7 trustee fees and expenses | 0 |
| Less: Chapter 11 administrative expenses | ($117,790) |
| Less: Priority claims, excluding administrative expense claims | (610,909.29) |
| Less: Debtor's claimed exemptions | 0 |
| (1) Balance for unsecured claims | 0 |
| (2) Total amt of unsecured claims | 0 |

[1] Note:    The deficiency portion of a secured recourse claim must be added to the total amount of  $29,324,000 unsecured claims.

**THIRD AMENDED CHAPTER 11 DISCLOSURE STATEMENT**

F-3017-1

% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CH. 7 LIQUIDATION[2]: = 0%

% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WILL RECEIVE

    OR RETAIN UNDER THIS PLAN:       =   0%

Below is a demonstration, in tabular format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or holder would receive under a Chapter 7 liquidation.

| CLAIMS & CLASSES[85] | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| Administrative Claims | 100% | 0 |
| Priority Tax Claims | 100% | 0 |
| Class 1 – Vineyard Bank, N.A. | 78%, 100% | 50% |
| Class 2 – Loma Vista Financial | 0%, 100% | 0% |
| Class 3 – James Myron Trust | 0%, 100% | 0% |
| Class 4 - General Unsecured Claims | 0%, 100% | 0% |
| Class 5 – Interest Holders | 0%, 100% | 0% |

C.    Feasibility

    Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

    There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to

---

[2] Note:   If this percentage is greater than the amount to be paid to the unsecured creditors on a "present value basis" under the Plan, the Plan is not confirmable unless Proponent obtains acceptance by every creditor in the general unsecured class.

F-3017-1

pay all the claims and expenses which are entitled to be paid on such date.  The Plan Proponent maintains that this aspect of feasibility is satisfied as illustrated here:

Cash Debtor will have on hand by Effective Date $268,856.52

To Pay: Administrative claims

To Pay: Statutory costs & charges

To Pay: Other Plan Payments due on Effective Date

Balance after paying these amounts............... $151,066.52

The sources of the cash Debtor will have on hand by the Effective Date, as shown above are:

 (1) Revenue from parking operations

 (2) Revenue from nightclub rental

Cash in DIP Account now $193,856.52

Additional cash DIP will accumulate from net earnings between now and Effective Date

+

Borrowing $0

+

Capital Contributions $0

+

Other $75,000 from parking operations

Total $268,856.52

Borrowing is from n/a and will be paid back as follows: n/a.

        The second aspect considers whether the Proponent will have enough cash over the life of the Plan to make the required Plan payments.

        The Proponent has provided financial statements which include both historical and projected financial information. Please refer to Exhibit B for the relevant financial statements.

F-3017-1

YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL STATEMENTS.

In summary, the Plan proposes to pay Vineyard Bank $58,333.33 each month for 10 years at 5% interests and then $92,393.75 each month for the next 20 years for a present value of $14 million while financing is sought to develop the project in full. Once project financing is received, all classes will be paid in full. As Debtor's financial projections demonstrate, Debtor will have an average cash flow, after paying operating expenses and post-confirmation taxes, of $1,159,722.46 each year for the life of the Plan.  The final Plan payment is expected to be paid on June 1, 2039. The Plan Proponent contends that Debtor's financial projections are feasible. As shown by Debtor's historical financial statements, Debtor's average yearly cash flow, after paying operating expenses and post-confirmation taxes, in the three years preceding the filing of this bankruptcy case is ($739,721). Debtor's average monthly cash flow, after paying operating expenses and post-confirmation taxes, during the bankruptcy case is $11,000.  Furthermore, as discussed earlier in the Disclosure Statement at Section {II.E.4}, Debtor has implemented procedures to increase revenue from parking by hiring a new parking lot operator and renting out the nightclub venue.


## V.    EFFECT OF CONFIRMATION OF PLAN


A.  Discharge

This Plan provides that upon December 1, 2009 Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Plan, to the extent specified in 11 U.S.C.§1141.  However, the discharge will not discharge any liability imposed by the Plan.

B.  Revesting of Property in the Debtor

Except as provided in Section {V.E.}, and except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the property of the estate in the Debtor.

F-3017-1

C.  Modification of Plan

The Proponent of the Plan may modify the Plan at any time before confirmation.  However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Proponent of the Plan may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

D.  Post-Confirmation Status Report

Within 120 days of the entry of the order confirming the Plan, Plan Proponent shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice. Further status reports shall be filed every 120 days and served on the same entities.

E.  Quarterly Fees

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of confirmation shall be paid to the United States Trustee on or before the effective date of the plan.  Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the United States Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or entry of an order of dismissal or conversion to chapter 7.

F.  Post-Confirmation Conversion/Dismissal

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  If the Court orders, the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7, estate. The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

**THIRD AMENDED CHAPTER 11 DISCLOSURE STATEMENT**
34

F-3017-1

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

G.  Final Decree

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Plan Proponent, or other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.


Date:   September 21, 2009


___ __The Olympic on Grand, LLC - Debtor_
Name and Identity of Plan Proponent


_____
Signature of Plan Proponent (optional unless party is pro se)

____/s/ Marc Weitz_____
Signature of Attorney for Plan Proponent

__Marc Weitz_____
Name of Attorney for Plan Proponent

____Law Office of Marc Weitz_____
Name of Law Firm for Plan Proponent

F-3017-1

1

2    **VI.    SUPPORTING DECLARATIONS**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

F-3017-1