1   Todd C. Ringstad (State Bar No. 97345)
    todd@ringstadlaw.com
2   Christopher A. Minier (State Bar No. 190705)
    cminier@ringstadlaw.com
3   RINGSTAD & SANDERS, LLP
    2030 Main Street, 12th Floor
4   Irvine, CA  92614
    Telephone: 949-851-7450
5   Facsimile:  949-851-6926

6   Counsel for interested party James Myron,
    individually and as trustee of the James Myron Trust
7   dated April 12, 2001

8                  UNITED STATES BANKRUPTCY COURT

9             CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

10

11  In re                                    CASE NO. 2:09-10549 ER

12  THE OLYMPIC ON GRAND, LLC, a             In a Case Under Chapter 11 of the Bankruptcy
13  California limited liability company,    Code (11 U.S.C. § 1101 et seq.)

14

15          Debtor and                       AMENDED DISCLOSURE STATEMENT
            Debtor-in-Possession.            DESCRIBING JAMES MYRON'S
16                                           AMENDED CHAPTER 11 PLAN OF
                                             REORGANIZATION FOR THE OLYMPIC
17                                           ON GRAND, LLC

18                                           Disclosure Statement Hearing:
19                                           Date:   January 27, 2010
                                             Time:   10:00 a.m.
20                                           Place:  Courtroom 1568,
                                                     255 East Temple Street
21                                                   Los Angeles, California 90012

22                                           Plan Confirmation Hearing:
23                                           Date:   [TO BE SET]
                                             Time:   [TO BE SET]
24                                           Place:  Courtroom 1568
                                                     255 East Temple Street
25                                                   Los Angeles, California 90012

26

27

28

Ringstad & Sanders
L.L.P., 12th Floor
2030 Main Street
Irvine California 92614
949.851.7450

# TABLE OF CONTENTS

|  |  |  |  | Page No. |
|---|---|---|---|---|
| **I.** | **INTRODUCTION** |  |  | 4 |
|  | A. | Purpose of This Document |  | 7 |
|  | B. | Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing |  | 8 |
|  |  | 1. | Time and Place of the Confirmation Hearing | 8 |
|  |  | 2. | Deadline for Voting For or Against the Plan | 8 |
|  |  | 3. | Deadline for Objecting to the Confirmation of the Plan | 8 |
|  |  | 4. | Identity of Person to Contact for More Information Regarding the Plan | 8 |
|  | C. | Disclaimer |  | 9 |
| **II.** | **BACKGROUND** |  |  | 9 |
|  | A. | Description and History of the Debtor's Business |  | 9 |
|  | B. | Principals/Affiliates of Debtor's Business |  | 13 |
|  | C. | Management of the Debtor Before and After the Bankruptcy |  | 13 |
|  | D. | Events Leading to Chapter 11 Filing |  | 13 |
|  | E. | Myron Has Been Improperly Excluded From Debtor's Management |  | 17 |
|  | F. | Significant Events During the Bankruptcy |  | 17 |
|  |  | 1. | Bankruptcy Proceedings | 17 |
|  |  | 2. | Other Legal Proceedings | 19 |
|  |  | 3. | Actual and Projected Recovery of Preferential or Fraudulent Transfers | 19 |
|  |  | 4. | Procedures Implemented to Resolve Financial Problems | 21 |
|  |  | 5. | Current and Historical Financial Conditions | 21 |
| **III.** | **SUMMARY OF THE PLAN OF REORGANIZATION** |  |  | 22 |
|  | A. | What Creditors and Interest Holders Will Receive Under the Proposed Plan |  | 22 |
|  | B. | Unclassified Claims |  | 22 |
|  |  | 1. | Administrative Expenses | 23 |
|  |  | 2. | Priority Tax Claims | 24 |
|  | C. | Classified Claims and Interests |  | 25 |
|  |  | 1. | Classes of Secured Claims | 25 |
|  |  | 2. | Classes of Priority Unsecured Claims | 35 |
|  |  | 3. | Classes of General Unsecured Claims | 36 |
|  |  | 4. | Class(es) of Interest Holders | 40 |
|  | D. | Means of Effectuating the Plan |  | 41 |
|  |  | 1. | The Transfer and Redevelopment of the Property | 41 |
|  |  | 2. | Post-Confirmation Management | 47 |
|  |  | 3. | Disbursing Agent | 47 |
|  | E. | Risk Factors |  | 47 |
|  | F. | Other Provisions of the Plan |  | 48 |
|  |  | 1. | Executory Contracts and Unexpired Leases | 48 |
|  |  |  | a.   Assumptions | 48 |
|  |  |  | b.   Rejections | 49 |
|  |  | 2. | Changes in Rates Subject to Regulatory Commission Approval | 49 |
|  |  | 3. | Retention of Jurisdiction | 49 |
|  | G. | Tax Consequences of Plan |  | 49 |

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

| IV. | **CONFIRMATION REQUIREMENTS AND PROCEDURES** | 52 |
| | A. | Who May Vote or Object | 52 |
| | | 1. | Who May Object to Confirmation of the Plan | 52 |
| | | 2. | Who May Vote to Accept/Reject the Plan | 52 |
| | | | a. | What is an Allowed Claim/Interest | 52 |
| | | | b. | What Is an Impaired Claim/Interest | 52 |
| | | 3. | Who is Not Entitled to Vote | 53 |
| | | 4. | Who Can Vote in More Than One Class | 53 |
| | | 5. | Votes Necessary to Confirm the Plan | 53 |
| | | 6. | Votes Necessary for a Class to Accept the Plan | 53 |
| | | 7. | Treatment of Nonaccepting Classes | 54 |
| | | 8. | Request for Confirmation Despite Nonacceptance by Impaired Class(es) | 54 |
| | B. | Liquidation Analysis | 54 |
| | C. | Feasibility | 59 |

| V. | **EFFECTS OF CONFIRMATION OF PLAN** | 61 |
| | A. | Discharge | 61 |
| | B. | Revesting of Property in the Debtor | 61 |
| | C. | Modification of Plan | 62 |
| | D. | Post-Confirmation Status Report | 62 |
| | E. | Quarterly Fees | 62 |
| | F. | Post-Confirmation Conversion/Dismissal | 62 |
| | G. | Final Decree | 63 |

| VI. | **DECLARATION OF JAMES MYRON** | 64 |

EXHIBIT A - LIST OF ALL ASSETS
EXHIBIT B – BUDGET AND TIMELINE FOR DEVELOPMENT
EXHIBIT C – PROJECTED REVENUES & EXPENSES FROM OPERATION
EXHIBIT D – JOHNSON CAPITAL ENGAGEMENT LETTER
EXHIBIT E – FINANCIAL STATEMENTS
EXHIBIT F - LIST OF GENERAL UNSECURED CLAIMS
EXHIBIT G – DEVELOPMENT CONCEPTUAL DESIGN PACKAGE
EXHIBIT H – RTKL ENGAGEMENT LETTER
EXHIBIT I – PROJECT PARTICIPATION DEFINED TERMS
EXHIBIT J – INTRACORP ENGAGEMENT/CONSULTING AGREEMENT
EXHIBIT K – INTRACORP FINANCING LETTER
EXHIBIT L – INTRACORP QUALIFICATIONS
EXHIBIT M – APPRAISAL OF REAL PROPERTY
EXHIBIT N – DEFINED TERMS RE NET OPERATING PROFITS

Ringstad & Sanders

L.L.P., 17th Floor
2030 Main Street, 17th Floor
Irvine, California 92614
949.851.7450

# I.

## INTRODUCTION

The Olympic on Grand, LLC., a California Limited Liability Company (hereafter "Debtor"), is the Debtor in a Chapter 11 bankruptcy case.  On January 12, 2009, Debtor commenced a bankruptcy case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code ("Code"), 11 U.S.C. § 101 et seq.  Chapter 11 allows the Debtor, and under some circumstances, creditors and others parties in interest, to propose a plan of reorganization (the "Plan" or "Amended Plan").  The Plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both.  The Debtor is a California limited liability corporation that owns real property located at 1020 - 1024 South Grand Avenue, Los Angeles, California (hereafter the "Property").

James Myron, individually and as trustee of the James Myron Trust dated April 12, 2001, is the party proposing the Amended Plan sent to you in the same envelope as this document.  THE DOCUMENT YOU ARE READING IS THE AMENDED DISCLOSURE STATEMENT FOR THE ENCLOSED AMENDED PLAN.  (Hereafter James Myron, individually and as trustee of the James Myron Trust dated April 12, 2001, shall collectively be referred to as the "Plan Proponent" and/or "Myron").

This is a reorganizing plan.  The Proponent seeks to accomplish payments under the Plan by transferring title to the Property to a newly formed entity, obtaining development entitlements on the Property, obtaining construction financing and commencing and completing construction of a 336 unit apartment complex with mixed retail space.  Once redeveloped, the Property will feature a distinctive "fountain of angels" designed by internationally renowned sculptor Gil Bruvel,  that Myron hopes will become a landmark for the city.  Attached as Exhibit "G" is a conceptual design package for Myron's proposed redevelopment of the Property that has been prepared by the project architects, RTKL Associates, Inc., and the artist that designed the fountain of angels.

///

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    The process of designing Myron's proposed redevelopment project for the Property,

2    obtaining development entitlements and the recordation of a final map for the project is estimated

3    to cost approximately $546,868.  Attached hereto as Exhibit "B" is a month by month timeline

4    and budget for the design, entitlement and construction of Myron's proposed redevelopment of

5    the Property.  Under Myron's Plan, Myron will commit his personal funds, up to $1.0 million,

6    toward the cost of obtaining the needed development entitlements.

7    Obtaining development entitlements will significantly increase the value of the Property

8    which, in turn, will permit a construction loan to be obtained in an amount that is sufficient to

9    complete the construction of Myron's proposed redevelopment of the Property, and to make

10   certain payments described herein to Debtor's creditors.

11   The foregoing development plan for the Property is consistent with the requirements of the

12   United States Department of Housing and Urban Development ("HUD").  Under Myron's Plan,

13   once development entitlements are obtained for the Property, a construction loan will be obtained

14   in the approximate amount of $84,650,100 guaranteed by HUD.  Myron has already submitted an

15   application with a HUD approved lender, and has paid from his personal funds a $40,000 fee

16   associated with obtaining the HUD funding.  The loan from HUD will be secured by a first

17   priority deed of trust on the Property.  In addition, secondary construction funding will be

18   obtained from Myron's selected developer, Intracorp / ISC Properties, LLC ("Intracorp"), in the

19   approximate amount of $40 million.  The funding that will be obtained from Intracorp will be in

20   the form of either a loan secured by a second priority deed of trust on the Property or an equity

21   contribution to the newly formed entity holding title to the Property (or some combination

22   thereof).  Hereafter the HUD insured $84,650,100 loan, and the $40 million Intracorp loan /

23   capitalization shall be collectively referred to as the "New Loan."

24   Upon the Effective Date of the Plan (as defined herein), title to the Property will be

25   transferred by the Debtor to a Delaware limited liability company (hereafter "Newco") formed, or

26   to be formed, by Myron, and which shall be primarily owned and controlled by Myron.  Newco

27   will be the borrower of the New Loan.  The New Loan will be secured by first and second priority

28   security interests in the Property (to the extent that the funding from Intracorp is in the form of a

Ringstad & Sanders
L.L.P.
2030 Main Street, 17th Floor
Irvine, California 92614
949.851.7450

- 5 -

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    loan as opposed to an equity contribution).  The New Loan will be amortized and repaid over a 40

2    year period of time.

3        Under Myron's Plan, it is anticipated that full development entitlements on the Property

4    will be obtained, and a final map will be recorded, no later than 24 months following the Effective

5    Date, unless such time period is extended by the Bankruptcy Court upon motion by the Plan

6    Proponent and for good cause.  The Effective Date of the Plan is the first business day following

7    fifteen days after entry of an Order confirming the Plan (the "Effective Date").  The HUD insured

8    component of the New Loan will be funded no later than 27 months following the Effective Date,

9    unless such time period is extended by the Bankruptcy Court upon motion by the Plan Proponent

10    and for good cause.

11        The proceeds from the New Loan will be used to fund certain payments to creditors under

12    the terms of the Plan as more specifically set forth herein, and to fund the construction costs to

13    redevelop the property into the above-described apartment complex and mixed retail space.  It

14    should be noted that no part of the proceeds of the New Loan will be used to satisfy any part of

15    the $17,500,000 Class 4 claim of James Myron secured by a third priority deed of trust against the

16    Property.  Instead, upon transfer of title of the Property to Newco, James Myron will execute

17    reconveyances of his interests under these deeds of trust.

18        From the Effective Date, Myron and/or Newco shall make regular monthly payments of

19    interest on the Class 2 secured claim of California Bank and Trust  as assignee of Vineyard

20    Bank, N.A. (hereafter "CB&T") until this claim is paid in full as provided for herein and in the

21    Amended Plan.

22        The County of Los Angeles, CB&T, Loma Vista and Myron shall each retain their liens

23    against the Property until such time as their respective Class 1, Class 2, Class 3 and Class 4

24    secured claims have been paid in accordance with the terms of the Plan (or otherwise

25    reconveyed).  However, each of these parties' security interests not paid or otherwise reconveyed

26    in connection with the funding of the New Loan shall be made subordinated to each of the liens

27    against the Property securing the HUD insured and Intracorp components of the New Loan upon

28

1  the funding and close of escrow of each component of the New Loan.

2        A material default under the terms of the Amended Plan shall constitute cause for

3  conversion of the Chapter 11 bankruptcy case to a case under Chapter 7 of the Bankruptcy Code

4  pursuant to 11 U.S.C. § 1112.  The Bankruptcy Court will retain jurisdiction to extend any and

5  all time periods set forth in the Plan upon the motion of Myron or Newco, or any successor, for

6  cause shown.

7  **A.     Purpose of This Document**

8        This Amended Disclosure Statement summarizes what is in the Amended Plan, and tells

9  you certain information relating to the Plan and the process the Court follows in determining

10 whether or not to confirm the Plan.

11        <u>**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO**</u>

12 **KNOW ABOUT:**

13        **(1)     WHO CAN VOTE OR OBJECT,**

14        **(2)     WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will**

15 **receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO**

16 **WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION,**

17        **(3)     THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING**

18 **THE BANKRUPTCY,**

19        **(4)     WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER**

20 **OR NOT TO CONFIRM THE PLAN,**

21        **(5)     WHAT IS THE EFFECT OF CONFIRMATION, AND**

22        **(6)     WHETHER THIS PLAN IS FEASIBLE.**

23        This Amended Disclosure Statement cannot tell you everything about your rights.  You

24 should consider consulting your own lawyer to obtain more specific advice on how this Plan will

25 affect you and what is the best course of action for you.

26        Be sure to read the Plan as well as the Disclosure Statement.  If there are any

27 inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

28

Ringstad & Sanders
L.L.P.
2030 Main Street, 17ᵗʰ Floor
Irvine, California 92614
949.851.7450

1    The Code requires a Disclosure Statement to contain "adequate information" concerning

2    the Plan. The United States Bankruptcy Court for the Central District of California, Los Angeles

3    Division (the "Court") has approved this document as an adequate Disclosure Statement,

4    containing enough information to enable parties affected by the Plan to make an informed

5    judgment about the Plan. Any party can now solicit votes for or against the Plan.

6    **B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

7    THE COURT HAS NOT YET CONFIRMED THE AMENDED PLAN DESCRIBED IN

8    THIS AMENDED DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE

9    PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE COURT LATER

10    CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON

11    ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

12    **1.    Time and Place of the Confirmation Hearing**

13    The hearing where the Court will determine whether or not to confirm the Plan will take

14    place on _____, at _____ {a.m./p.m.}, in Courtroom 1568 of the United

15    States Bankruptcy Court located at 255 East Temple Street, Los Angeles, California 90012.

16    **2.    Deadline For Voting For or Against the Plan**

17    If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot

18    and return the ballot in the enclosed envelope to Todd C. Ringstad, Esq., of Ringstad & Sanders,

19    LLP, 2030 Main Street, Suite 1200, Irvine, CA 92614.

20    Your ballot must be received by _____ or it will not be counted.

21    **3.    Deadline For Objecting to the Confirmation of the Plan**

22    Objections to the confirmation of the Plan must be filed with the Court and served upon

23    Todd C. Ringstad, Esq., of Ringstad & Sanders, LLP, 2030 Main Street, Suite 1200, Irvine, CA

24    92614 by _____.

25    **4.    Identity of Person to Contact for More Information Regarding the Plan**

26    Any interested party desiring further information about the Plan should contact

27    Christopher A. Minier, Esq., of Ringstad & Sanders, LLP, 2030 Main Street, Suite 1200, Irvine,

28    CA 92614, telephone number (949) 851-7450, or Daniel C. Hales, Esq., 2372 Morse Avenue,

Ringstad & Sanders
LLP
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    Irvine, California 92614, telephone number (949) 852-8181.

2    **C.    Disclaimer**

3          The financial data and other information contained in this Amended Disclosure Statement

4    and relied upon in formulating Myron's Amended Plan is based on the Debtor's books and

5    records, proofs of claim filed by creditors against Debtor's bankruptcy estate, the Debtor's

6    financial statements and liquidation analysis attached to Debtor's proposed Disclosure Statement,

7    the Engagement Letter provided by Myron's real estate investment banker, Johnson Capital

8    Huntoon Hastings, LLC, regarding obtaining the HUD insured loan, the bankruptcy schedules and

9    statements (and other documents) filed by the Debtor in its Chapter 11 case, and the development

10   plan, budgets and projections of Myron and his development team for the expenses and revenues

11   regarding the entitlement, redevelopment and operation and/or sale of the Property.

12         A portion of the information contained in this Amended Disclosure Statement has also

13   been provided by James Myron. James Myron holds a 20% membership (ownership) interest in

14   the Debtor, and is also one of the Debtor's largest creditors, holding a $17,500,000 note secured

15   by a third priority deed of trust on the Property, and a $1,500,000 assignment of the Loma Vista

16   Financial note and second priority deed of trust currently encumbering the Property. The Plan

17   Proponent represents that everything stated in the Amended Disclosure Statement is true to the

18   Proponent's best knowledge. The Court has not yet determined whether or not Myron's

19   Amended Plan is confirmable and makes no recommendation as to whether or not you should

20   support or oppose the Amended Plan.

21                                       **II.**

22                                  **BACKGROUND**

23   **A.    Description and History of the Debtor's Business**

24         The Debtor in this case, The Olympic on Grand, LLC, is a California limited liability

25   corporation that owns the Property, which is located at 1020 - 1024 South Grand Avenue, Los

26   Angeles, California. From 1946 until 2005, the family of James Myron owned the Property. The

27   Property consists of approximately 58,300 square feet of land improved with one or more

28   structures comprising a nightclub and parking lot. James Myron's mother, Myrna Myron, was a

Ringstad & Sanders
LLP
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    former chorus girl and originally purchased the Property to operate a nightclub for dancers and

2    bands in the Big Band Era.  The nightclub survived the end of the Big Band Era and has

3    reinvented itself as a concert venue and nightclub for more than sixty years.

4        In 2005, James Myron held title to the Property and listed it for sale.  During the last

5    quarter of 2005, Myron was approached by Richardson Robertson III and Mark Abrams, who

6    represented themselves as developers and expressed an interest in purchasing the Property in

7    order to redevelop it into two luxury, mixed-use, high-rise condominium towers over retail space.

8        Richardson Robertson III is a California architect and the owner and/or an officer of

9    entities known as Richardson Robertson & Associates, Inc. ("RRA"), and Beaux Arts, LLC

10   ("Beaux Arts").  Richardson Robertson III and RRA were to be the architect / designer of the

11   proposed redevelopment project.  Hereafter Richardson Robertson III, RRA and Beaux Arts shall

12   be collectively referred to as "Robertson."

13       Myron ultimately agreed to sell the Property for a total purchase price of $30 million to an

14   entity controlled by Mark Abrams and Robertson.  Pursuant to the sale terms, Myron agreed to

15   loan the buyer of the Property $17,500,000 of the total purchase price pursuant to a promissory

16   note and deed of trust to be subordinated to a senior encumbrance securing a loan to be obtained

17   from a bank.  Additionally, pursuant to the sale terms, Myron received a 20% ownership and

18   profit participation interest in the Debtor and the proposed development project for the Property.

19       In connection with Myron's sale of the Property, on or about October 25, 2006, Myron

20   and the buyer of the Property entered into a Second Amendment to Purchase and Sale Agreement

21   (the "2nd Amendment").

22       Paragraph 10(a) of the 2nd Amendment specifically provides that Myron is to be a co-

23   manager of the Debtor by providing that:

24            In order to allow the Trust [i.e., Myron] to protect its

25            interest in the Myron GAP Loan and the Subordinated Purchase

26            Money Loan, in the event of a Senior Loan Default, as hereinafter

27            defined, and for so long as the Senior Loan Default is continuing,

28            the Trust [i.e., Myron] also shall automatically, without the

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1     requirement of further action by the Company [the Debtor],

2     become a co-manager of the Company along with Renaissance on

3     Grand, LLC ('Renaissance').  Both the Trust and Renaissance shall

4     have an equal vote on all matters; provided, however, that in the

5     event of a disagreement between the Trust and Renaissance, the

6     final decision of the Trust shall be binding upon the Company.  At

7     such time as the Company timely cures the Senior Loan Default,

8     the Trust will cease being a manager.  The parties hereto hereby

9     agree to amend the Operating Agreement to reflect the foregoing

10     provisions.  For purposes of this paragraph, a 'Senior Loan

11     Default' shall mean an event of default declared by one of the

12     senior lenders under the applicable loan documents that goes

13     uncured by the Company for more than thirty (30) days beyond

14     any applicable cure period as set forth in the applicable loan

15     documents. [Underline added].

16        In connection with the Sale Agreement, Debtor obtained a loan with Preferred Bank as its

17 primary mortgage for the Property, in the amount of $12,800,000.  The Preferred Bank loan was

18 subsequently replaced, in May 2007, by a loan in the amount of $18,000,000 from ("CB&T"),

19 and secured by a first priority deed of trust recorded against the Property.

20        Under Paragraphs 5 and 7 of the 2nd Amendment, Myron agreed to loan the Debtor an

21 additional $1,500,000 as a "GAP Loan" at the interest rate of twelve percent (12%) "to secure

22 funds necessary for the continued development of the Property and Project until such time as the

23 necessary entitlements and approvals have been obtained and the Company can secure the

24 Mezzanine Financing and the Construction Loan." The Myron Gap Loan was memorialized in a

25 promissory note secured by a second priority deed of trust against the Property.  This loan from

26 Myron to the Debtor was actually made as a "pass through" loan to an entity known as Loma

27 Vista Financial, LLC ("Loma Vista" or "LVF").

28        Peggy Abrams, the wife of Mark Abrams, is the sole member and managing member of

Ringstad & Sanders
L.L.P.
2030 Main Street, 12ᵗʰ Floor
Irvine, California 92614
949.851.7450

1   LVF. The maximum principal amount of the LVF loan is presently allowed up to $3,000,000.

2   James Myron holds a $1.5 million partial assignment of the LFV note and second priority deed of

3   trust against the Property. CW Capital, Inc., holds a $500,000 partial assignment of the LVF note

4   and deed of trust. Top Shelf West, LLC, holds a $300,000 partial assignment of the LVF note

5   and deed of trust. SCS Equities holds a $45,000 partial assignment of the LVF note and deed of

6   trust. None of the foregoing interests under the LVF note and deed of trust are disputed by

7   Myron.

8   However, in addition to the foregoing, the bankruptcy schedules and statements filed by

9   Robertson on the Debtor's behalf in connection with the Debtor's bankruptcy case, and the

10  Debtor's proposed plan of reorganization and disclosure statement also filed by Robertson on the

11  Debtor's behalf, contend that Robertson / RRA also holds a $4,901,202.42 and/or $655,000

12  interest under the LVF note and deed of trust. Myron disputed the legitimacy of this claim and,

13  instead, contended that Robertson/RRA were owed nothing under the LVF note and deed. This

14  dispute was the subject of litigation between the parties in Los Angeles County Superior Court.

15  On August 13, 2008, the Los Angeles County Superior Court entered a Judgment against RRA,

16  invalidating the alleged partial assignment of Loma Vista's deed of trust under which RRA

17  claimed to hold a security interest in the Debtor's real Property. Accordingly, Robertson/RRA

18  have no interest under the LVF note and deed of trust, and are treated accordingly under Myron's

19  Amended Plan.

20  Debtor was formed on or about November 19, 2005. In connection with the closing of

21  escrow on Myron's sale of the Property, Debtor took title in the Property. The Renaissance on

22  Grand, LLC, a California limited liability company ("Renaissance"), is the present managing

23  member of the Debtor. In turn, The Titan Organization, Inc., a California corporation ("Titan"),

24  is the sole owner and managing member of Renaissance. Robertson is currently Titan's majority

25  shareholder, and he recently installed himself as Titan's President, sole, Director, Chief Financial

26  Officer and Secretary. Therefore, Robertson is currently in control of Titan, Renaissance and the

27  Debtor.

28

Ringstad & Sanders
LLP.
2030 Main Street, 17th Floor
Irvine, California 92614
949.851.7450

In summary, the present consensual encumbrances against the Property, not including accrued interest and charges, and also not including the disputed claim of Robertson under the LVF note and deed of trust, are in the principal amounts of:

| | | |
|---|---|---|
| 1st TD | CB&T | $18,000,000 |
| 2nd TD | Loma Vista | $ 2,345,000  (note/deed authorized up to $3 million) |
| 3rd TD | Myron | $17,500,000 |

**B.     Principals/Affiliates of Debtor's Business**

There are three separate classes of ownership interests in the Debtor.  Myron is the sole Class "B" member, owning a 20% interest in the Debtor.  Renaissance is the managing member and sole Class "A" member, owning a 57.5% interest in the Debtor.  Renaissance is an entity that is wholly owned by Titan.  Titan is the managing member of Renaissance.  Robertson is currently in control of Titan.  Therefore, Robertson is currently effectively in control of the Debtor.  There are also three Class "C" members of Debtor who collectively own a 22.5% interest in the Debtor.  The first of the three Class "C" members of the Debtor is the Wolterman Family Limited Partnership, holding a 15% interest in the Debtor.  The second of the three Class "C" members of the Debtor is Dien McCall, holding a 5% interest in the Debtor.  The third and final Class "C" member of the Debtor is Jerry Brown, holding a 2.5% ownership interest in the Debtor.

**C.     Management of the Debtor Before and After the Bankruptcy**

Renaissance has been the managing member of the Debtor prior to the filing of the Debtor's bankruptcy case, and will be the managing member of the Debtor during the pendency of the case and after confirmation of a Plan.  Renaissance is wholly owned by Titan, and Titan is its managing member.  Robertson is currently in control of Titan.

**D.     Events Leading to Chapter 11 Filing**

Here is a brief summary of the circumstances that led to the filing of this Chapter 11 case:

As was described above, CB&T is the beneficiary under a first priority deed of trust against the Property which secures the repayment of its loan to the Debtor in the principal amount of $18 million.  Following the maturity date of its loan from CB&T, Debtor was unable to repay or refinance this loan.  Therefore, on July 2, 2008, CB&T filed a foreclosure action against

Ringstad & Sanders
LLP
2030 Main Street, 17th Floor
Irvine, California 92614
949.851.7450

1    Debtor in Los Angeles County Superior Court (*Vineyard Bank, N.A. v. The Olympic on Grand,*

2    *LLC, et al.*, Case No. BC393730) (hereafter the "State Court Foreclosure Action"). In this

3    foreclosure action, on July 16, 2008, the Superior Court entered an order appointing Robb Evans

4    & Associates (the "Receiver") as Receiver over the Debtor's real Property. Since his

5    appointment, the Receiver has at all times been in possession and control of the Property.

6        On or about November 17, 2008, the trustee under CB&T's deed of trust published a

7    Notice of Trustee's Sale in order to auction the Property in a foreclosure sale.

8        In an effort to financially reorganize the Debtor and its development project, and to

9    prevent CB&T from concluding its foreclosure sale of the Property, Myron proposed, and all of

10   Debtor's members (other than Renaissance) voted for Debtor to file a petition for reorganization

11   under Chapter 11 of the United States Bankruptcy Code under Myron's authority as co-managing

12   member. On behalf of Titan / Renaissance, Robertson refused to cooperate with the request of all

13   of Debtor's other co-members.

14       Instead, acting alone and without soliciting the consent of Debtor's members, Robertson

15   caused Debtor to improperly file a Chapter 11 petition on December 9, 2008. This bankruptcy

16   case commenced by Robertson for the Debtor was commonly known as *In re The Olympic on*

17   *Grand, LLC,* U.S.B.C. Case No. 2:08-31345 ER (Debtor's "First Bankruptcy Case").

18       The filing of Debtor's First bankruptcy Case by Robertson was improper not only because

19   it went against the wishes of all of the Debtor's members other than Renaissance, but also

20   because Debtor's bankruptcy case was commenced without counsel in violation of the Local

21   Bankruptcy Rules for the Central District of California. Because of its improper commencement,

22   Debtor's First Bankruptcy Case was dismissed. Shortly thereafter, Robertson caused the Debtor

23   to commence this Chapter 11 bankruptcy case for the Debtor. Both of Debtor's bankruptcy cases

24   were commenced before CB&T was able to conclude its foreclosure sale of the Property.

25       In addition to CB&T's foreclosure action, the improper diversion, waste and/or

26   embezzlement of Debtor's funds also contributed to Debtor's insolvency and led Debtor to seek

27   bankruptcy protection. Specifically, prior to the close of escrow on the sale of the Property by

28   Myron, and for over a year afterward, Robertson, Renaissance and Titan failed to disclose to

Ringstad & Sanders
L.L.P.
2030 Main Street, 17th Floor
Irvine, California 92614
949.851.7450

1  Myron that Debtor had entered into contracts with Robertson's company, RRA, providing for

2  Debtor to pay Robertson and/or RRA extremely extravagant and unprecedented levels of

3  compensation and reimbursement of expenses that were not in any way commensurate with the

4  scale of the development project, the value of contemplated services to be rendered, or reasonable

5  expectations in the architecture industry.

6        More specifically, the Debtor is governed by an Amended and Restated Operating

7  Agreement (the "Operating Agreement"). Under Paragraph 9.1(g) of Debtor's Operating

8  Agreement, Myron (as the Class B member of the Debtor) was to have "[a]pproval of the initial

9  operating budget for each financing stage of the Project (each, an 'Operating Budget'). In

10  connection therewith, upon delivery by the Manager of an Operating Budget to the Class B

11  Member, the Class B Member shall have ten (10) days to approve or disapprove of such

12  Operating Budget."

13        Despite the fact that Robertson and/or RRA produced no approved conceptual design or

14  plans for the Property, and the fact that the payments contemplated by Debtor's contracts with

15  RRA were never approved by Myron as part of the project's operating budget as required under

16  Debtor's Operating Agreement, Robertson / RRA received over $3 million in improper payments

17  from Debtor.

18        In addition, on June 5, 2006, Robertson obtained a Board Consent authorizing Titan's

19  opening of a bank account with Wells Fargo Bank and naming Robertson a signatory. Titan

20  deposited funds of the Debtor into this account. Robertson was neither an officer nor director of

21  Titan at any time relevant to this event, and there was no apparent justification for Robertson

22  obtaining such broad authority to access the funds of Titan and the Debtor. Myron has

23  subsequently learned that Robertson used his signatory authority on this account to receive

24  hundreds of thousands of dollars in unsubstantiated payments from Debtor's and Titan's coffers,

25  including Robertson's misappropriation of $150,000 in parking revenue paid to Debtor.

26        Myron believes that the over $3.15 million received by Robertson and RRA likely

27  constitute avoidable preferences and/or fraudulent transfers of the Debtor's assets under the

28  Bankruptcy Code and/or California law that can be avoided and recovered for the benefit of

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    Debtor's bankruptcy estate because Debtor did not receive reasonably equivalent value in

2    exchange for the these transfers.

3        Similarly, before the close of escrow on Myron's sale of the Property, and for over a year

4    afterward, Abrams, RPI, Titan and Robertson failed to disclose to Myron that, since September 1,

5    2006, Titan had been paying Abrams $50,000 per month and all of Abrams' expenses (including

6    car, healthcare, travel, cellular telephone and credit cards) from the Debtor's funds that were

7    supposed to be used to further the redevelopment of the Property.  These payments to Abrams

8    were never approved by Myron as part of the project's operating budget as required under

9    Debtor's Operating Agreement.  Like the payments made to Robertson / RRA, these payments to

10    Abrams were extravagant and not in any way commensurate with the scale of the development

11    project or the value of services rendered by Abrams.  Also, like the payments made to Robertson /

12    RRA, Myron believes that these payments made to Abrams likely constitute avoidable

13    preferences and/or fraudulent transfers of the Debtor's assets that can be avoided and recovered

14    for the benefit of Debtor's bankruptcy estate.

15        The foregoing improper diversion, waste and/or embezzlement of Debtor's funds

16    contributed to Debtor's insolvency and were also factors that required Debtor to seek bankruptcy

17    protection.  Under James Myron's Amended Plan, any and all of the Debtor's prepetition

18    litigation claims and causes of action shall be preserved, including all of its preference avoidance

19    and fraudulent transfer claims (or other claims) against Robertson, RRA, Titan, Renaissance

20    and/or Abrams (hereafter collectively the "Litigation Claims"), and such claims shall be

21    transferred to an appointed Plan Agent (defined below) for the benefit of the Debtor's creditors,

22    as discussed in more detail below.

23        Parties in interest are advised that the foregoing statements about the allegedly improper

24    acts of Robertson, RRA, Abrams, Titan and/or Renaissance are exclusively the opinions of James

25    Myron, and none of these allegations have been judicially proven.

26    ///

27    ///

28

Ringstad & Sanders
L.L.P.
2030 Main Street , 13th Floor
Irvine, California  92614
949.851.7450

**E.    Myron Has Been Improperly Excluded From Debtor's Management.**

Under Paragraph 10 of the 2nd Amendment, quoted above, on or about August 8, 2008, following Debtor's uncured default on its loan from CB&T, Myron automatically became Debtor's co-manager.  Further, in the event of a disagreement between Debtor's co-managers, under the 2nd Amendment Myron is entitled to prevail.  Robertson, Titan and Renaissance are currently disregarding Myron's right to act as a co-manager of the Debtor, and are directing the Debtor's affairs in a manner contrary to Myron's wishes.

**F.    Significant Events During the Bankruptcy**

**1.    Bankruptcy Proceedings**

The following is a chronological list of significant events which have occurred during this case:

On January 13, 2009, the Debtor filed an adversary proceeding against the Receiver seeking to have the Receiver turn over the management and control of the Property to the Debtor.  This adversary proceeding is commonly known as *The Olympic on Grand, LLC, v. Robb Evans and Associates*, U.S.B.C. Adv. Proc. No. 2:09-01047 ER.  This adversary proceeding was voluntarily dismissed by the Debtor on or about April 14, 2009.

On January 22, 2009, CB&T filed a motion for relief from the Bankruptcy Code's automatic stay in order to allow the Receiver to continue to manage the Property and collect rents from the Property in connection with the CB&T's pending State Court Foreclosure Action.  Also on January 22, 2009, CB&T filed a motion to excuse the Receiver from complying with the requirements of Bankruptcy Code section 543(a)-(c), which would otherwise require the Receiver to turn over control of the Property to the Debtor and to account for any rents (or other assets) collected from the Property.  The Court ultimately granted both of CB&T's motions.

On March 4, 2009, the Court entered an Order authorizing the Debtor to employ the Law Office of Marc Weitz as Debtor's bankruptcy counsel.

On March 9, 2009, CB&T filed a motion to declare Debtor's bankruptcy case a "single asset real estate" case pursuant to 11 U.S.C. § 101(51B), and to impose the requirements of 11 U.S.C. § 362(d)(3).  The Court entered an Order granting this motion on April 23, 2009.

Ringstad & Sanders
L.L.P.
2030 Main Street , 17th Floor
Irvine, California 92614
949.851.7450

1        On March 12, 2009, Myron filed a motion for an Order: (1) terminating Debtor's periods

2  of exclusivity for the filing of a plan and soliciting of acceptance thereof so as to permit the filing

3  of a Plan by Myron; and (2) continuing the March 16, 2009, deadline that the Court set for the

4  filing of a Plan and Disclosure Statement. On April 13, 2009, the Court entered its Order granting

5  the request to terminate the Debtor's exclusivity period for the filing of a plan and authorizing

6  Myron to file a plan and disclosure statement.

7        On March 16, 2009, Debtor filed its proposed disclosure statement and plan. A hearing

8  was held on April 22, 2009, for the Court to consider approval of the Debtor's disclosure

9  statement. The Court declined to approve the Debtor's disclosure statement, but permitted the

10  Debtor to file an amended disclosure statement and plan. Debtor filed an amended disclosure

11  statement on May 29, 2009. A hearing was held on June 23, 2009, for the Court to consider

12  approval of the Debtor's amended disclosure statement. The Court declined to approve the

13  Debtor's amended disclosure statement, but permitted the Debtor to file a second amended

14  disclosure statement. Debtor filed a second amended disclosure statement on August 10, 2009. A

15  hearing was held on August 20, 2009, for the Court to consider approval of Debtor's second

16  amended disclosure statement. The Court declined to approve the Debtor's second amended

17  disclosure statement, but permitted the Debtor to file a third amended disclosure statement to be

18  considered by the Court. On September 21, 2009, the Debtor filed a third amended disclosure

19  statement. On October 21, 2009, a hearing was held for the Court to consider the approval of the

20  Debtor's third amended disclosure statement. Ultimately, the Court declined to approve the

21  Debtor's third amended disclosure statement and denied the Debtor's motion for approval of its

22  disclosure statement.

23        On March 26, 2009, the Debtor filed an application for authority to employ Mark Abrams

24  as a management consultant. CB&T filed an opposition to this employment application, and

25  requested that Debtor schedule a hearing thereon. To date, Debtor has failed to schedule a

26  hearing on this employment application.

27  ///

28

Ringstad & Sanders
L.L.P.
2030 Main Street, 17th Floor
Irvine, California 92614
949.851.7450

1   Also on March 26, 2009, the Debtor filed a motion for authority to use cash collateral. A

2   hearing was held on this motion on April 22, 2009, and the Court denied the motion.

3   On April 2, 2009, the Court entered an order setting April 27, 2009, as the deadline for the

4   filing of proofs of claim against the Debtor's bankruptcy estate.

5   **2.   Other Legal Proceedings**

6   In addition to the proceedings discussed above, the Debtor is currently involved in the

7   following non-bankruptcy legal proceedings:

8   a.   *Vineyard Bank, N.A. v. The Olympic on Grand, LLC, et al.*, Los Angeles County

9   Superior Court Case No. BC393730 (CB&T's State Court Foreclosure Action);

10   b.   *Locke Media v. The Olympic on Grand, LLC*, Los Angeles County Superior Court

11   Case No. BC379617 (breach of contract action);

12   c.   *Arup North America Limited v. The Olympic on Grand, LLC*, Los Angeles County

13   Superior Court Case No. BC401795 (breach of contract action);

14   d.   *The Estate of Omar Cosina v. The Olympic on Grand, LLC*, Los Angeles County

15   Superior Court Case No. BC385368 (wrongful death);

16   e.   *Brandon Clark v. The Olympic on Grand, LLC*, Los Angeles County Superior

17   Court Case No. BC401885 (wrongful death); and

18   f.   *The Olympic on Grand, LLC, and James Myron, individually and as trustee of the*

19   *James Myron Trust dated April 12, 2001 v. Richardson Robertson & Associates, Inc., and Loma*

20   *Vista Financial, LLC*, Los Angeles County Superior Court Case No. BC402754.

21   **3.   Actual and Projected Recovery of Preferential or Fraudulent Transfers**

22   Myron Believes that several million dollars of the Debtor's funds were improperly

23   transferred to Robertson, RRA, Beaux Arts, Titan, Renaissance and/or Abrams, and that such

24   transfers may be avoided and recovered for the benefit of the Debtor's bankruptcy estate and its

25   creditors under Bankruptcy and California law as "preferences" and/or fraudulent transfers, or on

26   other grounds.

27   ///

28

Ringstad & Sanders
LLP.
2030 Main Street, 17th Floor
Irvine, California 92614
949.851.7450

1    Upon confirmation of Myron's Plan, any and all of the Debtor's above-described

2    Litigation Claims shall be preserved, and transferred to and vested in a third-party plan agent (the

3    "Plan Agent") to be appointed at the confirmation hearing on Myron's Plan. The Plan Agent will

4    be solely responsible for, and shall have sole discretion to: (i) analyze the Litigation Claims; (ii)

5    make a determination regarding his ability to recover funds from prosecution of the Litigation

6    Claims; (iii) in the Plan Agent's sole and absolute discretion, prosecute and compromise the

7    Litigation Claims for the benefit of the Debtor's creditors; and (iv) hire counsel and any other

8    needed professionals on a contingency fee basis to be approved by the Court in order to aid the

9    Plan Agent in the analysis and prosecution of the Litigation Claims. The Plan agent shall be

10   compensated for his foregoing services on a contingency basis of 5% of any gross amounts

11   recovered on the Litigation Claims, or as otherwise allowed by the Court. If the Plan Agent is

12   unable to retain counsel or other needed professionals to aid him or her in the analysis and

13   prosecution of the Litigation Claims on a contingency fee basis, or if the Plan Agent determines

14   that no net value will result from prosecution of some or all of the Litigation Claims, the Plan

15   Agent shall file a motion for authority to abandon such claims.

16   After the fees and costs of the Plan Agent and any professional(s) employed by the Plan

17   Agent pursuant to Court approval have been paid from any recovery on the Litigation Claims (the

18   "Litigation Claims Recovery"), the remainder of the Litigation Claims Recovery shall be paid to

19   Debtor's Class 7 nonpriority unsecured creditors on a pro rata basis.

20   If Myron and/or Newco are unable to locate a Plan Agent that is willing to perform the

21   foregoing tasks related to the Litigation Claims on a contingency fee basis, or if Myron and/or

22   Newco have not filed a motion for the appointment of such a Plan Agent no later than 60 days

23   following the Effective Date, then Newco or any unsecured creditor of the Debtor shall have an

24   additional 90 days thereafter to file a motion for the appointment of such a Plan Agent for the

25   foregoing purposes.

26   ///

27

28

### 4.    Procedures Implemented to Resolve Financial Problems

To attempt to fix the problems that led to the Debtor's bankruptcy filing, Myron has implemented the following procedures:

Myron has assembled a development team including a developer and architects of the highest caliber, and generated a redevelopment plan for the Property.  Myron has also developed a plan to finance the redevelopment project, and has already taken steps to implement this plan. Moreover, as is described in detail below, Myron has already expended a substantial amount of his personal funds in order to facilitate the redevelopment of the Property into a 336 unit apartment complex with mixed retail space, and Myron is willing to commit additional personal funds in order to ensure the successful consummation of his Plan.  Myron's development team has already prepared a budget and timeline for all phases of obtaining development entitlements and the completion of construction on the project. [Exhibit "B"].  Additionally, Myron and his team have prepared six year cash flow projections for the operation of the Property upon completion of the redevelopment project. [Exhibit "C"].  These cash flow projections show all expenses and revenues that are anticipated from the operation of the Property during this six year period of time following the completion of construction.  Moreover, under his Plan, Myron is willing to commit up to an additional $1.0 million of his personal funds to in order to pay the cost of obtaining full development entitlements on the Property, and Myron will commit even more of his personal funds in order for monthly interest payments to be made to CB&T pending funding of the New Loan.  Further, as described in detail below, Myron will also use his personal funds as needed to make up any shortfall in funds available to pay certain priority claims.

### 5.    Current and Historical Financial Conditions

Historically, the Debtor has used secured loans, equity contributions and revenue from the nightclub and parking lot on the Property to fund expenses related to the redevelopment of the Property.  However, when Debtor's loan from CB&T matured, Debtor did not have sufficient funds to repay this loan itself, and was also unable to refinance the Property.  As was described in detail above, large and unauthorized transfers of the Debtor's funds to Robertson, RRA, Beaux Arts, Titan, Renaissance and/or Abrams further exacerbated Debtor's financial difficulties.

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1  Myron's willingness to use up to $1.0 million of his own funds in order to obtain full

2  development entitlements on the Property, and Myron's willingness to fund monthly interest

3  payments to CB&T from his own funds, should alleviate the operational cash flow difficulties

4  until such time as entitlements and the New Loan can be obtained.

5  The identity and current fair market value of the estate's assets are listed in Exhibit "A."

6  A timeline and budget for each phase of the entitlement and construction process for the

7  redevelopment of the Property into a 336 unit apartment complex with mixed retail space is

8  attached as Exhibit "B." An Engagement Letter issued by Johnson Capital Huntoon Hastings,

9  LLC ("Johnson Capital"), regarding obtaining the $84,650,100 HUD insured component of the

10  New Loan is attached as Exhibit "D." A schedule of the projected expenses and revenues from

11  the operation of Property for six years after the completion of construction of the redevelopment

12  project is attached as Exhibit "C." Debtor's Financial Statements for calendar years 2006, 2007

13  and 2008 are attached as Exhibit "E." It should be noted that Myron obtained the financial

14  statements of the Debtor attached hereto as Exhibit "E" from the Debtor's Amended Disclosure

15  Statement, and Myron makes no representation of the accuracy of these statements.

16  ### III.

17  ### SUMMARY OF THE PLAN OF REORGANIZATION

18  **A.  What Creditors and Interest Holders Will Receive Under the Proposed Plan**

19  As required by the Bankruptcy Code, the Plan classifies claims and interests in various

20  classes according to their right to priority. The Plan states whether each class of claims or

21  interests is impaired or unimpaired. The Plan provides the treatment each class will receive.

22  **B.  Unclassified Claims**

23  Certain types of claims are not placed into voting classes; instead they are unclassified.

24  They are not considered impaired and they do not vote on the Plan because they are automatically

25  entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent

26  has not placed the following claims in a class.

27  ///

28

Ringstad & Sanders
L.L.P.
2020 Main Street, 17th Floor
Irvine, California 92614
949.851.7450

1. **Administrative Expenses**

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code section 507(a)(1). The Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists <u>all</u> of the Debtor's § 507(a)(1) administrative claims and their treatment under the Plan.

| Name | Amount Owed | Treatment |
|---|---|---|
| Law Office of Mark Weitz | $35,000 | Payment in full on the later of the Effective Date or entry of an Order approving the Final Fee Application of the professional. |
| Receiver and any Professional(s) Employed by Receiver | $65,000 | Payment in full on the later of the Effective Date or entry of an Order approving the Final Fee Application of the Receiver and his professional(s). |
| Clerk's Office Fees | $50 (est.) | Paid in full on Effective Date |
| Office of the U.S. Trustee Fees | $1,000 (est.) | Paid in full on Effective Date |
| TOTAL | $101,050 | |

<u>Court Approval of Fees Required</u>:

The Court must rule on all fees listed in this chart before the fees will be owed. For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees allowed by the Court will be owed and required to be paid under this Plan.

As indicated above, approximately $1,050.00 worth of administrative claims will need to be paid on the Effective Date of the Plan unless the claimant has agreed to be paid later or the Court has not yet ruled on the claim. Additionally, an as of yet unascertained amount of attorneys' fees and costs will need to be paid to Debtor's general insolvency counsel on the later of the Effective Date or entry of an Order approving the professional's final fee application. Under Myron's Plan, the foregoing administrative claims will be paid on the Effective Date, and/or upon entry of an Order approving final fee applications, as applicable.

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    The state court Receiver has been collecting $25,000 per month in rent from leasing the

2  parking lot on the Debtor's real property to Unified Parking. It is estimated that the Receiver will

3  have on hand on the Effective Date no less than $100,000 which can be used to pay the foregoing

4  administrative expenses. To the extent that the rent collected by the Receiver proves insufficient

5  to pay all allowed administrative expenses, Myron will pay the shortfall from his own funds.

6    Any net funds remaining in the possession of the Receiver after payment of any lawful

7  expenses of the receivership estate shall be turned over to Newco on the Effective Date.

8    **2.    Priority Tax Claims**

9    Priority tax claims are certain unsecured income, employment and other taxes described

10  by Code Section 507(a)(8). The Code requires that each holder of such a 507(a)(8) priority tax

11  claim receive the present value of such claim in deferred cash payments, over a period not

12  exceeding six years from the date of the assessment of such tax.

13    Based on the schedules and statements filed by the Debtor in connection with its

14  bankruptcy case, the Debtor's proposed Plan, and claims filed by taxing authorities against the

15  Debtor's bankruptcy estate, Myron believes that the Debtor has the following unpaid tax claims of

16  the type described in Bankruptcy Code Section 507(a)(8).

17  ///

18  ///

19  ///

20  ///

21

22

23

24

25

26

27

28

Ringstad & Sanders
L.L.P.
2050 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

| Name | Amount Owed | Treatment |
|---|---|---|
| California Franchise Tax Board | $5,408.25 | Payment in full on the later of the Effective Date or entry of an Order allowing claim. |
| Internal Revenue Service | $300.00 | Payment in full on the later of the Effective Date or entry of an Order allowing claim. |
| City of Los Angeles Office of Finance | $2,333.84 | Payment in full on the later of the Effective Date or entry of an Order allowing claim. |
| California Employment Development Department | $1,010.13 | Payment in full on the later of the Effective Date or entry of an Order allowing claim. |
| California State Board of Equalization | $4,307.11 | Payment in full on the later of the Effective Date or entry of an Order allowing claim. |
| TOTAL | $13,359.33 | |

Each of the foregoing unsecured priority tax claims of the type described in Bankruptcy Code Section 507(a)(8) will be paid on the later of the Effective Date, or upon entry of an Order allowing each such claim.

It is estimated that the Receiver will have on hand on the Effective Date no less than $100,000 from the rental of Debtor's parking lot which can be used to pay priority tax claims. To the extent that the rent collected by the Receiver proves insufficient to pay these priority tax claims, Myron will pay the shortfall from his own funds.

C.    **Classified Claims and Interests**

1.    **Classes of Secured Claims**

Secured claims are claims secured by liens on property of the estate. The following charts lists all classes containing Debtor's secured pre-petition claims and their treatment under The Debtor's Plan:

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

**Class 1.        Secured Claim of Los Angeles County for property taxes.**

The secured claim of the Los Angeles County for property taxes will be paid in full from the proceeds of the HUD insured component of the New Loan on the earlier of 27 months following the Effective Date, or fifteen calendar days following the funding of this component of the New Loan, unless such period is extended by the Court upon the application of the Plan Proponent for good cause shown.

Los Angeles County shall retain its lien against the Property, unmodified, until such time as its Class 1 Claim in accordance with the terms set forth herein.

| CLASS# | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | Secured claim of: Los Angeles County<br><br>Collateral description: Debtor's real property<br><br>Collateral value: $29,000,000[1]<br><br>Priority of security interest: First<br><br>Principal owed: Approx. $788,890.84<br><br>Total claim amount: Approx. $788,890.84 (plus any applicable statutory interest and/or late fees) | No | Yes | Payment in full of allowed secured claim with interest and/or late fees at the statutory rate upon the earlier of 27 months following the Effective Date or fifteen days following the funding of the HUD insured component of the New Loan.<br><br>Until such time as this claim is paid, Los Angeles County shall retain its lien on the Property, unmodified. |

**Class 2.        Secured Claim of CB&T.**

Upon the Effective Date, all principal and interest then owed under the secured claim of CB&T will be converted into a 30-year secured, fully amortizing loan to Newco, with payments of interest only being due monthly from the Effective Date until the funding of the HUD insured component of the New Loan.  The secured claim of CB&T shall bear interest at the fixed rate of

---

[1] See September 23, 2008, appraisal of Property attached hereto as Exhibit "M."

1  the lesser of: (i) 6% per annum; or (ii) the default rate of interest as specified in the agreements

2  between CB&T and the Debtor in effect on the Effective Date.  Upon the funding of HUD

3  insured component of the New Loan, and beginning no later than 27 months following the

4  Effective Date, payments of principal and interest shall be made on a monthly basis to CB&T on

5  its 30 year fully amortizing secured claim.  However, Newco shall be required to repay all

6  outstanding principal and interest owed to CB&T no later than 60 months following the Effective

7  Date.  CB&T's security interest in the Property will be subordinated to each of the two

8  components of the New Loan upon the funding and close of escrow on each component of the

9  New Loan.  Newco shall have the right to pre-pay all amounts owed to CB&T at any time without

10  penalty.

11  ///

12  ///

13  ///

14  ///

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

| CLASS# | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|--------|-------------|---------------|----------------|-----------|
| 2 | Secured claim of: CB&T

Collateral description: Debtor's real property

Collateral value: $29,000,000

Priority of security int.: second

Principal owed: $18,000,000

Total claim amount: $18,000,000 plus accrued unpaid interest in an amount to be determined. | No | Yes | Upon the Effective Date, claim converted into 30-year secured, fully amortizing loan to Newco, with monthly payments of interest only being due from the Effective Date until the funding of the New Loan.  Claim will bear interest at the fixed rate of interest equal to the lesser or: (i) 6% per annum; or (ii) the default rate of interest under prepetition loan agreements calculated on the Effective Date.

Upon the Funding of New Loan, and no later than 27 months following the Effective Date, monthly payments of principal and interest shall be made on the 30-year fully amortizing claim.  However, Newco shall repay all outstanding principal and interest owed to CB&T no later than 60 months following the Effective Date.

CB&T shall retain its lien on the Property, but lien will be subordinated to each of the two components of the New Loan upon the funding and close of escrow on each component of the New Loan.

Newco shall have the right to pre-pay all amounts owed to CB&T at any time without penalty. |

Ringstad & Sanders
L.L.P.
2030 Main Street, 13th Floor
Irvine, California 92614
949.851.7450

The funds that will be used to make the above-described payments to CB&T will be derived from: (i) James Myron's personal funds; (ii) funds derived from the operation of a parking lot on the Property and any other available income of the Debtor and/or Newco; (iii) the proceeds of the New Loan; and (iv) the sale and/or post-redevelopment operation of the Property.

**Class 3.        Secured Claim of Loma Vista Financial.**

Upon the Effective Date, all principal and interest then owed on the allowed secured claims of the below described assignees of interests in the promissory note and deed of trust of LVF (other than James Myron's interest thereunder) will be converted into 30-year secured, fully amortizing loans to Newco, with interest only payments being due monthly from the Effective Date until the funding of the HUD insured component of the New Loan.  The allowed secured claim of the assignees of interests in the LVF note and deed of trust (other than the interest of James Myron) shall bear interest at the fixed rate of the lesser of: (i) 6% per annum; or (ii) the default rate of interest as specified in the agreements between CB&T and the Debtor in effect on the Effective Date.  Upon the funding of the HUD insured component of the New Loan, and beginning no later than 27 months following the Effective Date, payments of principal and interest shall be made on a monthly basis to the holders of allowed claims in this class other than James Myron on their 30-year fully amortizing secured claims.  However, Newco shall be required to pay all outstanding principal and interest owed to the holders of allowed claims in this class (other than Myron) no later than 60 months following the Effective Date.

The security interest(s) in the Property held by LVF and the assignees under its deed of trust holding allowed claims in this class will be subordinated to each of the two components of the New Loan upon the funding and close of escrow on each component of the New Loan. Newco shall have the right to pre-pay all amounts owed to LVF and the assignees under the LVF note and deed of trust at any time without penalty.

As noted above, various assignments of the beneficiary's interest under LVF's note and deed of trust against the Property have been made.  James Myron contends that the Debtor's loan from LVF is authorized up to a maximum principal amount of $3 million, and that the following entities and individuals comprise all of the known parties that may have an interest (both disputed

Ringstad & Sanders
LLP
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

and undisputed) under the note and deed of trust.

| **Assignee** | **Principal Amount of Assignment** |
|---|---|
| James Myron | $1,500,000 |
| CW Capital, Inc. | $500,000 |
| Top Shelf West, LLC | $300,000 |
| SCS Equities | $45,000 |
| Robertson / RRA | $4,901,202.42 and/or $655,000 |

Myron believes that the interests in the LVF note and deed of trust held by Myron, CW Capital and Top Shelf are legitimate.

Debtor, Robertson and RRA contend that Robertson and/or RRA received a $4,901,202.42 and/or $655,000 assignment of the LVF note and deed of trust against the Property. James Myron disputed the legitimacy of this claim and, instead, contended that Robertson/RRA are owed nothing under the LVF note and deed. This dispute was the subject of litigation between the parties in Los Angeles County Superior Court. On August 13, 2008, the Los Angeles County Superior Court entered a Judgment against Robertson / RRA, invalidating the alleged partial assignment of Loma Vista's deed of trust under which said parties claimed to hold a security interest in the Debtor's real Property. Accordingly, Robertson/RRA have no interest under the LVF note and deed of trust, and are treated accordingly under Myron's Amended Plan.

Myron presently has no knowledge regarding the validity or invalidity of the interests that Debtor claims SCS Equities holds under the LVF note and deed of trust.

Like all of the other above-described claimed interests under the LVF note and deed, the claim of SCS Equities will only be paid under Myron's Plan if it is ultimately allowed by the Court.

James Myron is the only "insider" assignee of an interest in the LVF note and deed. James Myron will not receive any funds in payment of his partial assignee's interest under the LVF note and deed. Instead, upon the funding of the New Loan, and the transfer of title to the Property to Newco, Myron will reconvey his assignee's interest under the LVF note and deed.

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1  By way of this reconveyance, James Myron's interest under the LVF note and deed will comprise

2  part of his equity contribution to Newco.

3       Each holder of an allowed claim in this Class (i.e., each holder of an allowed partial

4  assignment of an interest in the LVF note and deed) shall be entitled to separately vote on

5  Myron's Plan.  If Myron's Plan is confirmed by the Court, LVF and each holder of an allowed

6  claim in this Class shall be required to execute reconveyances of such interests in the Property

7  upon receiving full satisfaction of their respective claims, and shall also be required to execute

8  any documents necessary to subordinate their respective security interests in the Property to each

9  of the two components of the New Loan.

10  ///

11  ///

12  ///

13  ///

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ringstad & Sanders
L.L.P.
2030 Main Street, 17th Floor
Irvine, California 92614
949.851.7450

Ringstad & Sanders
L.L.P.
2030 Main Street , 13th Floor
Irvine, California 92614
949.851.7450

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 3 | Secured claim of: Loma Vista Financial (and non-insider assignees holding allowed interests thereunder)<br><br>Collateral description: Debtor's real Property<br><br>Collateral value: $29,000,000<br><br>Priority of security int.: third<br><br>Principal owed: $2,845,000 (excluding disputed claim of Robertson/RRA)<br><br>Total claim amount: $2,845,000 plus interest in an amount to be determined (excluding disputed claim of Robertson/RRA) | Yes | Yes | Upon the Effective Date, allowed claims in this class of assignees (other than Myron's) converted into 30-year secured, fully amortizing loan to Newco, with payments of interest only due monthly, at fixed rate of interest equal to the lesser of: (i) 6% per annum; or (ii) the default rate of interest under prepetition loan agreements between Debtor and CB&T as of the Effective Date.<br><br>Upon the Funding of New Loan, and no later than 27 months following the Effective Date, monthly payments of principal and interest shall be made on the 30-year fully amortizing allowed claims held by parties in this class (other than Myron).  However, Newco shall repay all outstanding principal and interest owed no later than 60 months following the Effective Date.<br><br>Loma Vista and its assignees shall retain their security interest(s) in the Property, but lien(s) will be subordinated to each component of the New Loan.<br><br>Newco shall have the right to pre-pay all amounts owed to Loma Vista and/or its assignees at any time without penalty. |

1  The funds that will be used to make the above-described payments to the holders of

2  allowed interests under the LVF note and deed (other than Myron) will be derived from: (i) James

3  Myron's personal funds; (ii) funds derived from the operation of a parking lot on the Property and

4  any other available income of the Debtor and/or Newco; (iii) the proceeds of the New Loan; and

5  (iv) the sale and/or post-redevelopment operation of the Property.

6         **Class 4.        Secured Claim of James Myron.**

7         James Myron is the beneficiary under a third priority deed of trust against the Property

8  securing Debtor's repayment of a $17,500,000 purchase money loan resulting from Myron's sale

9  of the Property to the Debtor.  The secured claim of James Myron will not be paid in any amount.

10  Instead, upon the close of escrow on the funding of the New Loan and the transfer of title to the

11  Property to Newco, James Myron will reconvey his deed of trust on the Property, and his interest

12  in the Property will become part of his equity investment in Newco.

13         James Myron shall retain his lien against the Property, unmodified, until such time as

14  escrow closes on the funding of the New Loan and transfer of title to the Property to Newco,

15  whereupon Myron shall reconvey his third priority deed of trust against the Property.

16

| CLASS# | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 4 | Secured claim of: James Myron<br><br>Collateral description: Debtor's real property<br><br>Collateral value: $29,000,000<br><br>Priority of security int.: fourth<br><br>Principal owed: $17,500,000<br><br>Total claim amount: $17,500,000 plus accrued interest. | Yes | Yes | Claim will not be paid in any amount.  Instead, James Myron will reconvey his interest under this deed of trust against the Property upon the close of escrow on the funding of the New Loan and transfer of title to the Property to Newco.<br><br>Until such time James Myron reconveys his deed of trust, he shall retain his lien on the Property, unmodified. |

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

**Class 5.      Secured Claim of Los Angeles County for Personal Property Taxes.**

The Los Angeles County Treasurer and Tax Collector has filed a secured claim for personal property taxes in the amount of $851.19 against the Debtor's bankruptcy estate.

The secured claim of Los Angeles County for personal property taxes will be paid in full within forty-five calendar days following the Effective Date.  It is estimated that the Receiver will have on hand on the Effective Date no less than $100,000 from the rental of Debtor's parking lot which can be used to pay priority tax claims.  To the extent that the rent collected by the Receiver proves insufficient to pay these priority tax claims, Myron will pay the shortfall from his own funds.

Los Angeles County shall retain its lien against Debtor's personal property, unmodified, until such time as its Class 5 Claim is completely satisfied in accordance with the terms set forth herein.

| CLASS# | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 5 | Secured claim of: Los Angeles County<br><br>Collateral description: Debtor's personal property<br><br>Collateral value: $120,000<br><br>Priority of security interest: first<br><br>Principal owed: Approx. $851.19<br><br>Total claim amount: Approx. $851.19 (plus any applicable statutory interest and/or late fees) | No | Yes | Payment in full of allowed secured claim with interest within 45 calendar days following the Effective Date of the Plan.<br><br>Until such time as this claim is paid, Los Angeles County shall retain its lien on the Debtor's personal property, unmodified. |

///

///

2.    **Classes of Priority Unsecured Claims**

**Class 6.    Priority Unsecured Claims.**

Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

The Debtor does not believe that it has any priority claims of the types listed in Section 507(a)(3), (a)(4), (a)(5), (a)(6), and (a)(7).  Nevertheless, to the extent that any such claims are determined to exist, the claims will be paid on the later of the Effective Date, or upon entry of an Order allowing each such claim.

It is estimated that the Receiver will have on hand on the Effective Date no less than $100,000 from the rental of Debtor's parking lot which can be used to pay any priority unsecured claims that are found to exist and are allowed.  To the extent that the rent collected by the Receiver proves insufficient to pay these allowed priority claims, Myron will pay the shortfall from his own funds.

///

///

///

///

### 3.    Class of General Unsecured Claims

**Class 7.    Nonpriority Unsecured Claims.**

General unsecured claims are unsecured claims not entitled to priority under Bankruptcy Code section 507(a). The following chart identifies this Plan's treatment of the class containing Debtor's general unsecured claims. (See Exhibit "F" for detailed information about each general unsecured claim as represented by Debtor in its Amended Disclosure Statement.):

Class 7 unsecured creditors will receive payment on their claims in one of the following, alternative, methods:

**A.    If Newco Sells the Property Within 5 Years Following the Effective Date:**

If the Property is sold on or before the date which is five years following the Effective Date (the "Fifth Anniversary Date"), then Class 7 unsecured creditors shall have a right to receive payment on their claims under the following "project participation" formula. In satisfaction of the unsecured claims held by Class 7 creditors, creditors in this class shall be entitled to receive from the sale proceeds a portion of the Residual Profits (as defined below) resulting from the sale of the redevelopment project. Such portion of the Residual Profits, if any, shall be distributed on a pro rata basis to each unsecured creditor within the class based on the percentage (the "Claimant Percentage") which (a) the final, liquidated and allowed amount of such creditor's claim bears to (b) the total amount of liquidated and allowed claims held at the time of distribution by unsecured creditors within Class 7 (the "Total Liquidated Claims"). For purposes of this payment obligation, the "Residual Net Profits" from the sale of the redevelopment project shall be defined as an amount equal to the lesser of (i) twenty-five percent (25%) of the Total Liquidated Claims or (ii) any Net Project Profit achieved by the Developer Parties upon the sale of the redevelopment project in excess of the Minimum Profit Threshold (as defined and discussed in Exhibit "I" attached hereto).

Notwithstanding the foregoing, in the event that the redevelopment project is sold prior to the Fifth Anniversary Date for a price which does not result in any Residual Profits for distribution to the unsecured creditors, the unsecured creditors shall have no recourse against the

Ringstad & Sanders
L.L.P.
2030 Main Street, 17ᵗʰ Floor
Irvine, California 92614
949.851.7450

1  redevelopment project, the Property or any Developer Parties nor any other right to payment

2  therefrom, nor shall any of the Developer Parties have any obligation to or otherwise be liable in

3  any manner for the satisfaction of any claims held by any of the unsecured creditors in the class.

4        **B.**    **If Newco Does Not Sell the Property Within 5 Years Following**

5      **the Effective Date:**

6        In the event that the Property is not sold by Newco on or before the Fifth Anniversary

7  Date, then in lieu of the payment of any share of Residual Profits to the unsecured creditors within

8  the class, each unsecured creditor holding an allowed Class 7 claim as of the Fifth Anniversary

9  Date shall be entitled to payment of an amount equal to the lesser of: (A) One Million Dollars

10  ($1,000,000) multiplied by such creditor's applicable Claimant Percentage (defined above), to be

11  paid exclusively from aggregate Net Operating Profits generated from the operation of the

12  Property up to the Fifth Anniversary Date: or (B) 20% of the aggregate Net Operating Profits

13  generated from the operation of the Property up to the Fifth Anniversary Date multiplied by such

14  creditor's applicable Claimant Percentage.[2]

15        For purposes of the treatment of Class 7 unsecured creditors under Myron's Amended

16  Plan, the term "Net Operating Profits" shall mean: An amount equal to the difference between (a)

17  Operational Revenues received by the Developer Parties from the ownership and operation of the

18  development project, and (b) the Operational Expenses incurred by the Developer Parties in

19  connection therewith.  For purposes of this Amended Plan, Net Operating Profit shall not be

20  calculated on an annual basis but shall instead be determined on an aggregate basis for the entire

21  period up to and including the Fifth Anniversary Date, such that Operational Expenses incurred

22  during one fiscal year may be offset against Operational Revenues received during another fiscal

23  year.

24  ///

25

26  [2] See Exhibit "N" attached hereto for definitions of "Net Operating Profits," Operational
Expenses" and "Operational Revenues" used to determine the distribution to be made to Class 7

27  unsecured creditors in the event that the Property is not sold by Newco on or before the Fifth
Anniversary Date

28

Ringstad & Sanders
LLP
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1        Notwithstanding the foregoing, in the event that the operation of the Property up to the

2    Fifth Anniversary Date does result in any Net Operating Profits, or results in Net Operating

3    Profits that result in payments to Class 7 unsecured creditors totaling less than $1 million under

4    the calculation described above, Class 7 unsecured creditors shall have no recourse against the

5    development project, Newco, the Property or any Developer Parties nor any other right to

6    payment therefrom, nor shall any Developer Parties have any obligation to or otherwise be liable

7    in any manner for the satisfaction of any claims held by any of the unsecured creditors in the

8    class.

9        In addition to the foregoing, creditors holding allowed nonpriority unsecured claims in

10    Class 7 will also receive their pro rata share of any Litigation Claims Recovery, if any.

11    ///

12    ///

13    ///

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ringstad & Sanders
L.L.P.
2050 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT | |
|---|---|---|---|---|
| 7 | General unsecured claims<br><br>☐ Total amount of claims = $15,376,579.36 (est.) | Yes. Impaired; claims in this class are entitled to vote on the Plan. | ☐ Payment and interval<br><br>☐ Interest rate 0%<br><br>☐ Total payout: Unknown. Any payments to creditors in this class will be on a pro rata basis. | Class 7 nonpriority unsecured creditors in this class will receive payment on their claims in one of the following, alternative, methods: (A) If the Property is sold within 5 years following the Effective Date, then Class 7 unsecured creditors shall receive pro rata payments on their allowed claims from the Residual Profits resulting from the sale, if any, as described above and in Exhibit "I" to the Disclosure Statement; or (B) If the Property is not sold within 5 years following the Effective Date, pro rata payments on their allowed claims from the lesser of (A) $1,000,000 or (B) 20% of the aggregate Net Operating Profits generated from the operation of the Property up to the Fifth Anniversary Date.<br><br>In addition to the foregoing, creditors holding allowed claims in this class will also their pro rata share of the Litigation Claims Recovery, if any. |

Notwithstanding the foregoing, in the event that Newco has not generated sufficient net profits from the operation of the redevelopment project by the Fifth Anniversary Date to pay the entirety of the above-described $1 million to Class 7 unsecured creditors, then Newco shall only

Ringstad & Sanders
L.L.P., 17th Floor
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1  be required to pay its actual net operating profit to this date for the benefit of Class 7 unsecured

2  creditors. Except as otherwise provided herein, if Newco shall have no further liability for

3  making payments under the Amended Plan for the benefit of Class 7 unsecured creditors, and

4  creditors in this class shall have no recourse against the redevelopment project, the Property or

5  any Developer Parties nor any other right to payment therefrom, nor shall any of the Developer

6  Parties have any obligation to or otherwise be liable in any manner for the satisfaction of any

7  claims held by any of the unsecured creditors in the class.

8      **4.**     **Class(es) of Interest Holders**

9      **Class 8.**     **Equity Interests in the Debtor.**

10      Interest holders are the parties who hold ownership interest (i.e., equity interest) in the

11  Debtor. If the Debtor is a corporation, entities holding preferred or common stock in the Debtor

12  are interest holders. If the Debtor is a partnership, the interest holders include both general and

13  limited partners. If the Debtor is an individual, the Debtor is the interest holder. In this case, the

14  Debtor is a limited liability company and the interest holders are its members. There are three

15  separate classes of ownership interests in the Debtor. Myron is the sole Class "B" member,

16  owning a 20% interest in the Debtor. Renaissance is the managing member and sole Class "A"

17  member, owning a 57.5% interest in the Debtor. There are also three Class "C" members of

18  Debtor who collectively own a 22.5% interest in the Debtor. The first of the three Class "C"

19  members of the Debtor is the Wolterman Family Limited Partnership, holding a 15% interest in

20  the Debtor. The second of the three Class "C" members of the Debtor is Dien McCall, holding a

21  5% interest in the Debtor. The third and final Class "C" member of the Debtor is Jerry Brown,

22  holding a 2.5% ownership interest in the Debtor.

23      All membership interests in the Debtor shall be cancelled upon the confirmation of

24  Myron's Amended Plan, the occurrence of the Effective Date and the transfer of title to the

25  Property to Newco.

26  ///

27  ///

28

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

The following chart identifies the Plan's treatment of the class of interest holders:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|-----------|
| 8 | Interest holders | Yes | Membership interests cancelled upon the confirmation of Myron's Amended Plan, the occurrence of the Effective Date and the transfer of title to the Property to Newco. |

**D.    Means of Effectuating the Plan**

    **1.    The Transfer and Redevelopment of the Property**

The Plan will be funded by the following:

This is a reorganizing plan. Myron seeks to accomplish payments under the Plan by transferring title to the Property to a newly formed entity (Newco), obtaining development entitlements on the Property, obtaining construction financing and commencing and completing construction of a 336 unit apartment complex with mixed retail space on the Property. Attached as Exhibit "G" is a conceptual design package for Myron's proposed redevelopment of the Property that has been prepared by the project architects, RTKL Associates, Inc., and the artist hired to design the fountain to be located in front of the Property.

The process of designing Myron's proposed redevelopment project for the Property, obtaining development entitlements and the recordation of a final map for the project is estimated to cost approximately $546,868. Attached hereto as Exhibit "B" is a month by month timeline and budget for the design, entitlement and construction of Myron's proposed redevelopment of the Property. Under Myron's Plan, Myron will commit his personal funds, up to $1.0 million, toward the cost of obtaining the needed development entitlements.

Obtaining development entitlements will significantly increase the value of the Property which, in turn, will permit a loan to be obtained in an amount that is sufficient to complete the construction of Myron's proposed redevelopment of the Property and to make the payments

Ringstad & Sanders
L.L.P., 12th Floor
2030 Main Street
Irvine, California 92614
949.851.7450

1    described herein to certain of Debtor's creditors.

2          This development plan for the Property is consistent with the requirements of the United

3    States Department of Housing and Urban Development ("HUD"). Under Myron's Plan, once

4    development entitlements are obtained for the Property, a construction loan will be obtained in the

5    approximate amount of $84,650,100. This loan is intended to be insured by Federal Housing

6    Administration ("FHA") Mortgage Insurance program through HUD. The New Loan will be

7    secured by a first priority deed of trust on the Property.

8          Under Myron's Plan, full development entitlements on the Property will be obtained, and

9    a final map shall be recorded, no later than 24 months following the Effective Date, unless such

10   time period is extended by the Bankruptcy Court upon motion by the Plan Proponent and for good

11   cause.

12         The Effective Date of the Plan is the first business day following fifteen days after entry of

13   an Order confirming the Plan. The New Loan will be funded no later than 27 months following

14   the Effective Date, unless such time period is extended by the Bankruptcy Court upon motion by

15   the Plan Proponent and for good cause.

16         Upon the Effective Date of the Plan, title to the Property will be transferred by the Debtor

17   to a Delaware limited liability company (hereafter "Newco") formed, or to be formed, by Myron,

18   and which shall be primarily owned and controlled by Myron. Newco will be the borrower of the

19   New Loan. The New Loan will be secured by first and second priority security interests in the

20   Property (to the extent that the funding from Intracorp is in the form of a loan as opposed to an

21   equity contribution). The New Loan will be amortized and repaid over a 40 year period of time.

22         Also upon the Effective Date of the Plan, any net funds remaining in the receivership

23   estate, and any receivables of the Debtor or the receivership estate, shall be transferred to Newco.

24         In addition to the funds to be derived from the HUD insured Loan, and as a component of

25   the New Loan, the developer hired by Myron, Intracorp, has agreed to obtain approximately $40

26   million of additional funding for the redevelopment project, either in the form of debt or equity,

27   after development entitlements on the Property have been obtained. Attached hereto as Exhibit K

28   is a letter of intent from Intracorp concerning this additional funding. Specifically, this letter

Ringstad & Sanders
L.L.P.
2030 Main Street, 17th Floor
Irvine, California 92614
949.851.7450

1  states, in part:

2      [I]ntracorp has carefully evaluated the capital requirements for the full,

3      successful completion of the project, and is willing, based upon current

4      assumptions, to obtain the required capital investment, either in the form

5      of debt or equity, in the approximate amount of $40,000,000 after

6      entitlements have been obtained.

7          Intracorp is a leading West Coast Developer and investor in urban-

8      infill, residential housing. The company has been a pioneer in the

9      development of urban neighborhoods and communities and has

10     developed over 6,500 units on the West Coast of the United States.

11     Intracorp has a wide range of experience varying from high-rise towers

12     to urban-core village projects with retail components, to detached-home

13     infill projects in urban and suburban settings.

14         Intracorp has a long history of investing in and executing successful

15     projects in partnership with leading real estate investors. We have the

16     ability to source the required equity capital to develop this two-tower

17     project located at Olympic and Grand in Los Angeles, California, and

18     have determined that this project, as designed, for this particular location,

19     meets our criteria for development, lending and investing.

20     The proceeds from the HUD insured and Intracorp portions of the New Loan (or such

21  other third-party source(s) of financing as Newco may designate), will be used to fund certain

22  payments to creditors under the terms of Myron's Amended Plan as described herein, and to fund

23  the construction costs to redevelop the property into the above-described apartment complex and

24  mixed retail space. It should be noted that no part of the financing for the redevelopment project

25  will be used to satisfy: (i) any part of the $17,500,000 Class 4 claim of James Myron secured by a

26  third priority deed of trust against the Property; or (ii) any part of James Myron's interest as a

27  $1.5 million partial assignee of the second priority Loma Vista deed of trust encumbering

28  Property. Instead, upon transfer of title of the Property to Newco, James Myron will execute

Ringstad & Sanders
L.L.P.
2020 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    reconveyances of his interests under these deeds of trust as part of the consideration that he will

2    pay for obtaining his equity interest in Newco.

3    After the Effective Date, Newco and Myron will make ongoing monthly payments of

4    interest to CB&T on the 30-year fully amortizing claim provided to it under Myron's Plan.  Once

5    development entitlements on the Property are obtained and the HUD insured component of the

6    New Loan is funded, and beginning no later than 27 months following the Effective Date,

7    monthly payments of principal and interest will be made from the proceeds of the New Loan on

8    CB&T's 30-year fully amortizing secured claim.  Notwithstanding the foregoing, Newco shall

9    repay all outstanding principal and interest owed to CB&T on its secured claim no later than 60

10   months following the Effective Date.  Once the redevelopment project is completed, funds from

11   the operation of the Property will also be available to make debt service payments to CB&T. The

12   need to make such debt service payments has been taken into consideration in the preparation of

13   the cash flow projections for operation of the Property attached as Exhibit C.

14   The proceeds of the HUD insured component of the New Loan will also be used to

15   completely satisfy the secured Class 1 property tax claim of the County of Los Angeles no later

16   than 27 months following the Effective Date.

17   Additionally, after the Effective Date, Newco and Myron and will make ongoing monthly

18   interest only payments to the Class 3 holders of allowed interests under the Loma Vista Financial

19   (other than Myron).  Once development entitlements on the Property are obtained and the HUD

20   insured component of the New Loan is funded, and beginning no later than 27 months following

21   the Effective Date, monthly payments of principal and interest will be made by Newco from the

22   proceeds of the New Loan to the holders of allowed Class 3 claims (other than Myron) on their

23   30-year fully amortizing secured claims.  Once the redevelopment project is completed, funds

24   from the operation of the Property will also be available to make debt service payments to the

25   holders of claims in this class.  Notwithstanding the foregoing, Newco shall repay all outstanding

26   principal and interest owed to the holders of allowed Class 3 secured claims other than Myron no

27   later than 60 months following the Effective Date.

28

1    The County of Los Angeles, CB&T, Loma Vista and Myron shall each retain their liens

2    against the Property until such time as their respective Class 1, Class 2, Class 3 and Class 4

3    secured claims have been paid in accordance with the terms of the Plan (or otherwise

4    reconveyed). However, each of these parties' security interests shall be made subordinated to the

5    first and second priority liens against the Property securing the two components of the New Loan

6    upon their funding.

7    Myron has engaged the real estate investment banking firm of Johnson Capital Huntoon

8    Hastings, LLC ("JCHH") to facilitate the origination, underwriting, preparation and processing of

9    the HUD insured component of the New Loan and all documents needed to obtain this portion of

10    the New Loan. Myron has already submitted an application to obtain this portion of the New

11    Loan with a HUD approved lender, and has paid a fee of $40,000 associated with obtaining the

12    loan from his own funds. JCHH principal, Glenn J. Reinardy, has personally originated $1.5

13    billion of FHA insured loans, and JCHH has serviced over $10 billion of such loans. Attached

14    hereto as Exhibit "D" is a copy of Myron's engagement letter with JCHH, as well additional

15    information about JCHH, biographies of the professionals in its "HUD Group," and information

16    on recent financing transactions handled by JCHH. More information can be obtained about

17    JCHH, its qualifications and its professionals from its website located at

18    http://johnsoncapital.com.

19    Myron has also hired an experienced and accomplished architectural firm, RTKL

20    Associates, Inc. ("RTKL"), to design the proposed redevelopment project for the Property.

21    Myron has already paid RTKL a total of $26,179.01 of his own funds in order retain RTKL and to

22    expedite the redevelopment of the Property. Attached hereto as Exhibit H is the Retention

23    Agreement entered into by Myron with RTKL, and also the professional qualifications of RTKL.

24    RTKL was established approximately 60 years ago, and is one of the largest architectural

25    firms in the United States, with a portfolio that includes mixed-use, corporate, residential, retail,

26    hospitality, sports and entertainment, civic/cultural, academic, government and healthcare

27    projects. RTKL's West coast operations designed the Irvine Spectrum in Irvine, the West lake

28    Center in Seattle, the Aqua Vista Residential Towers in San Diego, Fantasy Springs Resort and

Ringstad & Sanders
L.L.P.
2030 Main Street, 17th Floor
Irvine, California 92614
949.851.7450

1  Casino in Indio, and the Westfield San Francisco Center.  RTKL was also hired by the owner of

2  the Staples Center in Los Angeles to generate a master plan for the surrounding urban district,

3  which included its design of LA Live and LA Center.  More information about RTKL, its

4  qualifications, completed projects and its professionals can be obtained from its website located at

5  http://www.rtkl.com.

6        As was briefly described above, Myron has already engaged the accomplished developer

7  Intracorp to be the builder that redevelops the Property into a 336 unit apartment complex with

8  mixed retail space.  Attached hereto as Exhibit J is a copy of Myron's consulting agreement with

9  Intracorp necessary to begin the process of the redevelopment of the Property.  Intracorp is one of

10  the nation's leading urban developers, with more than 15 years experience developing high-

11  quality homes, multi-family residences and commercial real estate in the United States and

12  Canada.  Intracorp is the premier builder of mixed-use projects on the West Coast, including mid-

13  rise, high-rise and residential/retail condominium, town home and apartment complexes.  To date,

14  Intracorp has secured in excess of $1 billion for project development.  Attached hereto as Exhibit

15  L is information about Intracorp, its prior development projects and its professionals.  More

16  information about Intracorp can be found on its website located at

17  http://www.intracorpcompanies.com.

18        In connection with the redevelopment of the Property, internationally renowned sculptor

19  Gil Bruvel has agreed to design a "fountain of angels" which will be located on the Property at

20  the corner of Olympic Boulevard and Grand Avenue.  Mr. Bruvel's art and sculpture are featured

21  in prominent locations around the globe, and more information about Mr. Bruvel and his art can

22  be found at his website located at www.bruvel.com.

23        After the Property has been redeveloped, if the Property is sold within five years following

24  the Effective Date, then Class 7 unsecured creditors shall have a right to receive pro rata payment

25  on their claims, if at all, from the above-described portion of the Residual Net Profits resulting

26  from the sale.  In the event that the Property is not sold within five years after the Effective Date,

27  each Class 7 unsecured creditor holding an allowed claim shall be entitled to a pro rata payment

28  thereon from a $1 million fund to be provided by Newco.  In either event, and in addition to the

Ringstad & Sanders
1010 Main Street, 17th Floor
Irving, California  92614
949.851.7450

1  foregoing, creditors holding allowed Class 7 nonpriority unsecured claims will also receive their

2  pro rata share of any Litigation Claims Recovery.

3      **2.**    **Post-confirmation Management**

4      The managing member of the Debtor prior to the filing of the Debtor's bankruptcy case,

5  and during the bankruptcy case, has been Renaissance.  The managing member of Renaissance is

6  Titan. Robertson is currently Titan's majority shareholder, president, sole director, chief financial

7  officer and secretary.  Renaissance will continue to manage the affairs of the Debtor post-

8  confirmation.

9      However, upon the Effective Date, the Litigation Claims shall be transferred to, and

10  vested in, the Plan Agent, who shall have sole and absolute authority and discretion to prosecute,

11  compromise and/or abandon such claims.  Also upon the Effective Date, title to the Property shall

12  be transferred to Newco.

13      **3.**    **Disbursing Agent**

14      Newco shall act as the disbursing agent for the purpose of making all distributions

15  provided for under the Plan, except the Plan Agent shall have responsibility for the disbursement

16  of any proceeds resulting from the Litigation Claims.  Newco and the Plan Agent shall serve as

17  disbursing agents without bond and shall receive no compensation for distribution services

18  rendered and expenses incurred pursuant to the Plan, except as otherwise specified herein.

19  **E.**    **Risk Factors**

20      The proposed Plan has the following risks: One risk of the Plan is that Myron may not be

21  able to obtain development entitlements on the Property for the proposed redevelopment project,

22  or that such entitlements may take longer than the 24 months anticipated to obtain.  If such

23  development entitlements are not obtained, it could preclude the ability to obtain the HUD

24  Insured and/or Intracorp portions of the New Loan which, in turn, would jeopardize the ability for

25  payments to be made to creditors under Myron's Amended Plan.   If obtaining entitlements takes

26  longer than anticipated, it could delay payments being made under the Plan to the Debtor's

27  creditors.

28

*Ringstad & Sanders*
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1  Another risk of the Plan is that no lender or lenders may be able to be located that are

2  willing to fund the New Loan, or the New Loan may not be funded within 27 months following

3  the Effective Date as anticipated.  If funding sources for the New Loan do not materialize, and an

4  alternative source cannot be obtained, it would be impossible for the contemplated payments

5  under the Plan to be made to Debtor's creditors.  If it were to take longer than expected for

6  funding to be obtained, it would likely delay payments being made to Debtor's creditors.

7  Myron believes that his careful selection of a well-qualified and experienced investment

8  banking firm, architectural firm and developer, as described elsewhere herein, will minimize the

9  foregoing risks.  Nonetheless, such risks do exist.

10  If, after the Property is redeveloped, it is sold within five years following the Effective

11  Date, the amount that will be received by Debtor's Class 7 unsecured creditors, if anything, is

12  wholly dependent on the sale price and the application of the formula set forth above for

13  calculating the amount to be shared pro rata among this class.

14  **F.    Other Provisions of the Plan**

15  **1.    Executory Contracts and Unexpired Leases**

16  **a.    Assumptions**

17  The following are the unexpired leases and executory contracts to be assumed as

18  obligations of the reorganized Debtor under this Plan:  All current policies of insurance.

19  On the Effective Date, each of the unexpired leases and executory contracts listed above

20  shall be assumed as obligations of Newco.  The Order of the Court confirming the Plan shall

21  constitute an Order approving the assumption of each lease and contract listed above.  If you are a

22  party to a lease or contract to be assumed and you object to the assumption of your lease or

23  contract, you must file and serve your objection to the Plan within the deadline for objecting to

24  the confirmation of the Plan. See Section {I.B.3.} of this document for the specific date.

25  ///

26  ///

27

28

Ringstad & Sanders
LLP.
2020 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

### b.    Rejections

On the Effective Date, the following executory contracts and unexpired leases will be rejected:

None.

### 2.    Changes in Rates Subject to Regulatory Commission Approval

This Debtor is not subject to governmental regulatory commission approval of its rates.

### 3.    Retention of Jurisdiction.

The Court will retain jurisdiction to the extent provided by law.

## G.    Tax Consequences of Plan

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues this Plan may present to the Debtor and/or Newco.  The Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

The following are the tax consequences which Myron anticipates from the Plan:

Property Taxes:

The Property was sold by Myron to Debtor at a value of $30 million, and property taxes were accordingly reassessed at that rate.  The value of the land, as is, for purposes of Myron's Plan, is slightly lower, at $29 million and thus, the transferring of title from the Debtor to Newco should result in 3.33% lower property taxes ($1,000,000 reduction/ $30,000,000 = 3.33%).  If the value of the land is given an even lower value through the HUD evaluation process, then property taxes should be reduced further.  It is anticipated that in no event, however, will property taxes increase upon the approval of the Plan.

///

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    Upon approval of the Plan and the transfer of title to the Property to Newco, a properly

2    prepared Preliminary Change of Ownership Report, (PCOR), will be prepared and submitted to

3    the Los Angeles County Tax Assessor, stating the new reduced property value of $29 million. If

4    the County Tax Assessor does not automatically reduce the property taxes by the appropriate ratio

5    upon submission of the PCOR, Newco will promptly apply for the reduction.

6    Later, upon the completion of new construction, the County Tax Assessor will almost

7    certainly reassess the property to determine a new value, taking into consideration the added

8    value of the improvements upon the land. The budgets prepared by the developer, Intracorp, take

9    this increase in property taxes upon the completion of construction into consideration.

10    Capital Gains Taxes:

11    The land has depreciated since the initial sale from Myron to Debtor, from $30 million to

12    $29 million and hence the transfer of title from Debtor to Newco will not result in any capital

13    gain. Later, should Newco sell the property for a profit, there will be federal and state capital

14    gains taxes on the gain. Currently the maximum long-term federal capital gains tax rate is 15%,

15    and the maximum long-term state capital gains tax rate is 9.3%, or a combined total of 24.3%

16    capital gains tax on any profit realized at the time of sale. In calculating any profit from the sale

17    of the improved property, the $29 million stated value of the land, together with the value of any

18    and all improvements to the property, must be taken into consideration and should, in

19    combination, result in a new capital gains tax basis of approximately $125,000,000. Newco will

20    issue K-1 tax forms to pass through any capital gains taxes to Myron and any other members of

21    Newco at the then applicable federal and state capital gains tax rates.

22    Income Taxes:

23    Upon approval of Myron's plan, Newco intends to continue to lease the parking lot on the

24    Property prior to the commencement of construction in order to generate income. Given the

25    required ongoing interest payments and other operating expenses of the Newco, however, it is

26    anticipated that during such leasing period Newco will have no net income and, therefore, no

27    income taxes will be payable from any such leasing of the parking lot. However, in the event that

28    revenues from the operation of the parking lot, and from the possible leasing of the old building

Ringstad & Sanders
L.L.P.
2030 Main Street, 17th Floor
Irvine, California 92614
949.851.7450

1   on the Property exceed operating costs and expenses of the project, then some income tax may be

2   due and payable.

3        Upon the completion of the plan and the subsequent sale of the Property, if the Property is

4   sold by Newco within the 5-year period, any profits will be taxed at long-term capital gains tax

5   rates, as stated above, not normal income tax rates.

6        Lack of Tax Consequences from Discharge of Indebtedness:

7        Generally, the discharge of indebtedness is includable in gross income unless it is

8   excludable under Internal Revenue Code Section 108. However, a debt discharged in bankruptcy

9   is not includable in gross income.

10       Other Taxes:

11       There may be other tax consequences of Myron's Amended Plan that are presently

12   unanticipated, or incapable of being known. Moreover, the Debtor cannot advise creditors as to

13   the tax effect of the Plan upon creditors. Each creditor is, therefore, urged to contact their own

14   tax advisors re the tax impacts of the Plan.

15                            **IV.**

16              **CONFIRMATION REQUIREMENTS AND PROCEDURES**

17       PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THIS PLAN

18   SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON

19   CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following

20   discussion is intended solely for the purpose of alerting readers about basic confirmation issues,

21   which they may wish to consider, as well as certain deadlines for filing claims. The proponent

22   CANNOT and DOES NOT represent that the discussion contained below is a complete summary

23   of the law on this topic.

24       Many requirements must be met before the Court can confirm a Plan. Some of the

25   requirements include that the Plan must be proposed in good faith, acceptance of the Plan,

26   whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7

27   liquidation, and whether the Plan is feasible. These requirements are not the only requirements

28   for confirmation.

Ringstad & Sanders
L.L.P.
2030 Main Street, 17th Floor
Irvine, California 92614
949.851.7450

**A.    Who May Vote or Object**

    **1.    Who May Object to Confirmation of the Plan**

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

    **2.    Who May Vote to Accept / Reject the Plan**

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

    **a.    What Is an Allowed Claim / Interest**

As noted above, a creditor or interest holder must first have an <u>allowed claim or interest</u> to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim. When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS APRIL 27, 2009. A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed. A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest. Consult Exhibit F to see how the Debtor has characterized your claim or interest.

    **b.    What Is an Impaired Claim / Interest**

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is <u>impaired</u> under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

In this case, the Proponent believes that Classes 1, 2, 3, 4, 5, 7 and 8 are impaired and that

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

1    holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.

2    The Proponent believes that there are no holders of claims in Class 6 (priority unsecured claims).

3    Parties who dispute the Proponent's characterization of their claim or interest as being impaired or

4    unimpaired may file an objection to the Plan contending that the Proponent has incorrectly

5    characterized the class.

6        **3.**     **Who is <u>Not</u> Entitled to Vote**

7        The following four types of claims are <u>not</u> entitled to vote: (1) claims that have been

8    disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code

9    sections 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any

10    value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes

11    are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code sections

12    507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes

13    and they are required to receive certain treatment specified by the Code. Claims in classes that do

14    not receive or retain any value under the Plan do not vote because such classes are deemed to

15    have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE,

16    YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

17        **4.**     **Who Can Vote in More Than One Class**

18        A creditor whose claim has been allowed in part as a secured claim and in part as an

19    unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for

20    the secured part of the claim and another ballot for the unsecured claim.

21        **5.**     **Votes Necessary to Confirm the Plan**

22        If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one

23    impaired class has accepted the Plan without counting the votes of any insiders within that class,

24    and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be

25    confirmed by "cramdown" on non-accepting classes, as discussed later in Section {IV.A.8.}.

26        **6.**     **Votes Necessary for a Class to Accept the Plan**

27        A class of claims is considered to have accepted the Plan when more than one-half (1/2) in

28    number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

favor of the Plan.  A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to accept the Plan.

### 7.    Treatment of Nonaccepting Classes

As noted above, even if one or more impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code, and there is at least one impaired class the accepts the Plan.  The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown."  The Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

### 8.    Request for Confirmation Despite Nonacceptance by Impaired Class(es)

The party proposing this Plan will ask the Court to confirm this Plan by cramdown on impaired Classes 1, 2, 3, 4, 5, 7 and 8 if any of these classes do not vote to accept the Plan.

### B.    Liquidation Analysis

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis.  Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next.  Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total

Ringstad & Sanders
L.L.P.
2030 Main Street, 12ᵗʰ Floor
Irvine, California 92614
949.851.7450

1    allowed unsecured claims. Finally, interest holders receive the balance that remains after all

2    creditors are paid, if any.

3         For the Court to be able to confirm this Plan, the Court must find that all creditors and

4    interest holders who do not accept the Plan will receive at least as much under the Plan as such

5    holders would receive under a Chapter 7 liquidation. The Plan Proponent maintains that this

6    requirement is met here for the following reasons:

7         Under a Chapter 7 liquidation, if the Chapter 7 trustee were to attempt to market and sell

8    the Debtor's Property, the trustee would not be able to obtain a sufficiently high sale price to even

9    satisfy the approximately $40,600,000 of legitimate secured claims against the Property.

10   Therefore, a Chapter 7 trustee would likely not sell the Property, and the Property would

11   ultimately be lost to a foreclosure sale conducted by one of the parties with a security interest in

12   the Property.  If this were to occur, it is likely that junior lien holders and unsecured creditors

13   would receive nothing on account of their claims against the Debtor.

14        Under Myron's Plan, Myron will fund the cost of obtaining development entitlements on

15   the Property.  Obtaining such entitlements will significantly increase the market value of the

16   Property and permit the refinancing of the Property with the two components of the New Loan.

17   Obtaining the New Loan, and the development and operation of the Property, will allow all

18   secured claims (other than the secured claims of James Myron) to be paid in full at the above-

19   specified rates of interest.

20        After the Property has been redeveloped, if the Property is sold within five years following

21   the Effective Date, then Class 7 unsecured creditors shall have a right to receive pro rata payment

22   on their claims, if at all, from the above-described portion of the Residual Profits resulting from

23   the sale.  Such payments could range from a low of $0.00 to a maximum of 25% of each allowed

24   claim in this class, depending on the sale price of the Property and the application of the above-

25   described formula to be used in calculating the amount to which this class is entitled.  In the event

26   that the Property is not sold within five years after the Effective Date, each Class 7 unsecured

27   creditor holding an allowed claim shall be entitled to a pro rata payment thereon from a $1 million

28   fund to be provided by Newco.  In either event, and in addition to the foregoing, creditors holding

Ringstad & Sanders
L.L.P.
2030 Main Street, 17th Floor
Irvine, California 92614
949.851.7450

- 55 -

1   allowed Class 7 nonpriority unsecured claims will also receive their pro rata share of any

2   Litigation Claims Recovery.

3       Therefore, because all secured creditors will receive full satisfaction of their claims under

4   Myron's Plan, and because there is, at a minimum, a chance for Debtor's unsecured creditors to

5   receive some satisfaction of their claims under Myron's Plan, all creditors will receive as much or

6   more than they would receive under a Chapter 7 liquidation.

7       Below is a demonstration, in balance sheet format, that all creditors and interest holders

8   will receive at least as much under the Plan as such creditor or interest holder would receive under

9   a Chapter 7 liquidation.

10   ///

11   ///

12   ///

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ringstad & Sanders
L.L.P.
2030 Main Street, 17th Floor
Irvine, California 92614
949.851.7450

**ASSETS VALUE AT LIQUIDATION VALUES:**

| | |
|---|---|
| CURRENT ASSETS | |
| a.  Cash on hand | $100,000.00 (est.) |
| b.  Accounts receivable | $0.00 |
| c.  Inventories | $0.00 |
| | |
| TOTAL CURRENT ASSETS | $0.00 |
| | |
| FIXED ASSETS | |
| a.  Office furniture & equipment | $20,000 |
| b.  Machinery & equipment | $0.00 |
| c.  Automobiles | $0.00 |
| d.  Building & Land | $29,000,000 |
| | |
| TOTAL FIXED ASSETS | $29,020,000 |
| | |
| OTHER ASSETS | |
| a.  Customer list | $0.00 |
| b.  Other intangibles | $0.00 |
| | |
| TOTAL OTHER ASSETS | $0.00 |
| | |
| **TOTAL ASSETS AT LIQUIDATION VALUE** | **$29,120,000** |
| | ========= |
| **Less:** Secured creditors' recovery | $29,120,000 |
| **Less:** Chapter 7 trustee fees and expenses | $0.00 |
| **Less:** Chapter 11 administrative expenses | $0.00 |
| **Less:** Priority claims, excluding administrative expense claims | $0.00 |
| **Less:** Debtor's claimed exemptions | $0.00 |
| | ========= |
| (1) Balance for unsecured claims | $0.00 |
| (2) Total amt of unsecured claims | $0.00 |

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE
OR RETAIN IN A CH. 7 LIQUIDATION[2]: = <u>0.00%</u>
% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WILL RECEIVE
OR RETAIN UNDER THIS PLAN:  = <u>TO BE DETERMINED, BUT
NOT TO EXCEED 25%</u>**

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

Below is a demonstration, in tabular format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or holder would receive under a Chapter 7 liquidation.

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| Administrative Claims | 100% | 98% |
| Priority Tax Claims | 100% | 0.0% |
| Class 1 – First priority secured claim of Los Angeles County for property taxes | 100% | 100% |
| Class 2 – Second priority secured claim of CB&T | 100% | 100% |
| Class 3 – Third priority secured claim of Loma Vista Financial | 100% (other than James Myron's interest in this claim). James Myron will reconvey his interest under the Loma Vista deed upon the funding of the new Loan and transfer of title to the Property to Newco as part of his equity contribution to this entity. | 0.0% |
| Class 4 – Fourth priority secured claim of James Myron | 100% - Myron will reconvey his security interest in the Property upon the funding of the New Loan and transfer of the Property toNewco as part of his equity contribution to this entity. | 0.0% |
| Class 5 – Secured claim of Los Angeles County for personal property taxes | 100% | 0.0% |
| Class 6 – Priority unsecured claims | 100% | 0.0% |
| Class 7 – Nonpriority unsecured claims | To be determined, but not to exceed 25% | 0.0% |
| Class 8 – Equity members of the Debtor | Membership interest cancelled | Retain membership interest |

Ringstad & Sanders
L.L.P.
2030 Main Street, 17th Floor
Irvine, California 92614
949.851.7450

Ringstad & Sanders
LLP
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

## C.    Feasibility

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date.  The Plan Proponent maintains that this aspect of feasibility is satisfied as illustrated here:  Debtor will have sufficient cash on hand on the Effective Date to make payments to creditors on that date.  It is estimated that a total of $14,409.33 will need to be paid on the Effective Date, consisting of $1,050 of administrative claims, plus $13,359.33 of priority tax claims.  The Receiver has been collecting $25,000 per month for the rental of the Debtor's parking lot.  It is estimated that the Receiver will have on hand no less than $100,000 on the Effective Date from which these claims can be paid. To the extent that the funds in the possession of the Receiver prove insufficient to pay these administrative expense claims and priority tax claims, Myron will pay the shortfall from his own funds.

In addition, shortly after the Effective Date it is estimated that approximately a combined $100,851.19 of additional claims will need to be paid in the form of the fees and expenses to the Debtor's counsel and the Receiver, and the secured personal property tax claim of the County of Los Angeles.  The funds collected by the Receiver can also be used to pay these amounts, and Myron shall make up any shortfall from his own funds.

The Plan is also feasible because Myron is willing to commit up to $1.0 million of his own funds to pay the cost of obtaining development entitlements on the Property.  The total of obtaining development entitlements and the recordation of a final map for the project is estimated to cost approximately $546,868.  Attached hereto as Exhibit "B" is a month by month timeline and budget for the design, entitlement and construction of Myron's proposed redevelopment of

1    the Property.

2    Obtaining such development entitlements will enable a construction loan to be obtained in

3    the approximate amount of $84,650,100 and will also result in the ability to obtain the $40

4    million of funding from Intracorp.  It is currently projected that development entitlements will be

5    obtained, and funds received from the funding of the HUD insured component of the New Loan,

6    no later than 27 months following the Effective Date.  These funds, along with the Intracorp

7    component of the New Loan, will not only be used to pay the estimated $96,429,439[3] remaining

8    cost of redeveloping the Property, but will also be used to: (i) completely satisfy all amounts

9    owed to the County of Los Angeles on its Class 1 secured property tax claim; (ii) make regular

10    monthly payments of interest and principal to CB&T on its Class 2 secured claim; (iii) make

11    regular monthly payments of principal and interest to holders of allowed interests under the LVF

12    note and deed of trust.

13    From the Effective Date, and until such time as the HUD insured component of the New

14    Loan is funded, Newco and Myron shall make monthly payments of interest to CB&T on its 30-

15    year fully amortized post-confirmation secured claim.  It is anticipated that funds will be available

16    to make such payments from the lease of the parking lot located on the Property after

17    confirmation of the Plan and, to the extent that such revenue proves insufficient, Myron shall pay

18    any shortfall from his personal funds.

19    After the Property has been redeveloped, it is projected that the operation of the Property

20    will generate net revenue of $1.2 million to $2.2 million per year during its first 5 years of

21    operation.  Nonpriority unsecured creditors will receive pro rata payments on their claims, if at

22    all, either through a project participation payment if the Property is sold within five years

23    following the Effective Date, or from a $1 million fund to be provided by Newco from the

24    revenue generated from the Property's operation in the event that the Property is not sold during

25    the five years following the Effective Date.  In addition, creditors in this class will receive pro

26    rata shares of any Litigation Claim Recovery.

27    The Proponent has provided the financial statements of the Debtor for the years 2006,

28    ---
[3] Calculated as the total cost of the redevelopment project, less the $29,019,800 cost of the
Property, resulting in remaining redevelopment costs of $96,429,439.

Ringstad & Sanders
L.L.P.
2030 Main Street, 17th Floor
Irvine, California 92614
949.851.7450

1    2007 and 2008 attached hereto as Exhibit E. These financial statements were attached to the

2    Amended Disclosure Statement filed by the Debtor, and Myron makes no representations

3    regarding their accuracy.

4        A timeline and budget for each phase of the entitlement and construction process for the

5    redevelopment of the Property into a 336 unit apartment complex with mixed retail space is

6    attached as Exhibit "B." A schedule of the projected expenses and revenues from the operation of

7    Property for six years after the completion of construction of the redevelopment project is

8    attached as Exhibit "C."

9        YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR FINANCIAL

10    ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL

11    STATEMENTS.

12        The Plan Proponent contends that Myron's proposed entitlement, redevelopment and

13    operation of the Property, and the payments proposed to be made to the Debtor's creditors as set

14    forth herein, are feasible.

15                              **V.**
                **EFFECT OF CONFIRMATION OF PLAN.**

16
**A.    Discharge**

17
18        This Plan provides that upon consummation of the Plan, Debtor shall be discharged of

19    liability for payment of debts incurred before confirmation of the Plan, to the extent specified in

20    11 U.S.C. § 1141. However, the discharge will not discharge any liability imposed by the Plan.

**B.    Revesting of Property in the Debtor**

21
22        Except as provided in Section {V.E.}, and except as provided elsewhere herein and in the

23    Plan, the confirmation of the Plan revests all of the property of the estate in the Debtor. However,

24    upon the Effective Date, the Litigation claims shall transfer to, and be vested in, the Plan Agent.

25    Further, upon the Effective Date, the following shall be transferred to Newco: (i) the Property; (ii)

26    any net funds in the receivership estate above the lawful expenses of the receivership estate; (iii)

27    any receivables held by the Debtor or the receivership estate; and (iv) any cash of the Debtor.

28

**C.    Modification of Plan**

The Proponent of the Plan may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or re-voting on the Plan.

The Proponent of the Plan may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated <u>and</u> (2) the Court authorizes the proposed modifications after notice and a hearing.

**D.    Post-Confirmation Status Report**

Within 120 days of the entry of the order confirming the Plan, Plan Proponent shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice. Further status reports shall be filed every 120 days and served on the same entities.

**E.    Quarterly Fees**

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of confirmation shall be paid to the United States Trustee on or before the effective date of the plan. Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the United States Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or entry of an order of dismissal or conversion to chapter 7

**F.    Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan. If the Court orders, the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7, estate. The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

///

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

01/25/2010  01:55    323-654-5820    JIM MYRON    PAGE  01

1    The order confirming the Plan may also be revoked under very limited circumstances. The

2    Court may revoke the order if the order of confirmation was procured by fraud and if the party in

3    interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of

4    the order of confirmation.

5    G.    Final Decree

6    Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the

7    Plan Proponent, or other party as the Court shall designate in the Plan Confirmation Order, shall

8    file a motion with the Court to obtain a final decree to close the case.

9

10    DATED: January 23, 2010

11

12    By: _____
13    James Myron, individually and as trustee of the
      James Myron Trust dated April 12, 2001

14

15    DATED: January 25, 2010    RINGSTAD & SANDERS, LLP

16

17    By: _____
18    Todd C. Ringstad
19    Christopher A. Minier
      Counsel for James Myron, individually
20    and as trustee of the James Myron Trust
      dated April 12, 2001

21

22

23

24

25

26

27

28

- 63 -

1     The order confirming the Plan may also be revoked under very limited circumstances. The

2    Court may revoke the order if the order of confirmation was procured by fraud and if the party in

3    interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of

4    the order of confirmation.

5    **G.    Final Decree**

6     Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the

7    Plan Proponent, or other party as the Court shall designate in the Plan Confirmation Order, shall

8    file a motion with the Court to obtain a final decree to close the case.

9

10    DATED:  January ___, 2010

11

12                        By:_____

13                                James Myron, individually and as trustee of the
James Myron Trust dated April 12, 2001

14

15    DATED:  January ___, 2010        RINGSTAD & SANDERS, LLP

16

17

18                        By:_____

19                                  Todd C. Ringstad
Christopher A. Minier

20                                  Counsel for James Myron, individually
and as trustee of the James Myron Trust
dated April 12, 2001

21

22

23

24

25

26

27

28

Ringstad & Sanders
LLP.
2030 Main Street, 13th Floor
Irvine, California 92614
949.851.7450

1    ## DECLARATION OF JAMES MYRON

2    I, James Myron, hereby declare:

3    1.    The following matters are true and correct and within my own personal

4    knowledge. If called as a witness, I could and would competently testify hereto.

5    2.    I am the trustee and the sole beneficiary of the James Myron Trust dated April 12,

6    2001. Hereafter the James Myron Trust dated April 12, 2001, and I shall collectively be referred

7    to herein in the first person, i.e., "I," "me," "my," Etc. I am the sole Class "B" member of The

8    Olympic on Grand, LLC (hereafter "Debtor"), a California limited liability corporation and the

9    debtor and debtor-in-possession herein, and I thereby own a 20% interest in the Debtor. I am also

10    one of the Debtor's secured creditors.

11    3.    Debtor currently holds title to certain real property located at 1020 - 1024 South

12    Grand Avenue, Los Angeles, California (hereafter the "Property"). Attached hereto as Exhibit

13    "A" is a list of the Debtor's assets. The Debtor's assets consist almost exclusively of the

14    Property.

15    4.    I have read the Amended Chapter 11 Disclosure Statement that precedes this

16    Declaration. The matters stated therein are true and correct to the best of my knowledge and

17    belief.

18    5.    I have already assembled an accomplished development team to redevelop the

19    Property into a 336 unit apartment complex with mixed retail space.

20    6.    The process of designing the proposed redevelopment project for the Property,

21    obtaining development entitlements and the recordation of a final map for the project is estimated

22    to cost approximately $546,868. I will commit my personal funds, up to $1.0 million, toward the

23    cost of obtaining the needed development entitlements. Attached hereto as Exhibit "B" is a

24    month by month timeline and budget for the design, entitlement and construction of the proposed

25    redevelopment of the Property. Attached hereto as Exhibit "C" is a projected cash flow statement

26    for the revenues and expenses anticipated to result from the operation of the Property after its

27    redevelopment. Both of these documents were prepared by Intracorp / ISC Properties, LLC

28    ("Intracorp"), the developer that I have hired to redevelop the Property. Attached hereto as

Ringstad & Sanders
L.L.P.
2030 Main Street, 12th Floor
Irvine, California 92614
949.851.7450

Ringstad & Sanders
L.L.P.
2030 Main Street, 12ᵗʰ Floor
Irvine, California 92614
949.851.7450

1    Exhibit "J" is the consulting agreement that I have entered into with Intracorp necessary to begin

2    the redevelopment of the Property.  To date, I have paid Intracorp a total of $40,000 of my

3    personal funds under this consulting agreement in order to expedite the redevelopment of the

4    Property.

5         7.      Once development entitlements are obtained for the Property, it should permit a

6    construction loan in the approximate amount of $84,650,100 to be obtained.  I have engaged the

7    real estate investment banking firm of Johnson Capital Huntoon Hastings, LLC ("JCHH") to

8    facilitate the origination, underwriting, preparation and processing of this loan and all documents

9    needed to obtain the loan.  I have already submitted an application to obtain this loan with a HUD

10    approved lender, and I have paid a fee of $40,000 associated with obtaining the this loan from my

11    own funds.  Attached hereto as Exhibit "D" is a copy of my engagement letter with JCHH.

12         8.      In addition, Intracorp has agreed to obtain approximately $40 million of additional

13    funding for the redevelopment project, either in the form of debt or equity, after development

14    entitlements on the Property have been obtained.  Attached hereto as Exhibit "K" is a letter of

15    intent from Intracorp concerning this additional funding.

16         9.      I have also hired a very experienced and accomplished architectural firm, RTKL

17    Associates, Inc. ("RTKL"), to design the proposed redevelopment project for the Property.  I have

18    already paid RTKL a total of $26,179.01 of my own funds in order retain RTKL and to expedite

19    the redevelopment of the Property.  Attached hereto as Exhibit H is the Retention Agreement

20    entered into by me with RTKL.  Attached hereto as Exhibit "G" is a conceptual design package

21    for my proposed redevelopment of the Property that has been prepared by RTKL and the artist

22    hired to design the fountain to be located in front of the Property.  World renowned artist, Mr. Gil

23    Bruvel, has agreed to design the "fountain of angels" to be located on the redeveloped Property.

24    ///

25    ///

26

27

28

01/25/2010  01:54    923-654-5820    JIM MYRON    PAGE  01



10.    Attached hereto as Exhibit "M" is a September 23, 2008, appraisal of the Property.

I declare under penalty of perjury pursuant to the laws of the United States that the

foregoing is true and correct. Executed this _23_ day of January, 2010, at _____

California.

James Myron

Ringstad & Sanders

- 66 -

P. 3                                JAN-25-2010 11:38 AM